FILED

2007 MAR 30  AM 11: 31

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## COLUMBIA DIVISION

ANTHONY E. GOOCH, Individually and on behalf )
of all similarly situated individuals, )
)
)
Plaintiff, )  CLASS ACTION
)
v. )  Civil Action No.:
)
LIFE INVESTORS INSURANCE COMPANY OF )
AMERICA; )  **1  07  0016**
AEGON USA INC.; )
)
)
Defendants )

## COMPLAINT

COMES NOW the Plaintiff, Anthony E. Gooch, individually and on behalf of a

class of persons similarly situated, and hereby files this Complaint against the above-

named Defendants, showing the Court the following:

### INTRODUCTORY STATEMENT

1.   This cause of action arises out of Defendant Life Investors Insurance

Company of America's and Defendant AEGON USA Inc.'s breach of a common and

uniform insurance policy issued to the Plaintiff and similarly-situated insureds. This

policy, called a "Cancer Only Policy", was issued by Defendant AEGON USA Inc.

("AEGON USA") through its wholly owned subsidiary Life Investors Insurance

Company of America ("Life Investors") and was designed to provide policyholders with

a direct cash benefit in exchange for regularly paid premium. The policies were <u>not</u>

written in such a way as to intercede on behalf of policyholders to pay healthcare

providers directly, but to provide the insured with a cash payment to use however the policyholder saw fit. *See* Attachment "A", Cancer Only Policy.

2.　　The Cancer Only Policy provided a variety of benefits. These benefits included a cash benefit for radiation therapy and chemotherapy treatments for covered cancers. Under the Cancer Only Policy, policyholders were entitled to a direct payment of money in the amount of a healthcare provider's "actual charges" for the radiation or chemotherapy treatment rendered.

3.　　As set forth in greater detail herein, Defendants established both through the plain meaning of "actual charges" as used throughout the contract in relation to other terms and its long-standing course of dealing with the Plaintiff and policyholders that "actual charges" means the amount healthcare providers actually charged for their services as reflected on billing statements

4　　Notwithstanding the meaning previously given to the term "actual charges" through Life Investors' contract and its own practices, Defendants sought to elevate profits over their promised contractual obligations by suddenly and unilaterally disavowing their obligation to pay benefits for "actual charges" based on amounts billed by healthcare providers as they had done in the past

5.　　Specifically, on or about May 2006, Defendants informed the Plaintiff by way on computer-generated form letter (the "Form Letter")(Exhibit "B") that, effective July 1, 2006, the payment of such benefits would no longer refer to healthcare providers' charges as its index, but rather would refer to partial payments of those amounts that the healthcare provider may have received from third-party payors such as Medicare,

Medicaid, and third party insurers like Blue Cross/Blue Shield thereby attempting to unilaterally create a "new index" for performance under the Cancer Only Policy

6      Upon information and belief, that same form letter has been sent to other Life Investors policyholders receiving benefits

7.     In other words, before their repudiation described in this form letter, Defendants' performance under the insurance contract was indexed to the prices physicians and healthcare providers charged for their services before any reductions to those charges based on third party agreements between the healthcare provider and healthcare insurers. Such arbitrary and unilateral revision of a key element of the contract, namely the index used to measure Defendants' performance, constitutes a clear breach of the terms of the insurance contract at issue

8.     Defendants did exactly as they said they would in the Form Letter *See* Exhibit "B". Starting July 1, 2006, Defendants in fact changed the standard policy and practice and systematically denied Plaintiff's claims where physician statements were submitted as the insured's "proof of loss"

9      On information and belief, Defendants have also changed their standard policy and practice for payment of said benefits for other insureds

10     Defendants thereafter purported to require insureds to submit entirely irrelevant statements such as Explanation of Benefits ("EOBs") from insureds' third-party healthcare insurance companies and other statements from third parties that reflected the amounts such entities partially paid as an "expense", as opposed to what their "actual charges" were. In doing so, Life Investors breached its Cancer Only Policy with the Plaintiff and members of the Class in a common and uniform way and instituted

a policy of paying benefits based on a "new index" resulting in "reduced benefits" being paid to Plaintiff and class members

11. Plaintiff, on behalf of a class of similarly situated persons pursuant to Fed. R. Civ. P. 23, seeks declaratory and injunctive relief pursuant to Rule 23(b)(2), as well as restitution and/or contractual damages for the sub-classes under Rule 23(b)(3) for benefits wrongfully denied under the policies described more fully below

## PARTIES

12. Plaintiff, Anthony E. Gooch ("Plaintiff"), is an Alabama citizen residing at 18493 Sewell Rd., Athens, AL 35614-5727 At all times relevant hereto, Plaintiff is (and was) an owner of a Cancer Only Policy issued by Defendant AEGON USA Inc by and through its wholly owned subsidiary Life Investors Insurance Company of America. A true, correct and complete copy of Plaintiff's Cancer Only Policy is attached to this Complaint as Exhibit A Plaintiff purchased this policy in Tennessee from Defendants' Tennessee agent while Plaintiff was working in Pulaski, Tennessee. Defendants' agent solicited Plaintiff and subsequently completed the application and all remaining conditions precedent to the issuance of the policy within the State of Tennessee.

13. Defendant, Life Investors Insurance Company of America, is an Iowa corporation that provides insurance to consumers in Tennessee and throughout the United States Life Investors' principal place of business is located in Cedar Rapids, Iowa.

14. Defendant Life Investors' is an insurance company authorized to transact the business of insurance in the state of Tennessee.

15. Defendant Life Investors' agent for service of process is CT Corporation Company, 530 Gay Street, Knoxville, TN 37902.

16. Defendant, AEGON USA, Inc., is an Iowa corporation that provides insurance to consumers in Tennessee and throughout the United States. AEGON USA's principal place of business is located in Cedar Rapids, Iowa.

17. Defendant AEGON USA, Inc.'s agent for service of process is CT Corporation Company, 530 Gay Street, Knoxville, TN 37902.

18. AEGON USA, Inc. is the parent company of several subsidiaries that provide services to Life Investors.

19. AEGON USA, Inc. controls through its various subsidiaries marketing, selling, underwriting and related financial aspects of Life Investors insurance policies.

20. AEGON USA, Inc. is a wholly owned subsidiary of AEGON NV, a Dutch corporation.

21. AEGON USA, Inc. provides its annual reporting through the annual reports of AEGON NV.

22. In those annual reports AEGON USA, Inc. reports the assets, liabilities and cash flow of Life Investors as the assets, liabilities and cash flow of AEGON USA, Inc. and ultimately AEGON NV.

23. Life Investors has no claims personnel who make determination of entitlement to benefits under the insurance policy at issue.

24. Employees of AEGON USA, Inc. or a subsidiary of AEGON USA Inc., determined Plaintiff's entitlement to benefits under the insurance policy at issue.

25. Life Investors has a contract with AEGON USA, Inc. or one of AEGON USA, Inc.'s subsidiaries to provide claims handling services and AEGON USA, Inc. or

one of AEGON USA, Inc 's subsidiaries has assumed certain duties under the contracts at issue.

26      In reports to the various state insurance commissioners and agencies, Life Investors uses the assets of (or loans from) its parent company AEGON to meet certain liquidity requirements

## JURISDICTION AND VENUE

27.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1332(d) because minimum diversity exists between (a) certain members of the proposed Class, including the Plaintiff, and (b) the Defendants. Additionally, the value of the declaratory and injunctive relief sought herein, including any and all amounts due to the Plaintiff and members of the Class as restitution and/or damages, exceeds $5,000,000.

28      Defendants have substantial contacts with this jurisdiction arising out of the sale of insurance policies in this jurisdiction, including the Cancer Only Policy issued to the Plaintiff. Therefore, personal jurisdiction exists over Defendants

29      Venue is proper in this District pursuant to 28 U.S.C. § 1391, as the sale of the policies at issue and giving rise to this cause of action occurred in this jurisdiction

## FACTS

30      AEGON USA is a company engaged in the business of insurance through the selling and administration of various insurance products in this jurisdiction and throughout the United States through its various subsidiaries including Defendant Life Investors.

31      AEGON USA by and through various subsidiaries provides administrative services to the Defendant Life Investors including but not limited to providing various

underwriting and claim servicing functions as well as other administrative functions for the aforementioned insurance products. Defendant AEGON USA by and through various subsidiaries performed and continues to perform those services with regard to the policy at issue.

32. The Cancer Only Policy attached hereto is one of the aforementioned insurance products. This policy is intended to provide an insured with benefits, in exchange for regularly-paid premium, in the event that insured is diagnosed with a form of cancer covered by the Cancer Only Policy.

33. Under Section C of the Cancer Only Policy, an insured becomes entitled to benefits after being "Positively Diagnosed"[1] with "Cancer"[2] while the policy is in force. These benefits are paid according to benefit provisions appearing throughout the Cancer Only Policy, provided that "(a) The Cancer is first diagnosed after the 30 day 'waiting period'[3]; and (b) The loss is incurred (e.g. treatment is received or the service is performed) while this policy is in force; and (c) All other provisions of this policy apply." Exh. A, Section C, p. 5.

34. The benefits provision applicable to radiation therapy and chemotherapy appears in Section E, Part 2, p. 7. For both therapies, Life Investors promises to "pay the actual charges up to the calendar year maximum shown in the Policy Schedule" for the respective treatments.

35. This "calendar year maximum", which establishes the benefits ceiling for the insured, varies depending upon how much coverage the insured has purchased.

---

[1] The term "Positively Diagnosed" is specifically defined in the Cancer Only Policy in Section A, p. 4
[2] The term "Cancer" is specifically defined in the Cancer Only Policy in Section A, p. 3.
[3] The term "waiting period" refers to that period of time that starts with the "Effective Date". The Cancer Only Policy does not cover any cancers diagnosed during this 30-day "waiting period"

through riders. This ceiling – and the riders that establish them – does not address or affect either the insured's eligibility for benefits in the first instance or the dollar-for-dollar basis on which the insured is to be paid. It only provides a cap on whatever benefits become payable.

36. Absent an assignment, these benefits are payable directly to the policyholder, regardless of whether the insured has other health insurance coverage in place. The insured is free to use these monies for any purpose.

37. The Cancer Only Policy does not include within its provisions an express definition of "actual charges".

38. As used throughout the Cancer Only Policy in relation to other terms, however, the term "actual charges" means the amount actually billed by healthcare providers as opposed to partial amounts ultimately expensed by the third party (or other) payor.

39. Defendants continuously represented to the Plaintiff and the class members through Defendants' prior course of conduct, claim forms and the terms of the Policy, that Defendants had provided a Cancer Only Policy that would pay certain benefits, in the form of actual charges, in the event the Plaintiff and class members were to get cancer and require certain medical treatment.

40. Upon information and belief, Defendants followed standard and regular practice prior to July 1, 2006, of paying benefits equal to "actual charges" using the amount healthcare providers billed for their services as the index to determine the amount of benefits due, without any consideration given to whatever amount was ultimately paid by a third-party payor. Therefore, prior to July 1, 2006, for the Plaintiff and prior to such

dates as identified in substantially similar notices sent to other class members, Defendants interpreted the policy it drafted to require payment of benefits on this basis.

41     As such, Defendants, through their pattern and practice, established these amounts of charges billed by healthcare providers as the sole index upon which such benefits are based under the Cancer Only Policy contract. Alternatively, Defendants, by and through their pattern of conduct waived and/or relinquished whatever right they may have had to base such benefits on amounts paid by third party payors, and are estopped from asserting this "right" at this time.

42.     On or about May 2006, however, Defendants informed the Plaintiff and other insureds through the aforementioned Form Letter (*See* Exhibit "B") that, effective July 1, 2006, they would no longer pay benefits for certain treatments, such as those relating to radiation therapy or chemotherapy, using the amount charged as the index. Defendants informed the insureds that they were going to unilaterally switch the index used for the payment of such benefits to Explanation of Benefits (EOBs) and similar documents showing what was ultimately paid by third-party payors, as opposed to what "actual charges" were actually assessed for the services rendered.

43.     Through this form letter, Defendants sought to unilaterally change the terms of its policy, without consideration, by substituting EOBs and similar statements for actual billing statements showing "actual charges" as the index upon which they based their payment of radiation therapy and chemotherapy claims. Defendants had no authority to make this unilateral and material change to the Cancer Only Policy either under the terms of the policy itself or under any applicable law.

44      On December 17, 1997, Life Investors issued a Cancer Only Policy, No. 0D1302881 (*see* Exhibit A), to the Plaintiff.

45      Plaintiff's Cancer Only Policy included a "Radiation Therapy, Chemotherapy And Blood Additional Benefits Rider." In the event of a covered cancer diagnosis, this rider entitled the Plaintiff to payment for all "actual charges beyond the calendar year maximum in the [Cancer Only] Policy" for both radiation therapy treatments and chemotherapy treatments.

46      In 1999, Plaintiff was diagnosed with a form of cancer covered by his Cancer Only Policy.

47      Plaintiff timely and properly filed a claim under his Cancer Only Policy.

48      Plaintiff was therefore entitled to benefits under the policy.

49      Defendants thereafter verified Plaintiff's entitlement to such benefits.

50      As a result, the Plaintiff's entitlement to benefits for these treatments is not subject to dispute for purposes of this action.

51      After the Plaintiff was diagnosed and his coverage verified, Plaintiff regularly submitted billing statements issued by his healthcare providers for radiation and chemotherapy treatments showing "actual charges" for his "proof of loss" to Life Investors and to AEGON USA, as Defendants had expressly instructed him in writing to do upon the filing of his claim immediately after his cancer diagnosis.

52      Defendants, in turn, regularly paid benefits to the Plaintiff reflecting the amounts for such treatments as shown in these statements between 1999 and 2006, inclusively or for approximately eight years.

53.     In doing so, Defendants established through their practice, procedure, and course of dealing that this billing statement was the sole index for which benefit payments were to be determined as a matter of law and contract.

54.     On or about May 2006, Defendants sent the Form Letter to the Plaintiff advising that payment of certain benefits such as radiation and chemotherapy treatment benefits would no longer be indexed to actual charges on billing statements issued by healthcare providers as of July 1, 2006 (*See* Exhibit "B")

55.     By this act, Defendants repudiated their contractual obligations as alleged herein by representing that they would no longer honor their commitment to pay "actual charges" as reflected in these billing statements

56.     On or about October 2006, Plaintiff submitted yet another claim to Defendants seeking coverage for chemotherapy treatment. As he had done for over seven years since battling cancer, he submitted the statement of charges furnished by his treating physician, and demanded Defendants honor the terms of the contract and make benefit payments as required under the contract. The statement showed that Plaintiff had been billed $2,426.00 for services relating to chemotherapy.

57.     Defendants processed the claim on November 1, 2006, and thereafter informed the Plaintiff through a computerized notice that he had improperly submitted his "proof of loss". The statement said he must re-file his proof of loss attaching either (1) a summary notice from Medicare or Medicaid; (2) an EOB from whatever other medical care coverage Plaintiff may have had in place; or (3) a statement from his healthcare provider showing the amount actually paid for the services rendered, and in so doing refused Plaintiff's demand that Defendants provide benefits pursuant to the terms

of the contract. This new requirement was contrary to the terms of the policy and/or the established course of dealing that existed between Plaintiff, Class Members, Life Investors and AEGON USA prior to July 1, 2006

58. Plaintiff re-submitted his proof of loss on November 10, 2006, attaching an EOB provided by Blue Cross/Blue Shield, which showed that Blue Cross/Blue Shield paid only a portion of the amount charged. This document was in addition to the materials he submitted previously.

59. As a result, the Plaintiff received an amount that was several hundred dollars less than that to which he was properly entitled under the Cancer Only Policy. Defendants have continued to provide benefits, but only the "reduced benefits" based on Defendants' new found interpretation of the contract.

## CLASS ALLEGATIONS

60. This action is brought and may be maintained properly as a class action pursuant to Fed. R. Civ. P. 23

61. **Class Definition.** In accordance with Fed. R. Civ. P. 23, Plaintiff brings this action individually and on behalf of similarly situated persons. In this action, Plaintiff seeks certification of (1) a nationwide Declaratory Relief Class pursuant to Rule 23(b)(2), (2) a nationwide Restitution/Monetary Relief Sub-Class pursuant to Rule 23(b)(3), and (3) an Tennessee statewide Bad Faith/Consumer Protection Act Sub-Class pursuant to Rule 23(b)(3). This class and these sub-classes are defined as follows:

(a) **Declaratory Relief Class (Count I)**: All individuals throughout the United States who are, or between six (6) years from the filing date of this

action until the present have been, insured by Cancer Only Polices issued by Life Investors; and

(b) **Restitution/Monetary Relief Sub-Class (Counts I, II and III):** All individuals throughout the United States who are, or between six (6) years from the filing date of this action until the present have been, insured by Cancer Only Polices issued by Life Investors, and to whom Life Investors has paid the "reduced benefits" using the "new index" for performance for claims that arose after receiving notification the same as or substantially similar to the Form Letter regarding what would now constitute the new definition of "actual charges".

(c) **Tennessee State Sub-Class (Counts I, II and III, IV and V):** All individuals who received Cancer Only Policies within the State of Tennessee or are currently Tennessee residents or were Tennessee residents when they purchased the policies or when they received notice of the change in the administration of the policies and who between one (1) year from the filing date of this action until the present, have been insured by Cancer Only Polices issued by Life Investors, and to whom Life Investors has paid "reduced benefits" using the "new index" for performance for claims that arose after receiving notification the same as or substantially similar to the Form Letter regarding what would now constitute the new definition of "actual charges".

62. **Numerosity.** The class and subclasses are so numerous that individual joinder of all class members as parties to this action would be impractical. While the exact number and identities of class and subclass members are unknown at this time,

Plaintiffs allege that the class and sub-classes consists of thousands of members who have or have had Cancer Only Policies issued by Life Investors.

63     **Commonality.** Numerous common questions of fact and law exist as to all members of the class and predominate over any questions affecting only individual members of the class. Said common questions include, but are not limited to, the following:

(a)     Whether Defendants have systematically refused and/or failed to pay the proper amount of "actual charges" as that term is properly defined;

(b)     Whether Defendants systematically notified Plaintiff and members of the class by way of notices the same as or substantially similar to the attached Form Letter that they would refuse on a prospective basis to pay benefits in the amount of "actual charges" as reflected in healthcare provider billing statements;

(c)     Whether the Cancer Only Policy unambiguously provides that "actual charges" upon which radiation therapy and chemotherapy benefits are based must be indexed only to the amount of actual charged billed by healthcare providers for radiation and chemotherapy treatments, as opposed to the amount ultimately paid to said providers by third-party payors;

(d)     Whether Defendants' prior standard practice and uniform course of conduct established as a matter of law and contract that the term

14

"actual charges" means and refers to the amount billed by healthcare providers for radiation and chemotherapy treatments;

(e) Whether Defendants' unilateral change of the index upon which they paid benefits arising out of radiation and chemotherapy treatments is contrary to its contractual obligations and implied duties of good faith and fair dealing;

(f) Whether the Form Letter was an anticipatory repudiation of certain obligations arising under its Cancer Only Policies with class members;

(g) Whether class members who were denied payment based on billing statements showing actual charges are entitled to restitution and/or damages for amounts wrongfully denied to them;

(h) Whether class members are entitled to a declaratory judgment holding as a matter of law and contract that "actual charges" with respect to policy benefits for claims arising out of radiation therapy and chemotherapy are indexed only to billing statements showing actual amounts charged, as opposed to the amounts subsequently paid to said providers by third-party payors as reflected in EOBs or similar statements;

(i) Whether class members are entitled to injunctive relief requiring Life Investors to honor future claims for radiation and chemotherapy and other treatments in the amount determined by

statements of charges provided by class members' healthcare providers

64. **Typicality.** Plaintiffs' claims are typical of class and subclass members' claims, in that all such claims arise out of Defendants' uniform and across-the-board breach of the terms of the Cancer Only Policies with Plaintiffs and members of the classes. This class wide breach arises from its repudiation of the policy obligations as set forth in the Form Letter and through the failure to pay benefits owed to said class and subclass members based on actual charges reflected on billing statements from the insureds' healthcare providers.

65. **Adequacy of Representation.** Plaintiff will fairly and adequately protect the members of the class and subclasses and has no interest antagonistic to those of the class or subclass members. Furthermore, Plaintiff has retained class counsel that is abundantly competent and experienced in the prosecution of class actions generally, and class actions involving insurance matters in particular.

66. **Risk of Inconsistent or Varying Adjudications For the Declaratory Relief Class.** Certification pursuant to Fed. R. Civ. P. 23(b)(2) is proper for the Declaratory Relief class defined above because the maintenance of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to interpretations of uniform policy terms and obligations that would establish incompatible standards of conduct for the Defendants as the parties opposing the class. Furthermore, certification under Fed. R. Civ. P. 23(b)(2) is proper because adjudications with respect to individual class members would, as a practical matter, be dispositive of the interests of other class members not a party to the

adjudication or would substantially impair or impede their abilities to protect their interests. In addition, the Defendants, as the parties opposing the class, as acted or refused to act on grounds generally applicable to the class, thereby making relief appropriate with respect to the class as a whole.

67    **Superiority and Predominance For The Restitution/Monetary Relief Sub-Class.** While Plaintiff specifically states that certification pursuant to Fed. R. Civ. P. 23(b)(2) is proper by itself for this entire action because monetary damages in the form of restitution is merely incidental to the declaratory and injunctive relief sought, Plaintiff alternatively alleges that certification of the Restitution/Monetary Relief Sub-Class and the Tennessee State Sub-Class defined above is likewise proper under Fed. R. Civ. P. 23(b)(3). Specifically, common issues of fact and law as set forth above predominate over any individual issues that may exist. Furthermore, a class action is superior to other available methods for a fair and efficient adjudication of this controversy because joinder of all members of the class is impractical, and adjudication of this action as a class is properly manageable. The interests of judicial economy favor adjudication of the claims alleged herein on a class basis rather than an individual basis, especially where, as here, the amount of damages for each claim are small compared to the burden and expense that would be incurred if each claim was litigated individually.

## COUNT I

### (Declaratory Judgment)

68    Plaintiff re-alleges and incorporates each of the foregoing paragraphs of this Complaint as if fully set forth herein.

69    There is an actual case or controversy between Defendants and Plaintiff and members of the Declaratory Judgment Class regarding Defendants' obligation under the Cancer Only Policy and the implied obligations of good faith and fair dealing. This issue in this case or controversy is whether Defendants are obligated under the Cancer Only Policy and the prior common and uniform course of dealing to pay claims such as those for radiation and chemotherapy treatments based on actual charges set forth in billing statements as an index to establish the amount of "actual charges" upon which the amount of benefits are based.

70.    Plaintiff, on behalf of the Declaratory Judgment Class, respectfully shows that he and the class are entitled to a declaratory judgment that Life Investors breached its Cancer Only Policies with insureds by uniformly failing to pay the proper amount of benefits as alleged herein.

71    Plaintiff further shows that he and members of the proposed Restitution/Monetary Relief Sub-Class are entitled to injunctive relief and an award of restitution for monies wrongfully withheld from them.

## COUNT II

### (Breach of Contract)

72.    Plaintiff re-alleges and incorporates each of the foregoing paragraphs of this Complaint as if fully set forth herein

73    Plaintiff was covered under Life Investors Cancer Only Policy and such policy constitutes a contract for insurance coverage

74    Plaintiff and made a valid and timely claim for benefits under the terms of the policies and Defendant has refused to pay.

18

75.     Plaintiff has paid all premiums and has met all other conditions precedent to have a valid contract for insurance coverage and has satisfied the terms of the contract entitling him to benefits under the contract

76      The Cancer Only Policy between Life Investors and the Plaintiff and Class members obligates Life Investors to provide benefits for radiation therapy and chemotherapy treatments in the amount of the "actual charges" for the care provided, subject to ceilings established by riders to the Cancer Only Policy.

77.     The term "actual charges" is not separately, specifically and expressly defined in the Cancer Only Policy.

78      However, the plain meaning of term "actual charges" with respect to healthcare as that term is used in relation to other terms throughout the policy plainly refers to the actual charge for services and care rendered by healthcare providers as shown on billing statements as the amount of payment due. It does not refer or relate to partial payments of those charges by the Plaintiff or third parties showing actual "expenses"

79.     Even if the term "actual charges" is ambiguous, Defendants' conduct prior to July 1, 2006, and other such dates applicable to the classes identified herein established through their own interpretation, standard practice and common course of dealing that the term means and refers to the actual charge for services and care rendered by healthcare providers.

80.     Alternatively, Defendants, by and through their pattern of conduct, waived and/or knowingly relinquished whatever right they possibly may have had to base the amount of such benefits on EOBs or similar statements reflecting amounts paid by third

19

party payors  This waiver results from an uninterrupted pattern of clear, unequivocal and decisive conduct establishing that submission of EOBs and similar statements was not required and that claims would instead be based on amounts charged as reflected by physician statements or other similar billing statements showing "actual charges"

81.     Defendants are likewise estopped from arguing an interpretation different from this prior practice

82     Defendants' course of dealing involving the Plaintiff prior to July 1, 2006, as set forth herein continued for approximately eight years, from 1999 until 2006, inclusive

83     On or about May 2006, Defendants informed the Plaintiff that they would discontinue paying claims for radiation therapy and chemotherapy treatments based on actual charged reflected in billing statements, and instead would only pay such claims based on the amount ultimately paid by entities such as a third-party payor like as Medicare, Medicaid, or a third party insurance company, even if the amount of payment was less than the amount of the "actual charge".  In doing so, Defendants repudiated the obligation to pay "actual charges" based on the plain language of the Cancer Only Policies and/or the standard practice and common course of dealing prior to July 1, 2006.

84     On information and belief, Members of the Restitution/Monetary Relief Sub-Class have received the same or substantially similar notices informing them of Defendants' unilateral refusal to pay benefits in the amount of such "actual charges" as reflected on healthcare providers' billing statements

85.     Plaintiff was eligible for benefits under his Cancer Only Policy, in that he was entitled to coverage for the cancer treatments he received, as shown by Defendants'

payment of all claims for which they deemed that Plaintiff's "proof of loss" had been properly submitted.

86. On or about November 2006, Defendants breached their contract with the Plaintiff by denying payment to the Plaintiff, where Plaintiff sought benefits consistent with the plain meaning of "actual charges" and Defendants' prior standard practice and common course of dealing

87. Defendant has breached, and continues to breach, its contractual duties under the insurance policy by failing and refusing to pay benefits owed the Plaintiff and by failing to perform its duties as set out in the contract.

88. As a direct and proximate result of said breaches, Plaintiff and members of the Restitution/Monetary Relief Sub-Class have suffered, and continue to suffer, substantial damages entitling them to an award of damages as permitted by applicable law. Additionally, said persons are entitled to injunctive relief requiring Life Investors to honor its Cancer Policies for future payment of benefits based on such charges

## COUNT III

### (Breach of Implied Duty of Good Faith and Fair Dealing)

89. Plaintiff re-alleges and incorporates each of the foregoing paragraphs of this Complaint as if fully set forth herein.

90. At all times relevant to the matters alleged herein, Defendants owed Plaintiff and members of the class an implied duty of good faith and fair dealing in connection with the Cancer Only Policies issued to them and the special relationship that arose there from

21

91. Defendants' duty in this regard included a good faith obligation to honor the Cancer Only Policies as written and to properly pay benefits owed to Life Investors insureds as established by contract and its longstanding and common course of dealing with its insureds.

92 Defendants breached their duty first when it was announced on or about May 2006 by way of a form letter that, after July 1, 2006, they would no longer pay radiation and chemotherapy treatment benefits using actual charges on healthcare providers' billing statements as its index for determining the benefits (i.e., the amount of insurance) to be paid to the Plaintiff. On information and belief, the Restitution/Monetary Relief Sub-Class received the same or substantially similar notification. This act was a clear repudiation of the established contractual duties under the Cancer Only Policies.

93. Defendants breach continued after sending this notice, when they systematically refused to pay claims on this basis and switching to EOBs and similar documents provided by third parties reflecting substantially lower sums of money in the form of partial payment of actual charges as its index for such benefits.

94 Plaintiff's claim for benefits and the claims for benefits of the members of the class are due and payable. Plaintiff's application was filed April 25, 2005, which constitutes a formal demand for payment, and Defendant has either failed or refused to pay further benefits

95 Defendants acted in bad faith in denying benefits to Plaintiff or in failing to timely make a decision on Plaintiff's claim

96. As a result of said breaches, Plaintiff and members of the Restitution/Monetary Relief Sub-Class suffered harm entitling them to an award of compensatory and punitive damages.

## COUNT IV

### (Bad Faith)

96. Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs as if fully set forth herein.

97. Plaintiff and members of the class were covered under the Cancer Only Policy, issued by Life Investors and administered by AEGON USA through its various wholly owned subsidiaries.

98. At all times relevant to the matters alleged herein, Defendants were under a duty to use good faith in the handling of Plaintiff's and class members' claims.

99. Defendants failed and refused to act in good faith, and instead deliberately breached the contracts of insurance in bad faith, and in the absence of any legitimate or arguable reason not to perform as required, by intentionally, willfully, deliberately, and/or recklessly refusing to pay benefits which the Defendants knew were owed the Plaintiff and members of the class under the Cancer Only Policies under which the Plaintiff and members of the class were covered.

100. Plaintiff's claim for benefits is due and payable. Plaintiff filed an application for full benefits on April 25, 2005, which constituted a formal demand for payment, and Defendants have refused to pay full benefits.

101. Defendants impeded a legitimate and well-supported claim for benefits, which clearly shows intent not to honor the terms of the policy.

23

102. Defendants acted in bad faith in denying benefits to Plaintiff and members of the class or in failing to timely make a decision on the claims.

103. As the direct and proximate result of Defendants' intentional, willful, deliberate, and/or reckless bad faith conduct and refusal to pay benefits that Defendants knew were owed the Plaintiff and to the members of the class, Plaintiff and said class members were injured and damaged as alleged above.

104. Because Defendants did not act in good faith in denying Plaintiff's and class members' claims for benefits, Defendants are liable under T.C.A. § 56-7-105(a) for additional damages in an amount up to 25% of liability.

## COUNT V

### (Violation of the Tennessee Consumer Protection Act)
### T.C.A. § 47-18-101 AND § 47-18-109

105. Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs as if fully set forth herein.

106. T.C.A. § 47-18-109 provides a private right of action to any person who suffers an ascertainable loss of money or property as a result of the use or employment by another person of an unfair or deceptive act or practice declared unlawful by the Consumer Protection Act.

107. The acts which are prohibited under the Consumer Protection Act are listed in T.C.A. § 47-18-104. In addition to specifically prohibited acts, T.C.A. § 47-18-104(b)(27) is a catchall provision prohibiting all practices which are deceptive or unfair to customers.

24

108. By ignoring the terms of the Cancer Only Policy insurance contract, by failing to adequately communicate with the Plaintiff and the members of the class, and by giving the Plaintiff and the members of the class inadequate or misleading information about their claims, the Defendants have acted unfairly and deceptively.

109. As a direct and proximate result of the Defendants' conduct, Plaintiff and the members of the class have suffered and continue to suffer monetary loss and damages.

110. Through its handling of Plaintiff's claim and the claims of the members of the class, the Defendants have willfully and knowingly violated the Tennessee Consumer Protection Act, § 47-18-101 et seq., entitling Plaintiff and the members of the class to treble damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the members of the class request that this Court grant the following relief in this case:

WHEREFORE, Plaintiff prays for relief as hereinafter set forth:

A. That the Court certify the Declaratory Relief Class as a class action pursuant to Rule 23(b)(2) as defined above, and, at such time as the Court deems proper, then certify the Restitution/Monetary Relief Sub-Class as a class action pursuant to Rule 23(b)(3) as defined above and further certify the Tennessee State Law Sub-Class;

B. That a declaratory judgment be entered for the Plaintiff and the Declaratory Relief Class, the Restitution/Monetary Relief Sub-Class and the Tennessee State Law Sub-Class as set forth herein;

C. That the Court award the Plaintiff and members of the Restitution/Monetary Relief Sub-Class restitution and/or monetary damages under Count I and Count II;

D. That the Court award the Plaintiff and members of the Tennessee State Law Sub-Class all forms of relief and statutory damages available pursuant to T.C.A § 56-7-105(a);

E. That the Court award the Plaintiff and members of the Tennessee State Law Sub-Class additional treble damages pursuant to T.C.A. § 47-18-101 et. Seq

F. That the Plaintiff and the Tennessee State Law Sub-Class be awarded punitive damages.

G. That Plaintiff and the Class be awarded the costs incurred in bringing this action together with reasonable attorneys' fees and expenses, including expert fees and prejudgment interest

H. That the Court award such other relief as the Court deems just and proper and that Plaintiff and the members of the class recover any and all other relief to which they may be entitled

### JURY DEMAND

Plaintiff demands trial by jury on all counts for which a jury trial is permitted.

Eric L. Buchanan

**OF COUNSEL:**
Eric L. Buchanan
TN State Bar No.: 018568
Eric Buchanan & Associates, PLLC
414 McCallie Avenue
Chattanooga, TN 37402
(423) 894-2552

26

Andrew P. Campbell
Thomas O. Sinclair
M. Clay Williams
Campbell, Waller & Poer, L.L.C.
2100-A SouthBridge Parkway, Suite 450
Birmingham, AL 35209
Phone: (205) 803-0051
Fax: (205) 803-0053
E-mail: tsinclair@cwp-law.com
E-mail: tsinclair@cwp-law.com
E-mail: tsinclair@cwp-law.com

## PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL AS FOLLOWS:

**AEGON USA Inc.**
AEGON USA, Inc., CT Corporation Company, 530 Gay Street, Knoxville, TN 37902

**Life Investors Insurance Company of America**
Life Investors Insurance Company of America, Commisioner of Tennessee Dept. of
Commerce and Insurance, 500 James Robertson Parkway, Nashville, TN 37243-1131

Eric L. Buchanan