IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| ANTHONY E. GOOCH, individually and on behalf of all similarly situated individuals, | ) ) ) | |
| Plaintiff, | ) ) | CLASS ACTION |
| v. | ) ) | Civil Action No: 1:07-0016 |
| | ) | JUDGE HAYNES |
| LIFE INVESTORS INSURANCE COMPANY OF AMERICA; AEGON USA, Inc. | ) ) ) ) | |
| Defendants. | ) | |

**OPPOSITION TO DEFENDANT AEGON USA, INC.'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

COMES NOW the Plaintiff, Anthony E. Gooch (hereafter "Plaintiff"), individually and on behalf of other similarly situated individuals, and files his Opposition to Defendant AEGON USA, Inc.'s Motion to Dismiss For Lack of Personal Jurisdiction. As grounds for said Opposition, Plaintiff hereby incorporates Exhibits A through K separately filed herewith as Plaintiff's Evidentiary Submission, and states as follows:

**SUMMARY OF THE ARGUMENT**

The jurisdictional contacts of Defendant AEGON USA, Inc. (hereafter "AEGON USA") with Tennessee arise vicariously out of the undisputed contacts of its wholly owned subsidiaries, Life Investors Insurance Company of America, Inc. ("Life Investors") and AEGON Financial Partners, Inc. ("AEGON Financial"). Under Tennessee law and well-established jurisdictional principals, the contacts of these entities are imputed to AEGON USA under principles of conspiracy, agency and alter ego. AEGON USA's motion should therefore be denied.

1

Plaintiff separately and respectfully notes that this Response in Opposition is being timely filed out of an abundance of caution on June 13, 2007, in accordance with L.R. 7.01, which specifies a ten-day period for response, and subject to Fed. R. Civ. P. 6(a), which provides that weekends and holidays are not to be counted towards deadlines under eleven days. Therefore, the Plaintiff does not yet have the benefit of the jurisdictional discovery the Court expressly permitted in its June 12, 2007, hearing. Plaintiff respectfully states that, upon the completion of the discovery ordered by the Court (see Exhibit J), Plaintiff will file a brief supplemental memorandum reflecting the development of additional jurisdictional facts through depositions and other discovery permitted by the Court.

## STANDARD OF REVIEW AND PROCEDURAL STATEMENT

Although the plaintiff bears the burden of establishing personal jurisdiction over the Defendant, American Copper & Brass, Inc. v. Mueller Europe, Ltd., 452 F. Supp. 2d 821, 825 (W.D. Tenn. 2006), the standard for establishing jurisdiction is easily met. "Absent an evidentiary hearing on the issue of personal jurisdiction, the plaintiff 'need only make a prima facie showing of jurisdiction.'" Williams v. Firstplus Home Loan Owner Trust 1998-4, 310 F. Supp. 2d 981, 990 (W.D. Tenn. 2004) (quoting Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002)). The Plaintiff may satisfy this prima facie showing by presenting "specific facts, by affidavit or otherwise." Williams, 310 F. Supp. 2d at 990 (citing Theunnisen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991). These pleadings, affidavits and other forms of written evidence must be viewed in a light most favorable to the Plaintiff. Theunnisen 935 F.2d at 1459.

In addition to viewing the evidence in a light most favorable to the Plaintiff, the Court should not "weigh the controverting assertions of the party seeking dismissal." American Copper & Brass, 452 F. Supp. 2d at 826; see also, See Inc. v. Imago Eyewear Pty, Ltd., 167 Fed.

2

Appx. 518, 520-21 (6th Cir. 2006) (Exhibit K). "The purpose of this rule is 'to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts,'" as AEGON has attempted to do here through the conclusory affidavit of Jeanne DeCervens (Doc. #39), filed in support of its Motion to Dismiss (Doc. #37). See American Copper & Brass, Inc., 452 F.Supp.2d at 826 (quoting Theunissen, 935 F.2d at 1459; Serras v. First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989).

## RELEVANT FACTS

The Plaintiff submits the following factual statement, subject to supplementation upon the completion of jurisdictional discovery (see Exhibit J) ordered by the Court at its June 12, 2007, hearing in this matter:

AEGON USA is a company engaged in the business of insurance, which it conducts vicariously through its operational control over its various subsidiaries, including Life Investors and AEGON Financial Services (hereafter "AEGON Financial"), and its serial disregard for the corporate structures of the same. Sworn statements from other AEGON USA employees and written materials generated by AEGON USA show that these and other wholly owned subsidiaries that are members of a conglomerate known as "AEGON USA" and the "AEGON Group", and that AEGON USA, acting through these entities, regularly provided administrative services such as claims handling, processing, payment and underwriting to its marketing subsidiaries, such as Life Investors.

**A.  AEGON's Financial Statements Present "AEGON USA" As A Single Entity Directing And Controlling Life Investors And Its Other Wholly Owned Subsidiaries.**

According to the 2005 Annual Report filed by AEGON N.V., the ultimate parent of AEGON USA, AEGON USA's operations are far more extensive than Ms. DeCervens purports

3

to describe in conclusory fashion in her affidavit. Specifically, in addition to having operations in Cedar Rapids, Iowa, and Baltimore, Maryland, AEGON USA likewise has "principal offices" in (1) Charlotte, NC, (2) Frazer, PA, (3) Little Rock, AR, (4) Los Angeles, CA, (5) Louisville, KY, (6) Kansas City, MO, (7) Plano, TX, (8) Purchase, NY, and (9) St. Petersburg, FL. See Exhibit A, p. 66. Thus, this company that claims to have no employees has eleven offices throughout the United States.

AEGON USA carries out its operations via its subsidiary companies, which it has divided into five operating groups: Agency, Direct Marketing, Services, Financial Markets, Institutional Products and Services, and Pension. See Exhibit A, p 66. AEGON USA's self-stated rationale for implementing this group structure is "to manage the organization more efficiently and to identify business synergies, pursue cross-selling opportunities and improve operating efficiencies." Id. AEGON's annual report and the manner in which it does business make clear that all subsidiaries are viewed as part of *the organization* of AEGON USA. AEGON USA controls *the organization* and all of its components, or subsidiaries. AEGON USA's operating group system also demonstrates the manner in which AEGON USA exerts direction and control over its subsidiaries by categorizing them in this system pursuant to their function within AEGON USA.

"The companies operating in the US are collectively referred to as AEGON USA." See Exhibit A, p. 66. AEGON USA's "[o]perations in the United States (carried out by the collective group of operating companies in the United States) primarily sell life insurance products. AEGON's operations in the United States also sell accident and health insurance." Id.

4

**B. AEGON's Direction And Control Over Life Investors And Disregard For Life Investor's Corporate Form.**

The Affidavit of Mary Taiber, Director of Employee Services for Life Investors and longtime employee of the companies within AEGON USA, explains AEGON USA's regular and systematic practice of using the employees of its wholly owned subsidiaries for operational activities. See Exhibit B, Declaration of Mary Taiber filed Jan. 10, 2006 in McCullough v. AEGON USA, et al, Case No. CV 05-7215 DDP (C.D. Cal). She further explains, "Operations [of AEGON USA Inc.] are carried out through subsidiaries and affiliates, which employ the employees who do the work for the operating companies within the AEGON Group. The employees who work for companies within the AEGON Group in Cedar Rapids are generally employed by Life Investors." Exhibit B, ¶ 2. Life Investors' involvement in the procuring, managing and adjusting of Plaintiff's Cancer Only Policy was clearly part of AEGON USA's operations.

Life Investors is an operating company within the AEGON Insurance Group that carries out AEGON USA's operations. See Exhibit B, ¶ 2. "Life Investors Insurance Company of America and its affiliate companies … are members of the AEGON Group, which encompasses companies owned directly or indirectly by AEGON USA, Inc." Exhibit B, ¶ 1. AEGON USA's employees who are located in Cedar Rapids, are generally employed by Life Investors and carry out AEGON USA operations. Id. Life Investors is dedicated to selling only AEGON USA products. See Exhibit A, p. 69. AEGON N.V., the ultimate parent, reports Life Investors revenue as attributable to AEGON USA in its SEC filings. Id.

5

**C.  AEGON USA's Direction And Control Over AEGON Financial And Disregard For Its Corporate Form.**

AEGON USA exerts similar control over another subsidiary called AEGON Financial. AEGON Financial is likewise an operational component in the AEGON organization and is categorized as part of the AEGON USA's self-described "Agency Group."  Exhibit C, p. 57. The function of the agency group is to "offer a wide range of insurance products through agents dedicated to selling AEGON USA products, as well as independent agents, registered representative, financial advisors and specialized marketing organizations."  Id.  AEGON USA formed AEGON Financial Partners "in early 2002 as a new internal service organization to enable the Agency Group to take better advantage of its combined size and strength by integrating the operations, technology and service functions of separate but similar operating groups."  Id.  Importantly, AEGON Financial Partners appears on almost every correspondence sent to Plaintiff regarding his policy.  See Exhibit D, Claim Forms and Instructions.

**D.  AEGON USA's Involvement With Plaintiff's Cancer Policy Through The Use of Life Investors And AEGON Financial "Employees" Based In AEGON USA Offices.**

Acting through Life Investors and AEGON Financial, AEGON USA was (and is) directly involved with all aspects of Plaintiff's policy, including its claims processing.  Plaintiff was instructed to submit his claim to AEGON Financial Partners, PO Box 36580, Louisville, Kentucky, 40232-6580, phone number 1-866-242-2806.  See Exhibit D, p. 2.  Furthermore, each time Plaintiff received a remittance from Defendants for reimbursement of cancer-related charges or expenses pursuant to a claim made on his policy, he was instructed to contact AEGON Financial Partners if he had any questions regarding said remittance.  See Exhibit E, p. 2.  The envelopes provided to Plaintiff in which to send written correspondence to Defendants regarding his claim were addressed to "***Claims Department***, AEGON Financial Partners, PO

6

Box 36580, Louisville, KY 40233-6580." See Exhibit D, p. 1 (emphasis added). The envelopes further indicate the Claims Department is "An Administrative Office For: Life Investors Insurance Company of America … Members of the AEGON Insurance Group." Id.

The "Waiver of Premium/Waiver of Disability Claim Form" provided to Plaintiff regarding his policy number 0D1302881, claim number A135757, specifically lists Life Investors Insurance Company of America as a member of the AEGON Insurance Group. See Exhibit E, Waiver of Premium Claim Form. The address and phone number listed for the "Claims Department" on the Waiver of Premium/Disability Claim Form is identical to the address and phone number provided for AEGON Financial Partners. Id. Furthermore, the address listed for the "Administrative Office" on Life Investors Insurance Company's letterhead is identical to the address provided for AEGON Financial Partners and the "Claims Department" on the Waiver of Premium/Disability Claim Form. See Exhibit D and Exhibit F. The same address appears on the Explanation of Benefits sent to the Plaintiff as the address of Life Investors Insurance Company of America. See Exhibit H.[1] Finally, the most recent benefit check sent to the Plaintiff states that any questions regarding the payment should be directed to "AEGON Financial Partners." See Exhibit I, check dated June 7, 2007.

**ARGUMENT**

I. **PERSONAL JURISDICTION OVER AEGON USA IS CONSISTENT WITH THE TENNESSEE LONG-ARM STATUTE AND DUE PROCESS.**

Personal jurisdiction exists over AEGON USA under Tenn. Code Ann. § 20-2-214 because of its substantial direction and control over its wholly-owned subsidiaries, Life Investors and AEGON Financial, and the use of employees from these entities to administer the Plaintiff's

---

[1] The reason the addresses provided for Life Investors and AEGON Financial Partners are identical is simple: Life Investors is a direct, wholly-owned subsidiary of AEGON U.S. Holding Corporation and ***is actually known as AEGON USA, Inc***. See Exhibit G, p. 7, State of Maryland Insurance Administration Market Conduct Examination Report.

7

Cancer Only Policy. While AEGON USA may not have any persons it considers "employees" as claimed by Ms. DeCervens, AEGON USA instead regularly uses and directs – and therefore relies upon – the employees of Life Investors and AEGON Financial to carry out its operations. In fact, as established by Ms. Taiber's Affidavit, AEGON USA goes so far as to actually *staff its office* with these employees. See Exhibit B. This highly intimate level of cooperation gives rise to personal jurisdiction over AEGON USA, to which the contacts of both Life Investors and AEGON Financial are imputed under conspiracy, agency, and alter ego principles. Given the heightened degree of purposeful activity directed at Tennessee through the use of Life Investors and AEGON Financial personnel, personal jurisdiction over AEGON USA is consistent with concepts of Due Process.

    **A.    The Tennessee Long-Arm Statute, Which Applies In This Case, Extends Personal Jurisdiction Of Tennessee Courts To The Limits Of Due Process.**

"In diversity actions, a federal court applies the law of the forum state in which it sits to determine whether personal jurisdiction is appropriate." Williams, 310 F. Supp. 2d at 990. The federal court is therefore limited by the state's long-arm statute and federal due process concerns in exercising personal jurisdiction. Id. Tennessee's long-arm statute, Tenn. Code Ann. § 20-2-214(a)(6) (2004), "extends the personal jurisdiction of Tennessee courts to the limits of the Due Process Clause." American Copper & Brass, Inc., 452 F. Supp. 2d at 826. "Therefore, [this] Court need only determine whether the assertion of personal jurisdiction over Defendant[] would violate the Due Process clause." Id. This Court may exercise personal jurisdiction over AEGON USA "so long as [AEGON USA] has 'certain minimum contacts' with the forum such that the exercise of personal jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" American Copper, 452 F.Supp.2d at 826 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L.Ed. 95 (1945)).

8

Under Tenn. Code Ann. § 20-2-214, contacts of one individual or entity may be imputed to another through principles of conspiracy, agency and alter ego. Chenault v. Walker, 36 S.W.3d 45, 54-55 (Tenn. 2001) (conspiracy); Williams, 310 F. Supp. 2d at 994 (agency); and Boles v. Nat'l Development Co., Inc., 175 S.W.3d 226, 244 (Tenn. App. 2005) (alter ego). Here, the contacts of Life Investors (which has not disputed jurisdiction) and AEGON Financial (with whom the Plaintiff dealt extensively) are imputed to AEGON USA for the reasons discussed below.

> **B.  AEGON USA's Use Of Life Investors and AEGON Financial Employees To Conduct Its Day-To-Day Affairs Evidences An Agreement To Pursue The Unlawful Activities Alleged In The Complaint That Gives Rise To Jurisdiction Under Conspiracy Principles.**

The Tennessee Long-Arm Statute specifically provides for conspiracy as a basis for personal jurisdiction: "A court may exercise personal jurisdiction over a person, who acts directly or indirectly, as to a claim for relief arising from the person's …. [c]ausing tortious injury by an act or omission in this state…." Tenn. Code Ann. § 20-2-223(a) and (a)(3). The existence of this basis for jurisdiction has been affirmed both by Tennessee state and federal courts. See Chenault v. Walker, 36 S.W.3d 45, 54-55 (Tenn. 2001) ("[W]e hold that the conspiracy theory of personal jurisdiction, premised on the basic principle of conspiracy liability, fits within the Tennessee long-arm statute and comports with due process."); American Copper & Brass, Inc., 452 F. Supp. 2d at 830 ("This Court finds the conceptual framework of applying basic principles of agency and conspiracy law to jurisdictional matters unobjectionable on its face.").

The Tennessee Supreme Court has defined Tennessee's conspiracy theory of personal jurisdiction as follows:

> Under [this] doctrine, when (1) two or more individuals conspire to do something, (2) that they could reasonably expect to lead to consequences in a particular forum, if (3) one co-conspirator commits overt acts in furtherance of the conspiracy, and (4) those acts are of a type which, if committed by a non-resident, would subject the non-resident to personal jurisdiction under the long-arm statute of the forum state, then those overt acts are attributable to the other co-conspirators, who thus become subject to personal jurisdiction in the forum, even if they have no direct contacts with the forum.

Chenault, 36 S.W.3d at 53 (quoting Cawley v. Bloch, 544 F. Supp. 133, 135 (D. Md. 1982)).

In Chenault v. Walker, the Tennessee Supreme Court applied this concept to affirm the personal jurisdiction exercised by the state court over three defendants that had no direct contacts with Tennessee, but each of whom had business dealings with a co-defendant that did which directly implicated the alleged wrongful conduct at issue. Chenault, 36 S.W.3d at 52. In that case, the plaintiff sued various defendants, including certain out-of-state companies and individuals, for fraud. The Plaintiff claimed that each of the defendants had conspired to fraudulently induce him into investing in two hotels by tortiously concealing the hotels' financial instability. The Court held that jurisdiction existed over the out-of-state defendants notwithstanding their lack of direct contacts with Tennessee because of "the intertwined relationship" with defendants over whom jurisdiction was established. Chenault, 36 S.W.3d at 56. The Court also found that the defendants had worked closely together on the transactions at issue. Id. Based on this showing, the Court concluded that the contacts of a Tennessee defendant were imputed to the out-of-state defendants on conspiracy grounds. Id. at 58.

The conspiracy here involves AEGON USA's agreement with its wholly owned subsidiaries, including Life Investors and AEGON Financial, to sell and administer Cancer Only Policies on its behalf in Tennessee and other states throughout the country. Mary Taiber's Affidavit on behalf of Life Investors in McCullough is extremely significant in this respect,

10

because she explains this agreement by stating that AEGON USA's operations are carried out by its subsidiaries. Exhibit B, ¶ 2. She also explains that the persons charged with carrying out these operations from the Cedar Rapids Office – the same office implicated here as demonstrated by the Cedar Rapids address on the correspondence and documents sent to the Plaintiff -- are *Life Investors employees*. Id. Therefore, AEGON USA warehouses Life Investors employees to carry out the activities alleged here. AEGON USA's intertwinement with Life Investors extends to other aspects of operations as well, namely, the operations of the AEGON Group in general. Id. at ¶ 1. AEGON USA's benefit in this *quid pro quo* arrangement is that it receives Life Investors' profits and reports them through its own parent's filings as AEGON USA profits. See Exhibits A and C.

AEGON Financial has a similar arrangement with AEGON USA and is categorized by AEGON USA as a part of its "Agency Group." See Exhibit A, p. 66, and Exhibit C, p. 57. AEGON USA relies upon AEGON Financial as part of the operational wing of the entire AEGON conglomerate. Id. The function of the Agency Group is to "offer a wide range of insurance products through agents dedicated to selling AEGON products, as well as independent agents, registered representatives, financial advisors and specialized marketing organizations." Id. AEGON Financial's involvement in conjunction with Life Investors and AEGON USA as to Plaintiff's Cancer Only Policy is evident from the volume of correspondence the Plaintiff received bearing AEGON Financial's name. See Exhibits D, E, F, H and I.

By warehousing the Life Investors and AEGON Financial employees who carried out the conduct alleged in the Complaint, AEGON USA facilitated, enabled, and -- given its role as the hub for all of AEGON NV's United States-based operations – directed and controlled the activities of these entities which give rise to this action. The interconnections between these

entities as described by Mary Taiber and by AEGON's financial statements and SEC filings demonstrate the existence of a conspiracy sufficient to establish personal jurisdiction under Chenault.

  **C.**  **AEGON USA's Direction And Control Over The Operational Activities Of Life Investors Gives Rise To Personal Jurisdiction Under Agency Principles.**

The Tennessee Long-Arm statute likewise provides for personal jurisdiction based on agency. Under Tenn. Code Ann. § 20-2-214(c), a nonresident of Tennessee may be subject to personal jurisdiction by virtue of the actions of its agent or personal representative.[2] "In determining whether an agency relationship exists, the principal's right to control the actions of an agent is an important factor, but that right of control is not necessarily as important as the principal's actual exercise of control over the agent." Williams, 310 F. Supp. 2d at 994.

Nixon v. Celotex Corp., et al., 693 F. Supp. 547 (W.D. Mich. 1988) is instructive as to the type of control necessary for agency jurisdiction to accrue. In that case, the Court held that the Plaintiff, who asserted various employment-related claims, presented substantial evidence for the court to exercise personal jurisdiction over a corporation for the acts of a subsidiary. This evidence included materials showing (1) that two of Celotex's managers were employees of JWC; (2) that JWC developed and set Celotex's personnel manual and employment policies; and (3) that Celotex's employee salary and pension benefits were paid with checks drawn on JWC accounts. Nixon, 693 F. Supp. at 550. The Court held that "Celotex's contacts with [the forum state] may fairly be attributed to JWC for purposes of an action arising out of the employment

---

[2] Tenn. Code Ann. § 20-2-214(b) explains that this section, including subsection (c), applies to "corporations and all other entities which would be subject to service of process if present in this state."

relationship and relating to employment and personnel decisions made jointly by JWC and Celotex."[3] Id.

The agency-related facts in the instant case are almost identical. Here, AEGON USA retains Life Investors employees to staff its Cedar Rapids office. Exhibit B, ¶ 2. These employees are charged with executing AEGON USA's operations from that office. Id., at ¶ 1. These operations include underwriting and claims handling of Cancer Only Policies issued by Life Investors as shown by the Plaintiff's dealings with this Cedar Rapids office. AEGON USA is also the entity that provides benefits to Life Investors employees and the employees of other subsidiaries. Exhibit B, ¶ 1.

AEGON USA similarly directs and controls the Cancer Only Policy-related activities of AEGON Financial, which corresponded directly with the Plaintiff. See Exhibits D, E, F, H and I. AEGON Financial employees, who were *also* housed in AEGON USA's Cedar Rapids office, handled claims processing for the Cancer Only Policy as shown by its correspondence with the Plaintiff. Exhibit D and F. For instance, the Plaintiff was instructed to submit his claim to AEGON Financial at the same address where Life Investors (and AEGON USA) are located. Exhibit D, p. 2. The Plaintiff was also instructed to contact AEGON Financial with any questions he had about his benefits, as well as any other correspondence regarding his claims. Exhibit I. Finally, the envelope with which he was provided for submitting a claim was self-addressed to AEGON Financial in Louisville, Kentucky, see Exhibit D, p. 1, which coincidently is where one AEGON USA's many offices throughout the United States is located, see Exhibit A, p. 66.

---

[3] The Nixon court further held that jurisdiction may extend to a parent corporation *even in the absence of agency or alter ego situations*. On this point, the Court noted that "[t]here may be some situations where a subsidiary could not be considered an agent or alter ego under corporate law, but it would nonetheless be fair to subject the parent to jurisdiction for some [of] its subsidiary's activities." Nixon, 693 F. Supp. at 551.

In summary, all of AEGON USA's business operations are conducted through its subsidiaries, including the two subsidiaries directly implicated in this action (one of which is a co-defendant). Id. (AEGON USA's "[b]usiness operations are conducted through the life insurance subsidiaries of AEGON USA, Inc."). The operations of Life Investors and AEGON Financial Group are carried out for the benefit of AEGON USA, as is made clear by the fact that AEGON N.V. lists the gross revenue of its wholly owned subsidiaries, including Life Investors and AEGON Financial Group, in collective fashion as AEGON USA's gross revenue in its SEC filings. See Exhibit A, p. 69. Throughout AEGON N.V's annual report, the business operations and earnings of AEGON USA's subsidiaries are discussed in terms of being generated by AEGON USA. See Exhibit A. Life Investors and AEGON Financial Group work together to sell AEGON insurance products for the benefit of their parent company AEGON USA. Plaintiff's cause of action arising from the unilateral change in Cancer Only Policy terms was the result of decisions made by AEGON USA as effectuated though Life Investors and AEGON Financial employees.

AEGON USA, by contrast, has merely presented this Court with a conclusory affidavit categorically denying all jurisdictional facts. As discussed *supra*, this Court is to view evidence in a light most favorable to the Plaintiff and should not "weigh the controverting assertions of the party seeking dismissal." American Copper, 452 F. Supp. 2d at 826. The affidavit of Mary Taiber, the AEGON N.V. Annual Report 2004, and the AEGON N.V. Annual Report 2005 each show the existence of agency jurisdiction under Nixon. For this reason, AEGON USA's motion should be denied.

### D. AEGON USA's Disregard Of Corporate Form As To Life Investors And AEGON Financial Supports Personal Jurisdiction Under Principles of Alter Ego.

Jurisdiction likewise arises out of AEGON USA's regular practice of disregarding corporate formalities and using Life Investors and AEGON Financial employees as its own to conduct its operations. It also presents itself to the public as a single entity, of which Life Investors and AEGON Financial are merely "operational divisions." Under Tennessee law, such facts are sufficient to impute the contacts of Life Investors and AEGON Financial to AEGON USA.

In appropriate cases "and in the furtherance of the ends of justice," Tennessee courts will discard an allegedly separate corporate existence and find it to be the alter ego of another entity for purposes of liability and/or jurisdictional purposes. Boles, 175 S.W.3d at 244. General factors that Tennessee courts consider when determining whether one corporate entity is the alter ego of another include, among other things, the failure to maintain arms length relationships among entities. Boles, 175 S.W.3d at 245 (citing Emergicare Consultants, Inc., 2000 WL 1897350, at *2 (citing Federal Deposit Ins. Corp. v. Allen, 584 F. Supp. 386 (E.D. Tenn. 1984)); see also Federal Deposit Ins. Corp. v. Allen, 584 F. Supp. 386, 397 (E.D. Tenn. 1984).

Although there are other factors that may be considered as well, a plaintiff need not present evidence of such factors for the Court to pierce the corporate veil. See Boles, 175 S.W.3d at 246; see also Oceanics Schools, Inc. v. Barbour, 112 S.W.3d 135, 140 (Tenn. App. 2003) (citing In re B & L Laboratories, Inc., 62 B.R. 494, 504 (Bankr. M.D. Tenn. 1986)). Rather, when the evidence shows that "the corporate form is used as an essentially unfair device – when it is used as a sham – courts may act in equity and disregard the usual rules of law in order to avoid an inequitable result." Oceanics, 112 S.W.3d at 144.

The instant case is similar to Flynn v. Greg Anthony Construction Co., Inc., 95 Fed. Appx. 726 (6th Cir. 2003) (Exhibit K), in which the Court held that the plaintiffs had established a prima facie case for personal jurisdiction over both corporate defendants based on a theory of alter ego. In support of their assertion that personal jurisdiction existed pursuant to alter ego, the Plaintiffs presented evidence that: 1) the corporate defendants are listed with the same address; 2) the corporate defendants share the same phone line; 3) one corporate defendants uses the other corporate defendant's letterhead for its business memoranda; and 4) one corporate defendant submits its union reports on the other corporate defendant's stationary. Flynn, 95 Fed. Appx. at 736. The Court held that "[a]lthough Defendants subsequently explained away these accusations, the Defendants' controverting assertions should not be considered when determining whether Plaintiffs presented a prima facie case for personal jurisdiction." Flynn, 95 Fed. Appx. at 737. Construing the facts in the light most favorable to the Plaintiffs, the Court concluded that the Plaintiffs "made a prima facie showing of personal jurisdiction over both corporate Defendants." Id.

Here, AEGON USA, Life Investors, and AEGON Financial all reside at the same address in Cedar Rapids, and it is from that address that nearly all the communications with the Plaintiff over his benefits occurred. Further, given the fact that AEGON USA has Life Investors and AEGON Financial employees conducting its business operations, the dealings between these entities clearly are not arm's length with respect to the activities alleged here. Rather, each entity is interchangeable depending on which facet of the Cancer Only Policy or part of the claims process is involved. Given these facts, AEGON USA should not be permitted to hide behind its corporate structure to avoid its share of the responsibility (as well as discovery) for the administration of these policies and the decision-making affecting the same.

### E. The Contacts Imputed To AEGON USA Through The Actions Of Its Subsidiaries Satisfy Due Process Guarantees.

A finding of sufficient allegations and evidence establishing either a conspiracy, an agency relationship, or application of alter ego principles supports personal jurisdiction over AEGON USA by and through the activities of Life Investors, as well as AEGON Financial. Because there is no dispute that Life Investors in particular has sufficient contacts with this forum and that jurisdiction over this entity satisfies notions of fair play and substantial justice, AEGON USA's motion attacking this Court's jurisdiction is without merit.

## II. THE PLAINTIFF ANTICIPATES THAT JURISDICTIONAL DISCOVERY PERMITTED BY THE COURT AT THE JUNE 12, 2007, HEARING WILL YIELD ADDITIONAL INFORMATION REVEALING ITS JURISDICTION OVER AEGON USA.

As mentioned at the outset of Plaintiff's Response in Opposition, the Plaintiff has filed this Response in Opposition out of an abundance of caution in order to comply with L.R. 7.01. However, to the extent the Court has permitted Plaintiff the opportunity to conduct jurisdictional discovery as to AEGON USA consistent with Exhibit J, Plaintiff's Response will require supplementation to reflect the substance of the deposition testimony and other information that will soon be developed. To this end, the Plaintiff respectfully states that he will timely file a supplemental Response so that the Court may fully consider this issue having the benefit of the additional information soon to be adduced through the discovery it ordered on June 12, 2007 (or the day before the instant Response was filed).
.

## CONCLUSION

The Defendant's Motion to Dismiss is without merit because of conspiracy, agency, and later ego principles. Plaintiff has presented substantial evidence that AEGON USA, by and

17

through its agents Life Investors and AEGON Financial, has substantial contacts with this forum and it comports with traditional notions of fair play and substantial justice for them to be hailed into court here.

Plaintiff anticipates that the discovery to be completed within the days following the filing of this Response will further illuminate the extent of AEGON USA's imputed contacts, and will file with the Court a supplemental Response in Opposition summarizing the same.

For these reasons, the Plaintiff respectfully request that this Court deny AEGON USA's Motion to Dismiss.


Respectfully submitted,

/s/ Thomas O. Sinclair
Thomas O. Sinclair
One of the Attorneys for Plaintiff


**OF COUNSEL:**
Eric L. Buchanan
TN State Bar No.: 018568
Eric Buchanan & Associates, PLLC
414 McCallie Avenue
Chattanooga, TN 37402
Phone: (423) 634-2506
Fax:    (423) 634-2505

Andrew P. Campbell
Thomas O. Sinclair
M. Clay Williams
Campbell, Waller & Poer, L.L.C.
2100-A SouthBridge Parkway, Suite 450
Birmingham, AL 35209
Phone: (205).803-0051
Fax:    (205).803-0053

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing has been served upon the following counsel of record via the Court's electronic filing system, this the 13th day of June, 2007.

Thomas H. Dundon, Esq.
A. Scott Ross, Esq.
2000 One Nashville Place
150 Fourth Avenue North
Nashville, TN 37219-2498

Markham R. Leventhal, Esq.
Jorden Burt LLP
777 Brickell Avenue, Suite 500
Miami, FL 33131

                                                /s/ Thomas O. Sinclair
                                                Of Counsel