# EXHIBIT

# "1"

EXHIBIT "1"



BANKERS UNITED LIFE ASSURANCE COMPANY



LIFE INVESTORS INSURANCE COMPANY OF AMERICA



PFL LIFE INSURANCE COMPANY

December 17 1997

Re: Policy No: 0D1302881

Dear Applicant:

Thank you for choosing our company to help meet your insurance needs. The product you purchased is one of the best supplemental insurance plans available in the market place today and we pride ourselves on the service we provide to our policyholders.

We would like to take this opportunity to let you know how much we appreciate your business. You will find our staff takes a personal interest in each individual customer. Please look over your policy carefully and if you find anything that is not correct, notify us immediately.

Included with your policy you will find Identification Cards and a Service Request Card for your safe keeping. If you ever have any questions, we encourage you to write or call our toll free number, 1-800-322-0426.

Once again, we would like to say thank you for choosing the Supplemental Insurance Division.

Sincerely,

Jack Dykhouse

Jack Dykhouse
President
Supplemental Insurance Division

Enclosures: As stated



Supplemental Insurance Division

SUPPLEMENTAL INSURANCE DIVISION
1020 West Fourth Street P.O. Box 1063 Little Rock, AR 72203-8063 501-372-5550 1-800-322-0426

# IMPORTANT INFORMATION TO POLICYHOLDERS

In the event you need to contact someone about this policy for any reason please contact your agent. If you have additional questions you may contact the insurance company issuing this policy at the following address and telephone number:

Life Investors Insurance Company of America
Post Office Box 8063
Little Rock, Arkansas 72203
(501) 372-5550

If you have been unable to contact or obtain satisfaction from the company or its agent, you may contact the Tennessee Department of Commerce and Insurance at:

Department of Commerce and Insurance
500 James Robertson Parkway
Nashville, Tennessee 37243-0565
(615) 741-2825

Written correspondence is preferable so that a record of your inquiry is maintained. When contacting your agent, company or the Department of Insurance, have your policy number available.

## COVERAGE

Generally, individuals will be protected by the Life and Health Insurance Guaranty Association if they live in this state and hold a life or health insurance contract, or an annuity, or if they are insured under a group insurance contract, issued by an insurer authorized to conduct business in Tennessee. The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

## EXCLUSIONS FROM COVERAGE

However, persons holding such policies are **not** protected by this Association if:

(1) they are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state);

(2) the insurer was not authorized to do business in this state;

(3) their policy was issued by a nonprofit hospital or medical service organization (the "Blues"), an HMO, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company or similar plan in which the policy-holder is subject to future assessments, or by an insurance exchange.

The Association also does **not** provide coverage for:

(1) any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as a variable contract sold by prospectus;

(2) any policy or reinsurance (unless an assumption certificate was issued);

(3) interest rate yields that exceed an average rate;

(4) dividends;

(5) credits given in connection with the administration of a policy by a group contract holder;

(6) employers' plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them);

(7) unallocated annuity contracts (which give rights to group contractholders, not individuals), unless qualified under Section 403(b) of the Internal Revenue Code, except that, even if qualified under Section 403(b), unallocated annuities issued to employee benefit plans protected by the federal Pension Benefit Guaranty Corporation are not covered.

## LIMITS ON AMOUNT OF COVERAGE

The act also limits the amount the Association is obligated to pay out: The Association cannot pay more than what the insurance company would owe under a policy or contract. Also, for any one insured life, the Association will pay a maximum of $300,000 - no matter how many policies and contracts there were with the same company, even if they provided different types of coverages. Within this overall $300,000 limit, the Association will not pay more than $100,000 in cash surrender values, $100,000 in health insurance benefits, $100,000 in present value of annuities, or $300,000 in life insurance death benefits - again, no matter how many policies and contracts there were with the same company, and no matter how many different types of coverages.

# *Life Investors*

## Insurance Company of America

A Stock Company (Hereinafter called: We, our or us)
Home Office: Cedar Rapids, Iowa
Administrative Office: P.O. Box 8063, Little Rock, Arkansas 72203
Toll Free Telephone No: 1-800-322-0426

## THIS POLICY CONTAINS A 30 DAY WAITING PERIOD

## CANCER ONLY POLICY

### INSURING CLAUSE

We agree to insure you for loss incurred, while this policy is in force, from Cancer Positively Diagnosed after the "waiting period", subject to the provisions on the following pages of this policy.

This policy is issued in consideration of statements made in your application and the payment of the full first premium shown on the POLICY SCHEDULE page.

### IMPORTANT NOTICE

**Please read the copy of the application attached to this policy. Carefully check the application and write to Life Investors Insurance Company of America, Administrative Office, P.O. Box 8063, Little Rock, Arkansas 72203 within 10 days, if any information shown on it is not correct and complete, or if any past medical history has been left out of the application. This application is a part of the policy and the policy was issued on the basis that the answers to all questions and the information shown on the application are correct and complete.**

## *THIS IS A LIMITED POLICY - READ IT CAREFULLY*

### NOTICE OF 10 DAY RIGHT TO EXAMINE POLICY

**If you are not satisfied with this policy, it may be returned for a full refund of premium. This may be done by delivering it or mailing it to us; or to the agent who took your application. This must be done not later than ten (10) days after you receive the policy. Immediately upon such delivery or mailing, this policy will be deemed void as of the Effective Date. Any premium paid for it will be refunded.**

### PREMIUM RATE SUBJECT TO CHANGE - GUARANTEED RENEWABLE FOR LIFE

This policy can be continued for life. As long as the premium is paid before the end of the grace period we cannot cancel this policy. However, we may from time to time change the table of rates that apply to your premiums. Any such change will apply to all policies issued in your Class. No change in the table of rates will take effect for this policy until the Renewal Date next following the date of such change. We will give the Insured written notice at least 31 days prior to any rate change.

Signed for Life Investors Insurance Company of America by:

Craig D. Vermie
Secretary

President

Countersignature - Licensed Resident Agent
(If Required By Law)

Insured - ANTHONY E GOOCH    Policy Date: 12-10-1997    Policy Number: 0D1302881

Term - MONTHLY    Term Premium - $41.80

LPC01TN

LIFE INVESTORS INSURANCE COMPANY OF AMERICA
HOME OFFICE: CEDAR RAPIDS, IOWA
ADMINISTRATIVE OFFICE: LITTLE ROCK, ARKANSAS 72203

# POLICY SCHEDULE

INSURED: ANTHONY E GOOCH

POLICY NUMBER: 0D1302881

AGE AT ISSUE: 52 MALE

EFFECTIVE DATE: 11-24-1997

## BENEFIT COVERAGE AND PREMIUMS

| FORM | EFFECTIVE DATE | TYPE OF COVERAGE | MONTHLY PREMIUM AMOUNT |
|---|---|---|---|
| LPC0100 | 11-24-1997 | TWO ADULT FAMILY CANCER POLICY<br>POLICY DEDUCTIBLE: NONE<br>DAILY HOSPITAL INDEMNITY BENEFIT: $100<br>RADIATION/CHEMOTHERAPY/BLOOD -<br>CALENDAR YEAR MAXIMUM: $5,000 | $16.05 |
| LRC0100 | 11-24-1997 | RADIATION/CHEMOTHERAPY/BLOOD -<br>ADDITIONAL BENEFITS RIDER<br>CALENDAR YEAR MAXIMUM: UNLIMITED | $20.75 |
| LRC532 | 11-24-1997 | FAMILY<br>INITAL DIAGNOSIS BENEFIT RIDER<br>INITIAL DIAGNOSIS BENE $1,000 | $5.00 |

TOTAL PREMIUM $41.80

PAYMENT METHOD: GROUP BILLING

## SECTION A - DEFINITIONS

### YOU, YOUR OR YOURS

The Insured or any other Covered Person under a: Single Parent Family Policy or Family Policy.

### INSURED

The person who has answered the questions and signed the application and/or whose name appears on the POLICY SCHEDULE page.

### COVERED PERSON(S)

"Covered Person" means a person who has been accepted by us for coverage and includes only the Insured, the Insured's Spouse and/or Dependent Children who have/has provided Evidence of Insurability.

Any eligible Spouse or Dependent Child who does not become a Covered Person on the Effective Date may be added to the policy by our endorsement subject to:

(1) The completion of an application providing Evidence of Insurability; and

(2) payment of the additional premium, if required.

### SPOUSE

The Insured's legally married Spouse named in the application or the Insured's common law Spouse named in the application if legally recognized in the state where this policy was issued.

### INDIVIDUAL POLICY

Provides coverage for the Insured only.

### SINGLE PARENT FAMILY POLICY

Provides coverage for the Insured and at least one other Covered Person who is not the Insured's Spouse.

### FAMILY POLICY

Provides coverage for the Insured, the Insured's Spouse, and any other Covered Person.

### POLICY DATE

The date on which premium payments begin. It is the date shown on the face page of the policy. All renewal and anniversary dates are based on this date.

### EFFECTIVE DATE

The date on which the 30 day "waiting period" begins. The Effective Date is the date shown on the policy schedule page for all persons accepted for coverage at time of issue provided the application has been accepted by us, the policy is issued and the full first premium has been paid; or the date shown by endorsement for all persons added to coverage after the policy is issued.

### RENEWAL DATE

The date on which the next premium (Renewal Premium) is due. Renewal Dates are determined from the Policy Date by the mode of premium selected.

### POLICY ANNIVERSARY

The same day and month as the Policy Date for each year this policy remains in force.

### CONVERSION DATE

(1) The date upon which this policy becomes eligible for conversion (see SECTION J); or (2) the first Renewal Date after this policy becomes eligible for conversion if the premium payment mode is monthly; or (3) any other later date under (1), or any other later Renewal Date under (2) indicated in writing by the Insured.

### IMMEDIATE FAMILY

Your Spouse, father, mother, brothers, sisters, or children.

### USUAL AND CUSTOMARY

The normal and reasonable charge for a service, an apparatus, or medicine in the geographic area where provided.

### CLASS

Any group of individually insured persons under the same policy form who can be identified by the following characteristics: age at issue or original state of issue.

### COMMON CARRIER

Commercial airline, inter-city busline, or passenger train.

### EVIDENCE OF INSURABILITY

Correct and complete answers to the questions in the application, and your medical history if necessary, which are used by us to base our acceptance of you for coverage under this policy.

### CANCER

A disease evidenced by the presence of a malignancy characterized by the uncontrolled and abnormal growth and spread of malignant cells in any part of the body. This includes: Carcinoma, sarcoma, malignant melanoma, lymphoma, leukemia, Hodgkin's Disease or any malignant tumor. Cancer does not include: Leukoplakia, hyperplasia, polycythemia, moles, lesions, or similar diseases.

### SKIN CANCER

Basal cell epithelioma or squamous cell carcinoma. It does not include malignant melanoma or mycosis fungoides. These are not considered Skin Cancers under this policy for the purpose of paying benefits under Item 22, SECTION E, "Skin Cancer".

### VITAL ORGAN

A Vital Organ is any organ of the body whose functioning is necessary to the continuation of life. For the purposes of this definition, a Vital Organ shall include one of two lungs or one of two kidneys.



Case 1:07-cv-00016 Document 69-1 Filed 07/12/07 Page 8 of 30 PageID #: 1066

### POSITIVE DIAGNOSIS/POSITIVELY DIAGNOSED

A diagnosis made by a Pathologist based on a microscopic examination of fixed tissue or preparations from the hemic system either during life or post mortem (i.e. a pathological diagnosis). The Pathologist's judgment for establishing the diagnosis shall be based solely on the criteria of malignancy as accepted by the American Board of Pathology or the Osteopathic Board of Pathology after a study of the histocytologic architecture or pattern of the suspect tumor or tissue specimen. We will accept a clinical diagnosis in lieu of a pathological diagnosis only when: (a) The latter cannot be made; medical evidence substantially documents the diagnosis; and you receive definitive treatment for the Cancer; or (b) we pay benefits under Item 22, SECTION E, "Skin Cancer".

### DATE OF POSITIVE DIAGNOSIS

It is the day on which:

(a) Tissue specimen is taken, or the definitive diagnostic test is performed which confirms Positive Diagnosis when performed by a Pathologist; or

(b) Positive Diagnosis is pronounced when a clinical diagnosis is made.

### TOTAL DISABILITY

A sickness or injury which results in a person being:

(a) Unable to perform all of the substantial or material duties of his or her regular occupation during the first two (2) years beginning with the commencement of such sickness or injury; and
(b) unable to engage in any employment or occupation for which he or she is or becomes qualified by reason of education, training, or experience after the first two (2) years beginning with the commencement of such sickness or injury; and
(c) under the regular care and attendance of a Physician.

Successive periods of Total Disability separated by 60 days or less shall be considered one period of Total Disability.

### TOTALLY DISABLED

A person who meets the definition of Total Disability.

### DATE OF TOTAL DISABILITY

The first day on which a person meets the definition of Total Disability.

### HOSPITAL

"Hospital" means an institution which:

(1) Is operated pursuant to law; and

(2) is primarily engaged in providing or operating either on its premises or in facilities available to the hospital on a prearranged basis and under supervision of a staff of one or more duly licensed Physicians, medical, diagnostic, and major surgery facilities for medical care and treatment of sick and injured persons on an inpatient basis; and

(3) provides 24 hour nursing service by or under the supervision of registered graduate professional nurses (RN's).

"Hospital" does not include an institution operated as a:

(1) Convalescent home; convalescent, rest, or skilled nursing care facility, or hospice care center; or

(2) facility primarily affording custodial, rehabilitative or educational care; or

(3) facility for the aged, drug addicts, or alcoholics.

### HOSPITAL CONFINED

A Hospital stay during which you are confined as an inpatient and charged for room and board each day.

### PERIOD OF HOSPITAL CONFINEMENT

A Hospital confinement for which you are charged room and board for each day you are confined. Successive confinements separated by 30 days or less shall be considered as one Period of Hospital Confinement.

### OUTPATIENT

A person who is: Admitted to a Hospital for medical tests, treatment or services; released on the same day; and not charged for room and board. A person who receives treatment at: A Physician's office, an Ambulatory Surgical Center, or an Outpatient medical clinic is also an Outpatient.

### PHYSICIAN

Anyone, other than you or a member of your Immediate Family, who is duly licensed and certified as a practitioner of the healing arts, and legally licensed to diagnose and treat any sickness or injury within the scope of his or her license.

### PATHOLOGIST

A physician who has been certified by: The American Board of Pathology, or the Osteopathic Board of Pathology to practice pathological anatomy.

### RADIATION THERAPIST

A physician certified by the American Board of Radiology to administer therapeutic radiation.

### PHYSICAL THERAPIST

Anyone, other than you or a member of your Immediate Family, who is licensed and certified to treat physically disabled or handicapped persons with physical agents and methods such as: Massage, manipulation, therapeutic exercises, cold, heat, hydrotherapy, electrical stimulation and light to assist in rehabilitation.

### SPEECH PATHOLOGIST/THERAPIST

Anyone, other than you or a member of your Immediate Family, who is licensed and certified to practice speech pathology.

### PRIVATE DUTY NURSE

Anyone, other than you or a member of your Immediate Family who is a Licensed Practical Nurse (L.P.N.), a Licensed Vocational Nurse (L.V.N.), or a graduate Registered Nurse (R. N.)

AMBULATORY SURGICAL FACILITY

A licensed surgical facility consisting of: An operating room, facilities for the administration of general anesthesia, and a post-surgery recovery room. It must also require that the patient be: Admitted, treated, and released during a twenty four hour period.

EXTENDED CARE FACILITY

An institution or that part of an institution licensed or accredited to provided nursing or rehabilitative care under the supervision of a Physician or a Registered Nurse which provides 24 hour skilled nursing service and maintains daily medical records on each patient. It does not include institutions or parts of institutions which are primarily for the care and treatment of: The aged, drug addicts, or alcoholics.

HOSPICE CENTER

A facility which provides short periods of confinement for terminally ill patients. A Hospice Center must operate a program of hospice care which meets the standards set forth by the National Hospice Organization. It must also be: Directed by a Physician, supervised by a Nurse, and licensed or certified by the state in which it is located.

HOSPICE TEAM

A team of professionals including a Physician and a Nurse. It may also include: A social worker, clergyman, clinical psychologist, physical therapist, or counselor. It must exist primarily to administer a hospice care program meeting the standards of the National Hospice Organization in the patient's home with care available 24 hours a day, seven (7) days a week.

## SECTION B - FAMILY MEMBER ELIGIBILITY

Family members who are eligible to become Covered Persons under a Family Policy are:

(1) The Insured's Spouse; and

(2) the Insured's unmarried dependent children under age 24.

Eligible family members to become Covered Persons under a Single Parent Family Policy include all of the above except the Insured's Spouse.

Dependent children include only: Natural born children of the Insured or the Insured's Spouse, or legally adopted children by both or either the Insured and/or the Insured's Spouse.

Any eligible family member who does not become a Covered Person on the Effective Date (except those who are excluded) must be added to the policy by our endorsement subject to:

(1) The completion of an application providing Evidence of Insurability; and

(2) payment of the additional premium, if required.

Any child of the Insured's or the Insured's Spouse born or adopted while this policy is in force as a Single Parent Family Policy or Family Policy is automatically covered from the moment of birth or the date of placement for adoption, respectively. We do not require an additional premium for such child. The Insured does not need to notify us of the child's birth or adoption.

## SECTION C - BEGINNING OF BENEFIT PAYMENTS

(1) If you are Positively Diagnosed with Cancer while this policy is in force, we will pay benefits according to the benefit provisions of this policy provided that:

(a) The Cancer is first diagnosed after the 30 day "waiting period"; and

(b) The loss is incurred (e.g. treatment is received or the service is performed) while this policy is in force, and

(c) All other provisions of this policy apply.

(2) Our benefits will begin on the Date of Positive Diagnosis, or as follows:

(a) On the date you are admitted to the Hospital, if Positive Diagnosis is made during the same Period of Hospital Confinement; but not more than 15 days prior to the Date of Positive Diagnosis; or

(b) not more than 30 days before the Date of Positive Diagnosis for benefits payable under Items 21, "Outpatient Surgery"; or not more than 90 days before the Date of Positive Diagnosis for benefits payable under Item 20, "Outpatient Positive Diagnostic Testing" both under SECTION E; or

(c) on the date of terminal admission to the Hospital when Positive Diagnosis can only be made post-mortem; but not more than 45 days prior to the date of death.

Benefit payments will be made directly to the Insured, unless assigned according to the provision "Assignment" under SECTION K, for losses incurred by any Covered Person under this policy. Proof of loss must be submitted to us for each incurred expense.

Under no conditions will we pay any benefits for losses or medical expenses incurred prior to the end of the 30 day "waiting period".

SECTION D - DEDUCTIBLE

Deductible is the amount which must be met before any benefits are paid. Only approved charges will be applied toward meeting your deductible. Only charges for losses covered by this policy will be considered as approved charges. If a deductible has been elected on the application, it will be shown in the Policy Schedule on page 2. All benefits in Section E and Section G are subject to the deductible before they will be paid. The deductible shall apply to each new Positive Diagnosis of Internal Cancer for each Covered Person insured under this policy. Recurrence or metastatic spread of Cancer shall not be considered as a new Positive Diagnosis of Internal Cancer.



Case 1:07-cv-00016 Document 69-1 Filed 07/12/07 Page 10 of 30 PageID #: 1068

## SECTION E - BENEFITS

We will pay the benefits outlined in this section - subject to the applicable deductible - for the necessary treatment of Cancer:

### PART 1 - HOSPITAL INDEMNITY BENEFIT

We will pay the Hospital Indemnity Benefit shown on the POLICY SCHEDULE page each day you are Hospital confined for the treatment of Cancer. The maximum number of days we will pay this benefit during a continuous confinement shall not exceed 75. Beginning on the 76th day, our payments for Hospital Confinement will be made under Item 27, SECTION E "Extended Benefits."

### PART 2 - SCHEDULE OF BENEFITS

1. **DRUGS AND MEDICINES**

We will pay the greater of $25 per day or $250 per confinement for drugs and medicines given to you while Hospital Confined.

2. **LABORATORY TESTS**

We will pay $150 for laboratory tests performed while you are Hospital Confined during a Period of Hospital Confinement. In lieu of this benefit we will pay $300 for laboratory tests prior to the Period of Hospital Confinement when performed on an Outpatient basis not more than 30 days before admission to the Hospital.

3. **DIAGNOSTIC TESTS**

We will pay the following benefits for diagnostic tests while you are Hospital Confined:

(a) $150 for diagnostic tests, excluding biopsies, during a Period of Hospital Confinement; and

(b) the scheduled fee in the Schedule of Operations (Pages 10-11) when a biopsy is performed. Non-scheduled biopsies will be paid on a comparable basis not to exceed the lesser of:

(i) an amount determined by the 1974 California Relative Value Schedule (5th edition, revised) with a conversion factor of $120; or

(ii) $300.

Biopsy includes any of the following procedures: Needle or aspiration, endoscopic, punch, incisional, or excisional biopsies. If a biopsy is performed with another surgical procedure through the same incision, we will only pay for the procedure having the highest benefit as determined by this provision and Item 4 "Surgery" in this section. We will only pay benefits under this provision when a biopsy confirms Positive Diagnosis during the same Period of Hospital Confinement, subject to the limitations in SECTION C.

In lieu of the benefit under Item (a) above, we will pay $300 for diagnostic tests prior to a Period of Hospital Confinement when performed on an Outpatient basis not more than 30 days before admission to the Hospital.

4. **SURGERY**

We will pay the amount shown for a surgical operation (conventional, laser or stereotactic) and post operative care in the SCHEDULE OF OPERATIONS (pages 10-11) while you are Hospital Confined. Non-scheduled operations will be paid on a comparable basis not to exceed the lesser of:

(a) The Usual and Customary charge; or

(b) an amount determined by the 1974 California Relative Value Schedule, (5th edition, revised) with a conversion factor of $120; or

(c) $3000.

If two or more surgical procedures are performed through the same incision, we will only pay for the procedure having the highest benefit as determined by this provision.

5. **ANESTHESIA**

While you are Hospital Confined, we will pay 25% of the surgical fee, per procedure/operation, as determined by: Item 3(b) under "Diagnostic Tests"; or Item 4, "Surgery," in this section. Anesthesia must be given by or under the direction of an Anesthesiologist; or by an Anesthetist under the direction of a Physician.

6. **RECONSTRUCTIVE SURGERY**

We will pay the amount shown for: Reconstructive surgery, anesthesia, post-operative care, and any other related charges for the general forms of Cancer listed below:

| General Form of Cancer | Maximum |
|---|---|
| (a) Skin Cancer-as defined in SECTION A | $250 |
| (b) Malignant melanoma | $350 |
| (c) Breast Cancer-after simple or total mastectomy-each breast | $350 |
| (d) Breast Cancer-after radical mastectomy each breast | $500 |
| (e) Cancers of the male or female genitalia | $500 |
| (f) Cancers of the head or neck, including oral cancers but excluding Skin Cancer and malignant melanoma | $750 |

Reconstructive surgery must be performed by a licensed plastic surgeon not more than two (2) years following the initial surgery to remove the Cancer. If reconstructive surgery is performed on the same day as the implantation of a prosthetic device we will pay only for the procedure having the higher benefit value. The lifetime maximum benefit for Skin Cancer is $500. We will not pay any benefits under this provision for Skin Cancer which is removed under Item 22 "Skin Cancer" in this section.

7. **ADDITIONAL SURGICAL OPINIONS**

We will pay $150 for the opinion of a second surgeon payable when your prescribed treatment is surgery as determined by the first surgeon. If the second opinion contradicts the first, we will pay $150 for a third opinion. You may use this benefit at your discretion. None of the other benefits in this policy will be affected by your decision. This benefit is payable only after Positive Diagnosis has been made.

Second or third surgical opinions must be received before surgery is performed. This benefit is not payable for Skin Cancer treated under Item 22, "Skin Cancer" in this section. We require that you send us in writing the initial surgical opinion in addition to the second or third surgical opinions.

8. **PROSTHESIS**

We will pay the Usual and Customary charges for a prosthetic device and its implantation not to exceed $1000 per prosthesis. The prosthesis must be authorized by your attending Physician and must require surgical implantation.

9. **ATTENDING PHYSICIAN**

We will pay the following benefits when your attending Physician, other than the surgeon who performed surgery, visits you while Hospital Confined:

(a) $45 on the first day of confinement; and

(b) $30 per day beginning on the second and each additional day of confinement.

A visit shall mean a personal visit to you by your attending Physician. We will only pay for one (1) visit in any one 24 hour period.

10. **PRIVATE DUTY NURSING SERVICES**

We will pay $100 per day for private duty nursing services while you are Hospital Confined. Private duty nursing services must be:

(a) authorized by your attending Physician; and

(b) provided by a Nurse who is not acting as a regular staff member of the Hospital in which you are confined and who is other than you or a member of your Immediate Family.

11. **RADIATION THERAPY**

(a) Treatments - We will pay the actual charges up to the calendar year maximum shown in the Policy Schedule for radiation therapy treatments authorized and administered by a Radiation Therapist. Under this provision, we will not pay related expenses for: Prescribed medications, physical exams, checkups, laboratory or diagnostic tests, treatment consultations and planning, or any similar such expenses. Radiation therapy does not include Laser or Stereotactic Surgery (See Section E, Item 4).

(b) Associated Expenses - We will pay the actual charges not to exceed $250 per calendar year for the following radiation therapy related expenses: Prescribed medications for side effects, treatment consultations and planning, physical exams, checkups, and laboratory or diagnostic tests. We will only pay for expenses incurred for the items listed when such expenses have been submitted to us and authorized by the Radiation Therapist. Transportation expenses are not included as associated expenses. We will not pay benefits under this provision when they are paid under any other benefit in Section E.

(c) Alopecia - We will pay the actual expenses for a wig or hairpiece not to exceed a lifetime maximum of $75 if you experience hair loss as a result of your radiation therapy treatment. The benefit is not payable when it has been paid under Item 12(c) in this section.

12. **CHEMOTHERAPY**

(a) Treatments - We will pay the actual charges up to the calendar year maximum shown in the Policy Schedule for cancericidal chemical substances including their administration. Such cancericidal chemical substances must be approved by the United States Food and Drug Administration. They must also be administered by or under the direction of a Physician. Under this provision we will not pay related expenses for Prescribed medications, physical exams, checkups, laboratory or diagnostic tests, treatment consultations and planning, or any similar such expenses.

(b) Associated Expenses: We will pay the actual charges not to exceed $250 per calendar year for the following chemotherapy related expenses: Prescribed medications for side effects, treatment consultations and planning, physical exams, checkups, and laboratory or diagnostic tests. We will only pay for expenses incurred for the items listed when such expenses have been submitted to us and authorized by a Physician. Transportation expenses are not included as associated expenses. We will not pay benefits under this provision when they are paid under any other benefit in Section E.

(c) Alopecia - We will pay the actual expense for a wig or hairpiece not to exceed a lifetime maximum of $75 if you experience hair loss as a result of your chemotherapy treatments. This benefit is not payable when it has been paid under Item 11(c) in this section.

13. **EXPERIMENTAL TREATMENT**

We will pay the Usual and Customary charges for experimental or investigational treatments of Cancer not to exceed $4000 per calendar year. This policy defines experimental or investigational treatment to be: (a) Drugs or chemical substances approved by the United States Food and Drug Administration for the experimental use on humans; and (b) surgery or therapy endorsed by either the National Cancer Institute or the American Cancer Society for experimental studies.

Examples of such treatments which meet our definition are:

(a) Experimental drugs or chemicals;

(b) Immunotherapy;

(c) Hyperthermia;

(d) Irradiated Cell Vaccine.

The following restrictions and limitations shall apply to this benefit:

(a) The maximum benefit for all forms of experimental treatments shall not exceed $4000 per calendar year in the aggregate; and

(b) experimental treatment must be received in a Hospital in the United States or in one of its territories; and

(c) your attending Physician has authorized the treatment.

**14. BLOOD, PLASMA, AND BLOOD COMPONENTS**

We will pay the actual charges up to the calendar year maximum shown in the Policy Schedule while you are Hospital Confined or for Outpatient treatment:

(a) blood, plasma, and blood components;

(b) the administration of (a);

(c) transfusions;

(d) processing and procurement;

(e) crossmatching.

We will not pay for the cost of blood, plasma, or blood components that is/are replaced by donors. We will not pay any benefits related to the administration of chemotherapy under this provision.

**15. PHYSICAL THERAPY, SPEECH THERAPY**

We will pay $25 per therapy session, limited to one session per day, for:

(a) Physical therapy treatments given by a licensed Physical Therapist at: An Institute of Physical Medicine and Rehabilitation, a Hospital, or your home; and

(b) speech therapy given by a licensed Speech Pathologist/Therapist.

Physical therapy or speech therapy must be given on an Outpatient basis; unless, the primary purpose of your Hospital confinement is for treatment of Cancer other than with physical therapy or speech therapy. The lifetime maximum benefit is $1000.

**16. EXTENDED CARE FACILITY**

We will pay $40 per day when you are confined in an Extended Care Facility after a period of Hospital Confinement. Confinement must begin not later than 14 days after such confinement. The maximum number of days of confinement shall not exceed the number of days in the last period of Hospital confinement.

**17. BONE MARROW DONOR'S EXPENSES**

If you undergo a bone marrow transplant we will pay the following expenses incurred by your donor:

(a) The actual expense of roundtrip transportation by Common Carrier to the Hospital where the transplant is performed; and

(b) the actual charges not to exceed $1000 for medical expenses, including any Hospital charges, directly related to the transplant; and

(c) the actual expenses for lodging and meals not to exceed $75 per day when the donor is asked to remain near the Hospital after the transplant for the possible donation of additional blood components.

Benefits under this provision do not apply if you donate bone marrow to yourself. We will not pay any benefits under Items 18(c) or 19 for transportation or lodging expenses incurred by a donor who is an Immediate Family Member of yours. Items (a) and (c) above are not payable if the donor lives in the same county in which the transplant is performed. The maximum number of days for which we will pay benefits under Item (c) above shall not exceed 21 per transplant. We require receipts for all expenses incurred and submitted for payment under this provision. We will not pay any medical expenses under item (b) above which are provided free of charge.

**18. TRANSPORTATION**

If your prescribed treatment is not available locally, we will pay your transportation expenses to the nearest non-local Hospital in the United States providing such treatment. Our payments for such transportation expenses will be as follows:

(a) Your actual round trip charge by Common Carrier; or

(b) a private vehicle allowance of $.35 per mile. Mileage is to be measured from your residence to the Hospital in which you are confined. We will accept your mileage figures if reasonable. We will not pay for mileage in excess of 700 miles round trip.

(c) the Insured or the Insured's Spouse's actual round trip expenses by a Common Carrier, to accompany a child who is a Covered Person under this policy and if confined in a non-local Hospital.

Non-local means a distance from your residence to the nearest Hospital which provides your prescribed treatment in excess of 50 miles. We will only pay this benefit once per Period of Hospital Confinement in a non-local Hospital. We will not pay for: Visits to a Covered Person receiving treatment (other than as indicated in (c) above) or Outpatient: Treatments, checkups, or tests of any kind.

**19. FAMILY MEMBER LODGING AND TRANSPORTATION**

We will pay the following expenses for one adult member of your Immediate Family to be with you when you are confined in a non-local Hospital in the United States:

(a) Lodging expenses at a motel, hotel or other accommodations acceptable to us not to exceed $40 per day payable for the number of days you are Hospital Confined. The maximum benefit for any one Period of Hospital Confinement shall not exceed $2400; and

(b) the actual round trip fare by Common Carrier to the city in which you are Hospital Confined. We will only pay this benefit once per Period of Hospital Confinement in a non-local Hospital.

These benefits are payable when your prescribed treatment is not available locally and non-local Hospital confinement is authorized by your attending Physician. Non-local means a distance from your residence to the nearest Hospital which provides your

prescribed treatment in excess of 50 miles. In addition, the following restrictions apply:

(a) Benefits are not payable if the adult lives in the same county in which you are Hospital Confined; and

(b) We will not pay any transportation expenses under this provision when Item 18(c) is paid for the same confinement.

**20. OUTPATIENT POSITIVE DIAGNOSTIC TESTING**

We will pay $300 for any diagnostic tests (excluding biopsies) performed to: Detect, support, or confirm Positive Diagnosis. Each test must be performed by or under the direction of a Physician. Positive Diagnosis must be made not more than 90 days after a test is performed. Our maximum payment per Positive Diagnosis shall not exceed $300. This benefit is not payable for recurring Cancers.

**21. OUTPATIENT SURGERY**

We will pay the following benefits for surgery performed at an Ambulatory Surgical Facility or at a Hospital when you are an Outpatient:

(a) for a biopsy 150% of the surgical fee as determined by Item 3(b) under "Diagnostic Tests" in this section; and

(b) for surgery and post operative care 150% of the surgical fee as determined by Item 4, "Surgery" in this section; and

(c) for anesthesia not to exceed 25% of the benefit payable under Items (a) or (b) above. Anesthesia must be given by or under the direction of an Anesthesiologist; or by an Anesthetist under the direction of a Physician; and

(d) $250 for: Drugs, medicines, and laboratory tests (otherwise not payable under any of the other benefits in this section) performed on an Outpatient basis and directly related to your surgery and/or biopsy. Such expenses must be incurred not more than 30 days before or after the surgery and/or biopsy; and

(e) $60 for one visit by your Attending Physician on the day surgery and/or biopsy is performed (when such Physician is not the surgeon who performed the surgery and/or biopsy).

If a biopsy is performed with another surgical procedure through the same incision we will only pay for the procedure having the highest benefit as determined by Items (a) and (b) above.

We will pay benefits under this provision for Skin Cancer upon which Positive Diagnosis is made, removed at a Physician's office or other licensed medical facility.

If you are admitted to a Hospital within 30 days following Outpatient surgery (excluding biopsies) other than due to: complications of the surgery or for reasons totally unre-lated to the surgery: we will pay benefits as if you were Hospital Confined for the surgery and the benefits for surgery and all other charges related to the surgery under this provision shall be null and void.

**22. SKIN CANCER**

We will pay $200 per diagnosis for the removal of Skin Cancer by a Physician. We will accept a written summary of the clinical diagnosis by a Physician who is not a Pathologist. This benefit is payable only when Skin Cancer is removed on an Outpatient basis. This benefit is paid in lieu of any of the benefits under: Item 20, "Outpatient Positive Diagnostic Testing", or Item 21, "Outpatient Surgery"; or any other benefits payable on an Outpatient basis, in this section. If a Positive Diagnosis is made of the Skin Cancer, benefits will be paid according to the other applicable benefits in this policy. Our maximum payments during any one calendar year is $400.

**23. AMBULANCE**

We will pay the actual charges by a licensed professional ambulance service up to $2,000 per trip for:

(a) Your transportation to a Hospital in which you are admitted; and

(b) your transportation from a Hospital from which you have been released to a different Hospital in which you are admitted.

Ambulance transportation in excess of 100 miles from your point of origin must be to the nearest Hospital which provides your necessary medical treatment.

**24. HOSPICE CARE**

We will pay $75 per day of confinement in a Hospice Center; or $75 per visit at your home by a Hospice Team limited to one visit per day. Our payments will be based on the following conditions being met:

(a) You have been given a prognosis as being terminally ill with an estimated life expectancy of 6 months or less; and

(b) we have received a written summary of such prognosis by your attending Physician.

We will not pay this benefit while you are Hospital Confined. The lifetime maximum benefit of this provision is $7500.

**25. GOVERNMENT OR CHARITY HOSPITAL**

We will pay the following benefits when you are confined or treated in a government or charity Hospital:

(a) $200 per day for each day of confinement; for the first ten (10) days; and

(b) $125 per day for each day of confinement beginning on the 11th day until you are released; and

(c) $75 per treatment, limited to one (1) treatment per day, for Outpatient radiation therapy or chemotherapy at such a Hospital.

Confinement must be in a Hospital owned or operated by the United States Government: or a Hospital that does not charge you for its services. Continued confinement must be primarily for the treatment of Cancer. Benefits under this provision are paid in lieu of all other benefits in this policy when you are confined or treated in a government or charity Hospital.

**26. VITAL ORGAN AND BONE MARROW TRANSPLANT BENEFIT**

If, during a Hospital Confinement, you require a Bone Marrow transplant or the replacement of a cancerous Vital Organ by transplant, we will pay you a lump sum indemnity benefit of $30,000. This benefit shall be payable in lieu of all other benefits under this policy and any attached riders. Once this benefit is payable, we will not pay for:

(a) any losses incurred during such Hospital Confinement starting 5 days prior to the date of the transplant and thereafter until your release from the Hospital.

(b) any losses incurred for subsequent Hospital Confinements resulting from the transplanted Vital Organ or Bone Marrow or any complications resulting therefrom; and

(c) any losses incurred for outpatient treatment resulting from the transplanted Vital Organ or Bone Marrow or any complications resulting therefrom.

This benefit shall be payable for each Bone Marrow transplant or replacement of a cancerous Vital Organ by transplant provided the transplant surgery is done in separate Hospital Confinements.

**27. EXTENDED BENEFITS**

If you have been continuously confined to a hospital for the definitive treatment of Cancer, except for any Hospital Confinement covered by the Vital Organ and Bone Marrow Transplant Benefit, for a period of seventy-five (75) consecutive days, we will pay the usual and customary Hospital charges for: Hospital room and board, drugs, medicines, supplies, laboratory work, diagnostic tests, and any other medically related Hospital charges, beginning with the seventy-sixth (76th) day of continuous confinement until discharge from the Hospital. This benefit is paid in lieu of all other benefits under this policy, including any riders attached hereto, except for Surgery and Anesthesia which will continue to be payable under their applicable benefit provisions. This benefit is not paid for any charges incurred during any Hospital Confinement covered by the Vital Organ and Bone Marrow Transplant Benefit.

## SCHEDULE OF OPERATIONS

| Procedure | Maximum Amount |
|---|---|
| **EYE AND EAR** | |
| Biopsy of external ear | 60.00 |
| Biopsy of cornea | 70.00 |
| Iridectomy | 900.00 |
| Mastoidectomy | |
| (a) complete | 1200.00 |
| (b) radical | 1600.00 |
| Iridectomy with cylectomy | 1600.00 |
| **HEAD, NECK & SPINE** | |
| Oropharynx biopsy, excisional | 70.00 |
| Thyroid biopsy, needle | 100.00 |
| Laryngoscopy with biopsy | 300.00 |
| Pharyngectomy without radical neck dissection | 1050.00 |
| Laryngnectomy | |
| (a) subtotal, with bilateral node dissection | 1150.00 |
| (b) total, with radical neck dissection | 1850.00 |
| Adrenalectomy, partial or complete | 1500.00 |
| Thyroidectomy | |
| (a) subtotal, with limited neck dissection | 1700.00 |
| (b) total, with radical neck dissection | 2200.00 |
| Laminectomy for Intraspinal Malignancy | 2300.00 |
| Excision of Malignant Brain Tumor | |
| (a) All tumors except meningioma | 2500.00 |
| (b) Meningioma | 2900.00 |
| Hemispherectomy | 3000.00 |

| Procedure | Maximum Amount |
|---|---|
| **SKIN AND ORAL** | |
| Biopsy | |
| (a) Skin surface | 60.00 |
| (b) Mouth or tongue | 90.00 |
| Excision of malignant lesion | |
| (a) skin surface | 350.00 |
| (b) lip or mouth with resection | 800.00 |
| Glossectomy | |
| (a) less than one-half of tongue | 650.00 |
| (b) complete or total | 1400.00 |
| (c) with radical neck dissection | 1700.00 |
| **THORAX** | |
| Breast biopsy | |
| (a) needle | 60.00 |
| (b) incisional, unilateral | 250.00 |
| Lung biopsy, needle | 90.00 |
| Thoracoscopy with biopsy | 300.00 |
| Bronchoscopy with biopsy | 300.00 |
| Lumpectomy, unilateral | 450.00 |
| Mastectomy, simple | |
| (a) unilateral | 650.00 |
| (b) bilateral | 900.00 |
| Mastectomy, radical including axillary lymph nodes, unilateral | 1400.00 |
| Lobectomy of Lung, total or segmented | 1850.00 |
| Pneumonectomy | 2100.00 |

| Procedure | Maximum Amount |
|---|---|
| **ABDOMEN AND PELVIS** | |
| Liver biopsy | 175.00 |
| Colonoscopy with biopsy | 280.00 |
| Gastroscopy with biopsy | 300.00 |
| Enterectomy: resection of small intestine with anastomosis | 1300.00 |
| Gastrectomy | |
| (a) partial | 1400.00 |
| (b) total, with intestinal anastomosis | 1950.00 |
| Hepatectomy, partial lobectomy | 1500.00 |
| Colectomy, partial with colostomy | 1600.00 |
| Colectomy, total, abdominal, with ileostomy | 1950.00 |
| Abdomino-perineal, resection, with permanent sigmoid colostomy | 2100.00 |
| Esophagectomy | 2300.00 |
| Pancreatectomy, Whipple Type | 2500.00 |
| Esophagogastrectomy | 3000.00 |
| **URINARY TRACT** | |
| Cystoscopy with biopsy | 140.00 |
| Ureteral endoscopy with biopsy | 140.00 |
| Renal biopsy, needle | 200.00 |
| Cystectomy | |
| (a) partial, simple | 1050.00 |
| (b) complete | 1400.00 |
| (c) complete, with uretero-cutaneous transplant | 2400.00 |
| Urethrectomy, total, with cystostomy | 1150.00 |
| Ureterectomy, with bladder cuff | 1400.00 |
| Nephrectomy, radical with excision of regional lymph nodes | 2100.00 |
| **RECTUM** | |
| Proctosigmoidoscopy with biopsy | 120.00 |
| Rectal biopsy, incisional | 300.00 |
| Proctectomy, complete | 1850.00 |
| **MALE GENITALIA** | |
| Biopsy of Penis, cutaneous | 60.00 |
| Prostate biopsy | |
| (a) non-incisional | 125.00 |
| (b) incisional | 300.00 |
| Biopsy of Testis, incisional | |
| (a) unilateral | 220.00 |
| (b) bilateral | 275.00 |

| Procedure | Maximum Amount |
|---|---|
| **MALE GENITALIA (con't)** | |
| Orchiectomy, simple | |
| (a) unilateral | 425.00 |
| (b) bilateral | 575.00 |
| Amputation of Penis | |
| (a) partial | 700.00 |
| (b) complete | 1400.00 |
| Prostatectomy, radical | 1700.00 |
| **FEMALE GENITALIA** | |
| Biopsy of Vulva | 60.00 |
| Biopsy of Vaginal Mucosa | 60.00 |
| Cervical biopsy | 140.00 |
| Trachelectomy, partial, with dilation and curettage | 375.00 |
| Colpectomy, complete | 825.00 |
| Vulvectomy | |
| (a) partial | 850.00 |
| (b) complete | 1150.00 |
| Oophorectomy | 975.00 |
| Uterine Myomectomy, abdominal approach | 1050.00 |
| Vulvectomy, radical with excision of regional lymph nodes | 1700.00 |
| Hysterectomy, | |
| (a) Total | 1250.00 |
| (b) Wertheim Type | 2300.00 |
| **GENERAL AMPUTATIONS** | |
| Finger or toe, each | 225.00 |
| Foot, each | 800.00 |
| Arm, forearm, or lower leg, each | 1050.00 |
| Thigh | 1400.00 |
| Hemipelvectomy | 3000.00 |
| **MISCELLANEOUS** | |
| Muscle biopsy, excisional | |
| (a) superficial | 120.00 |
| (b) deep | 225.00 |
| Bone marrow aspiration | 120.00 |
| Superficial lymph node biopsy | 140.00 |
| Sequestrectomy for osteomyelitis | |
| (a) scapula or clavicle, with suction or irrigation | 575.00 |
| (b) humeral head to surgical neck, with suction irrigation | 1300.00 |
| Laparotomy (exploratory procedure) | 850.00 |
| Splenectomy | 1500.00 |

## SECTION F - WAIVER OF PREMIUM

If the Insured has been Positively Diagnosed with Cancer and is Totally Disabled for a period of 60 consecutive days beginning on the Date of Total Disability due to such Cancer we will waive each Renewal Premium that becomes due after such 60 day period as long as the Insured is Totally Disabled.

During any period for which we have waived a Renewal Premium, this policy shall be subject to all of its other applicable provisions. Our waiver of Renewal Premiums will end on any Renewal Date upon which the Insured is not Totally Disabled. Total Disability ending between Renewal Dates will be considered by us to end at the next Renewal Date. Upon the end of Total Disability, the Insured must resume payment of Renewal Premiums.

This provision does not apply to Total Disability which begins on or after the Insured's 70th birthday.

## SECTION G - OPTIONAL CANCER DISABILITY COMPENSATION
**(In Lieu of All Other Benefits)**

If you have been Positively Diagnosed with Cancer and you have other health insurance, under one or more policies, service contracts or a self-insured trust in force, you may elect to receive optional disability compensation.



Case 1:07-cv-00016 Document 69-1 Filed 07/12/07 Page 16 of 30 PageID #: 1074

If this option is elected, we will pay a disability benefit equal to $400 per day subject to the deductible in Section D, while you are Hospital Confined or confined in an Extended Care Facility.

In addition, the election of this option is subject to the following conditions:

1. You must request to elect this option before any payments from the other benefits of this policy are made for each Cancer that is Positively Diagnosed; and

2. you must provide proof acceptable to us that you have other health insurance in force which contains a reduction, or coordination of benefits clause.

Once elected, the benefits of this provision are in lieu of all other benefits in this policy and any attached riders for Cancer.

## SECTION H - EXCEPTIONS AND LIMITATIONS

1. This policy provides benefits only for Cancer defined in Section A, "Definitions", which is Positively Diagnosed while this policy is in force, subject to the "waiting period" (see Number 2, below) and the "Time Limit On Certain Defenses". It does not provide benefits for any other illness or disease.

2. This policy contains a 30 day "waiting period". This means that no benefits are provided for 2 years if any person is diagnosed with Cancer during the first 30 days from the Effective Date of such person's coverage.

3. We will only pay for loss as a direct result of Cancer. Proof of Positive Diagnosis must be submitted to us for each new claim (except as stated under Section E, Item 22, "Skin Cancer"). We will not pay for any other disease or incapacity that has been: Caused, complicated, worsened or affected by as a result of Cancer.

4. We may reduce or deny a claim or void the policy for loss incurred by a Covered Person: (a) during the first 2 years from the Effective Date of such coverage for any misstatements in the application which would have materially affected our acceptance of the risk; or (b) at any time for fraudulent misstatements in the application.

5. Under no condition will we pay any benefits for losses or medical expenses incurred prior to the end of the 30 day "waiting period".

## SECTION I - CONTINUATION AND TERMINATION (END) OF COVERAGE

1. CONTINUATION

   (a) We will endorse this policy to continue coverage and waive premiums for each eligible dependent child to their 18th birthday if this policy is: in full force as a Single Parent Family Policy at your (the Insured's) death; or in full force as a Family Policy if you (the Insured) and your Spouse die at the same time.

   At that time the coverage may be converted according to the applicable provisions under Item 1, SECTION J, "Conversion of Individual Coverage". A Covered Person not eligible for the continued coverage may convert his or her coverage according to the applicable provisions under Item 1, SECTION J, "Conversion of Individual Coverage".

   (b) If this is a Family Policy the Insured's Spouse shall become the Insured effective at the Insured's death. We will convert this policy to a Single Parent Family Policy or an Individual Policy, whichever applies, according to the provisions under Item 3, SECTION J "Conversion of a Family Policy or a Single Parent Family to an Individual Policy; Conversion of a Family Policy to a Single Family Policy".

2. TERMINATION

   (a) Under a Family Policy, your (the Insured's) Spouse's coverage will end upon the earlier of your Spouse's:

      i. Death; or

      ii. valid decree of divorce from you; or

      iii. end of coverage by reason of your request, effective upon our receipt of your written notice

   (b) Under a Single Parent Family Policy, or a Family Policy, coverage will end on a Dependent Child at the earlier of the child's:

      i. death; or

      ii. marriage; or

      iii. attainment of age 24; or

      iv. written notice to end coverage effective upon receipt by us.

   (c) Coverage on the Insured will end upon the earlier of the Insured's:

      i. death; or

      ii. failure to pay the Renewal Premium before the grace period ends; or

      iii. written notice to end coverage, effective upon receipt by us.

   (d) Coverage will end on each Covered Person if the Renewal Premium is not paid before the grace period ends.

Termination under the conditions: (a) (i) or (ii); (b) (i), (ii), or (iii); or (c) (i) or (ii) will be on the next Renewal Date following the occurrence of the condition. If you fail to notify us promptly of the above conditions, we will refund the applicable portion of the premium at the time we are notified.

Terminations due to you (the Insured's) written request may be made later than as specified above when indicated on your written notice. However, any such later termination date will be on a Renewal Date.

Coverage will not end on a Covered Person who is an unmarried dependent child unable to self-sustain employment by reason of mental retardation or physical handicap (who became so unable prior to the attainment of the limiting age for eligibility under this policy), and who is chiefly dependent upon you (the Insured) for support and maintenance. Proof of such inability and dependency must be furnished to us not more than 31 days from the date of child's coverage ends.

"Dependent on other care providers" means requiring a Community Integrated Living Arrangement, group home, supervised apartment, or other residential services licensed or certified by the Department of Mental Health and Development Disabilities, the Department of Public Health, or the Department of Public Aid.

Termination of the policy will be without prejudice to any continuous loss which commenced while the policy was in force.

## SECTION J - CONVERSION PRIVILEGES

1. **CONVERSION OF INDIVIDUAL COVERAGE**

(a) If this is a Single Parent Family Policy or a Family Policy, we will issue a new policy to a child who is a Covered Person. The new policy will be issued without Evidence of Insurability. It is subject to the child being a Covered Person under this policy when his or her coverage ends.

(b) If this is a Family Policy and the Insured and the Insured's Spouse dissolve their marriage by valid decree of divorce, we will issue a new policy to the Spouse. The new policy will be issued without Evidence of Insurability. It is subject to the Insured's Spouse being a Covered Person at final decree of divorce.

Under either (a) or (b) above the new policy will be issued on a form then available from us that is most like this policy. Benefits under the new policy shall not exceed those under this policy unless Evidence of Insurability is provided. Covered Persons (excluding the Insured) under this policy may become Covered Persons under the divorced Spouse's new policy as the Insured and the divorced Spouse's new policy as the Insured and the divorced Spouse may elect; however, in no case will any Covered Person be covered under both this policy and the divorced Spouse's new policy at the same time.

The conversion privileges described in Items (a) and (b) above are subject to the following conditions:

(a) Application for the new policy must be made not more than 31 days after coverage ends under Item (a), and before coverage ends under Item (b); and

(b) the premium for the new policy will be at the rates for the Class to which the Covered Person belongs at such Covered Person's age, for the policy form, and the amount of insurance provided as the Effective Date of the new policy; and

(c) any condition specifically excluded from coverage in this policy will also be excluded under the new policy unless we decide otherwise when the new policy is issued; and

(d) benefits payable to a Covered Person under the new policy will be reduced by benefits payable under this policy after coverage under this policy ends; and

(e) this policy must be in force on the Conversion Date.

2. **CONVERSION OF AN INDIVIDUAL POLICY TO A SINGLE PARENT OR A FAMILY POLICY; CONVERSION OF A SINGLE PARENT FAMILY POLICY TO A FAMILY POLICY:**

If this is an Individual Policy, the Insured may convert it to a Single Parent Family Policy or a Family Policy with the addition of: Eligible family members by endorsement; or when a child of the Insured's is born. If this is a Single Parent Family Policy, the Insured may convert it to a

Family Policy with the addition of the Insured's Spouse by endorsement. Such conversions are subject to the following conditions:

(a) An application is submitted to us providing Evidence of Insurability for each eligible family member applying for coverage (if two or more are applying at the same time one application may be submitted); or in the case of the Insured's newborn child written notice is submitted to us not more than 31 days after the child's birth; and

(b) the required premium is paid for a Single Parent Family Policy or a Family Policy, whichever applies.

We will convert this policy by endorsement to either a Single Parent Family Policy or a Family Policy, whichever applies, effective at the Conversion Date. Conversion is subject to the payment of all due Renewal Premiums to the Conversion Date.

3. **CONVERSION OF A FAMILY POLICY OR A SINGLE PARENT FAMILY POLICY TO AN INDIVIDUAL POLICY; CONVERSION OF A FAMILY POLICY TO A SINGLE PARENT FAMILY POLICY:**

If this is a Family Policy or a Single Parent Family Policy, the Insured may convert it to an Individual Policy if any of the events under Item 2, SECTION I, "Termination", causes coverage to end on a Covered Person. This must result in the Insured becoming the only Covered Person under this policy. If this is a Family Policy, the Insured may convert it to a Single Parent Family Policy if any of the events under Item 2(a), SECTION I, "Termination", causes coverage to end on the Insured's Spouse. We will convert this Policy by endorsement and change the Renewal Premium to that for an Individual Policy or a Single Parent Family Policy, whichever applies, effective at the Conversion Date. Conversion is subject to the payment of all due Renewal Premiums to the Conversion Date and our receipt of written notice to convert this policy.

If possible, notice should be sent in advance of the Conversion Date. However, if we receive written notice after the Conversion Date, we will make the conversion retroactive to that date. If a conversion is retroactive, we will refund to the Insured the difference between: All Renewal Premiums paid for this policy after the Conversion Date, and the Renewal Premiums we would have charged had we received written notice on or before the Conversion Date. If a refund of premium is requested when exercising a conversion privilege, written notice must include a copy of a document verifying that coverage has ended for the Covered Person (e.g. death certificate, divorce decree, birth certificate, etc.) making this policy eligible for conversion.

## SECTION K - GENERAL PROVISIONS

### 1. ENTIRE CONTRACT CHANGES

This policy, including the application, and any endorsements or attached papers, is the entire contract. No change in this policy will be effective until approved by a company officer. This approval must be noted on or attached to this policy. No agent may change this policy or waive any of its provisions.

### 2. TIME LIMIT ON CERTAIN DEFENSES

(a) After two (2) years from the date on which a person becomes a Covered Person under this policy, no misstatements (except fraudulent misstatements), made in the application for coverage of such person shall be used to void the policy or to deny a claim for loss incurred or disability commencing after the expiration of such two (2) year period.

(b) After two (2) years from the date on which a person becomes a Covered Person under this policy, no claim for loss incurred or disability commencing with respect to any Covered Person shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed within five (5) years prior to the Effective Date of coverage of such person.

### 3. FRAUDULENT MISSTATEMENT

If a fraudulent misstatement is made in the application for this policy we may reduce or deny any claim or void the policy at any time.

### 4. GRACE PERIOD

A grace period of thirty-one (31) days will be granted for the payment of each Renewal Premium falling due after the initial premium. During the grace period the policy will remain in force.

### 5. REINSTATEMENT

If the Renewal Premium is not paid before the grace period ends, the policy will lapse. Later acceptance of the premium by us or by an agent authorized to accept payment without requiring an application for reinstatement will reinstate this policy. If we or our agent requires an application, the Insured will be given a conditional receipt for the premium. If the application is approved, the Policy will be reinstated as of the approval date. Lacking such approval, the policy will be reinstated on the 45th day after the date of the conditional receipt, unless we have previously written the Insured of its disapproval. The reinstated policy will cover only losses resulting from Cancer that is Positively Diagnosed more than 10 days after the date of reinstatement. In all other respects, your rights and our rights will remain the same, subject to any provisions noted on or attached to the reinstated policy.

### 6. NOTICE OF CLAIM

Written notice of claim must be given to us within sixty (60) days after the occurrence or commencement of any loss covered by this policy, or as soon thereafter as is reasonably possible. Notice given by or on behalf of you to our Administrative Office in Little Rock, Arkansas or to our agent shall be deemed notice to us. The notice should include the name of the Insured and the policy number.

### 7. CLAIM FORMS

When we receive the notice of claim, we will send the Insured such forms as are usually furnished by us for filing proof of loss. If such forms are not sent within ten (10) days you will meet the proof of loss requirements by giving us a written statement of the nature and extent of the loss with the time stated in the "Proofs of Loss" provision, in this section.

### 8. PROOFS OF LOSS

Written proof of loss must be given to us within ninety (90) days after the date of such loss. If it was not reasonably possible to give written proof in the time required, we shall not reduce or deny the claim for this reason if the proof is filed as soon as reasonably possible. In any event, the proof required must be given no later than one year from the time specified, unless the claimant was legally incapacitated.

### 9. TIME PAYMENT OF CLAIMS

Indemnities payable under this policy for any loss will be paid as soon as we receive proper written proof of loss.

### 10. PAYMENT OF CLAIMS

Benefits are payable to the insured. Any accrued benefits unpaid at such insured's death will be paid to the spouse of such insured, if living, otherwise to the estate of such insured. If benefits are payable to the insured's estate or a beneficiary who cannot execute a valid release, we can pay benefits up to $1,000.00 to one related to the insured or beneficiary by blood or marriage whom we consider to be entitled to the benefits. We will be discharged to the extent of any such payments made in good faith.

We may pay all or a portion of any indemnities provided for health care services to the provider, unless the insured directs otherwise in writing by the time proofs of loss are filed. The Company cannot require that the services be rendered by a particular provider.

### 11. PHYSICAL EXAMINATION AND AUTOPSY

We, at our expense, have the right to have the covered person examined as often as reasonably necessary while claim is pending. We may also have an autopsy performed if necessary, unless prohibited by law.

12. LEGAL ACTIONS

No action at law or in equity shall be brought to recover on this policy within sixty (60) days after written proof of loss has been furnished in accordance with requirements of this policy. No such action may be brought after five (5) years from the time written proof of loss is required to be given.

13. CONFORMITY WITH STATE STATUTES

Any provision of this policy which, on its Effective Date, is in conflict with the laws of the state in which the Insured resides on such date is hereby amended to conform to the minimum requirements of such laws.

14. TERMINATION OF COVERED PERSON

Upon the termination of coverage of a Covered Person (see SECTION J) our acceptance of premium shall be considered as premium for only the Insured and the remaining Covered Persons.

15. OTHER INSURANCE WITH THIS INSURER

If the Insured has more than one policy like this policy with us, only one policy chosen by the Insured, the beneficiary or the Insured's estate, as the case may be, will be effective. We will refund all premiums paid for all other such policies.

16. CHANGE OF BENEFICIARY

Unless the Insured makes an irrevocable designation of beneficiary, the right to change beneficiary is reserved to the Insured and the consent of the beneficiary or beneficiaries shall not be requisite to surrender or assignment of the policy or to any change of beneficiaries, or to any other changes in this policy.

17. TERM OF COVERAGE

(a) The initial term of this Policy starts on the Effective Date at 12:01 a.m. Standard Time at the place of residence. It ends 12:01 a.m. on the same Standard Time on the First Renewal Date. (b) Each time this policy is renewed the new term begins and the old term ends. If a Renewal Premium is not paid when it is due the policy will remain in force during the grace period.

18. POLICY SCHEDULE

The POLICY SCHEDULE page and the information thereon is a part of this policy to the same extent as if it preceded the execution clause.

19. ASSIGNMENT

The Insured may assign benefits under this policy. We assume no responsibility for the validity or effect of any assignment of this policy or any interest in it.

20. UNPAID PREMIUMS

Upon the payment of a claim under this policy, any premium then due and unpaid may be deducted from such payment.

21. CLERICAL ERROR

A clerical error by us shall not invalidate insurance otherwise in force, nor continue insurance otherwise not validly in force.

22. NONPARTICIPATION

This policy shall not participate in the distribution of our surplus.

23. REFUND OF UNEARNED PREMIUM

You may cancel this policy at any time by written notice delivered or mailed to us, effective upon receipt of the notice or on a later date as specified. In this event of cancellation or death of the Insured, we will promptly return the unearned portion of any premium paid. Cancellation shall be without prejudice to any claim originating prior to the effective date of cancellation.



Case 1:07-cv-00016 Document 69-1 Filed 07/12/07 Page 20 of 30 PageID #: 1078

This page intentionally left blank

## INDEX


Insuring Clause . . . . . . . . . . . . . . . . . . . . . . 1

Policy Schedule . . . . . . . . . . . . . . . . . . . . . . 2

Renewability Clause . . . . . . . . . . . . . . . . . . . 1

Ten-Day Right to Examine Policy . . . . . . . . . 1

SECTION A
Definitions . . . . . . . . . . . . . . . . . . . . . . . . . 3-5

SECTION B
Family Member Eligibility . . . . . . . . . . . . . . . 5

SECTION C
Beginning of Benefit Payments . . . . . . . . . . . 5

SECTION D
Deductible. . . . . . . . . . . . . . . . . . . . . . . . . 5

SECTION E
Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . 6-10
Surgical Schedule . . . . . . . . . . . . . . . . . . . . 10-11

SECTION F
Waiver of Premium Benefit . . . . . . . . . . . . . . 11

SECTION G
Optional Cancer
Disability Compensation . . . . . . . . . . . . . . . 11-12

SECTION H
Exceptions and Limitations . . . . . . . . . . . . . 12

SECTION I
Continuation and Termination
(End) of Coverage . . . . . . . . . . . . . . . . . . . . 12-13

SECTION J
Conversion Privileges . . . . . . . . . . . . . . . . . 13-14

SECTION K
General Provisions . . . . . . . . . . . . . . . . . . . 14-15


Please examine your policy and the attached copy of the application carefully. Contact us at our Administrative Office in Little Rock, Arkansas, if you desire additional service or information.

If you change your address, please notify us giving your full name and policy number.

Your policy is a valuable asset. For our own protection, let us advise you regarding any suggestion to terminate this policy.

# *Life Investors*

**Insurance Company of America**

A Stock Company (Hereinafter called: We, our or us)
Administrative Office: 1020 West 4th Street, Little Rock, AR 72201

*THIS IS A LIMITED POLICY - READ IT CAREFULLY*

## MAMMOGRAPHY SCREENING BENEFIT RIDER

### CONSIDERATION

We will pay the benefits defined in this rider subject to all of its: Provision, conditions, exceptions and limitations for Mammography Screening for cancer described in the benefits section thereof and performed on or after the effective date of this rider. This rider is made a part of the Policy to which it is attached. It is issued in consideration of the issuance of the Policy, the statements contained in the application and the payment of the premium for the Policy. This rider is subject to all the Policy provisions, that are not different from or inconsistent with the provision of this rider.

### DEFINITIONS

**Mammogram** is a x-ray examination of the breasts utilizing a specialized technique and dedicated equipment for diagnostic purposes.

**Mammography Screening** consists of several mammograms of each breast.

### BENEFITS

If you are not covered under other insurance which provides mammography benefits, we will pay an indemnity benefit of $25 for Mammography Screening. This test must be performed on referral by a physician and is payable according to the following guidelines:

1. A baseline Mammogram for women ages thirty-five to forty; and
2. A Mammogram every two years, or more frequently based on the recommendation of the woman's physician, for women ages forty to fifty; and
3. A Mammogram every year for women fifty years of age and over.

### LIMITATIONS, EXCLUSIONS AND REDUCTIONS

1. We will not pay for Mammography Screening unless it is performed on referral by a covered person's physician.
2. Benefits are not payable under this rider to a covered person who is insured under another insurance policy which provides mammography benefits.

### TERMINATION

This Rider will terminate: When the policy terminates; or at the expiration of the Grace Period for the payment of any premium for the Policy in default.

LIFE INVESTORS INSURANCE COMPANY OF AMERICA

Larry G Brown

Secretary

Form LI MSB-43

0D1302881

# LIFE INVESTORS INSURANCE COMPANY OF AMERICA

A STOCK COMPANY
Home Office: Cedar Rapids, Iowa
Administrative Office: P.O. Box 8063, Little Rock, AR 72203

# RADIATION THERAPY, CHEMOTHERAPY AND BLOOD ADDITIONAL BENEFITS RIDER

## Consideration

While this rider is in force, we will pay the benefits defined in this rider subject to all of its: Provisions, conditions, exceptions, and limitations for loss from Cancer first Positively Diagnosed after the "waiting period". This rider is made a part of the Policy. It is issued in consideration of the statements made in the application and the payment of the extra premium for it. This rider is subject to all of the Policy provisions that are not different from or inconsistent with the provisions of this rider.

## Definitions

INSURED: The Insured named in the Policy; or shown for this rider if added to the Policy by endorsement.

EFFECTIVE DATE: The Effective Date of the Policy; or the date shown for this rider if added to the Policy by endorsement.

POLICY: The Policy to which this rider is attached.

INDIVIDUAL RIDER: Provides coverage for the Insured only.

TWO ADULT RIDER: Provides coverage for Insured and Spouse only.

SINGLE PARENT FAMILY RIDER: Provides coverage for the Insured and at least one other Covered Person who is not the Insured's Spouse.

FAMILY RIDER: Provides coverage for the Insured, the Insured's Spouse, and any other Covered Person.

## Benefits

1. RADIATION THERAPY TREATMENTS: We will pay actual charges beyond the calendar year maximum in the Policy for radiation therapy treatments authorized and administered by a Radiation Therapist. Under this provision, we will not pay related expenses for: Prescribed medications, physical exams, checkups, laboratory or diagnostic tests, treatment consultations and planning, or any similar such expenses. Radiation therapy does not include Laser or Stereotatic Surgery. This provision extends only the Radiation Therapy Treatments calendar year maximum contained in the Policy. This provision does not apply to the Associated Expenses or Alopecia Benefits.

2. CHEMOTHERAPY TREATMENTS: We will pay actual charges beyond the calendar year maximum in the Policy for cancericidal chemical substances including their administration. Such cancericid chemical substances must be approved by the Unite States Food and Drug Administration. They must als be administered by or under the direction of physician. Under this provision we will not pay relate expenses for Prescribed medications, physical exam checkups, laboratory or diagnostic tests, treatmer consultations and planning, or any similar suc expenses. This provision extends only th Chemotherapy Treatments calendar year maximur contained in the Policy. This provision does not appl to the Associated Expenses or Alopecia Benefits.

3. BLOOD, PLASMA AND BLOOI COMPONENTS: We will pay actual charges beyon the calendar year maximum in the Policy while you ar Hospital Confined or for Outpatient treatment:

   (a) blood, plasma, and blood components;

   (b) the administration of (a);

   (c) transfusions;

   (d) processing and procurement;

   (e) crossmatching.

   We will not pay for the cost of blood, plasma or bloo components that is/are replaced by donors. We wi not pay any benefits related to the administration c chemotherapy under this provision. This provisio extends the Blood, Plasma and Blood Component calendar year maximum contained in the Policy.

## Limitations and Exclusions

1. No benefits are payable under this rider for an expenses which are paid by the Policy.

2. This rider contains a 30 day "waiting period." Thi means that no benefits are provided for any perso diagnosed with Cancer during the first 30 days fron the Effective Date of such coverage.

3. We may reduce or deny a claim or void this rider fo loss incurred by a Covered Person: (a) during the firs 2 years from the Effective Date of such coverage fo any misstatements in the application which woul have materially affected our acceptance of the risk; o (b) at any time for fraudulent misstatements in th application.

4. With respect to the benefits offered by this Rider, th Time Limit on Certain Defenses will apply from th Effective Date of this Rider.

## Termination

This rider will terminate for any one of the following reasons which occurs first:

(1) The Policy terminates; or

(2) failure to pay the Renewal Premium before the end of the grace period; or

(3) our receipt of the Insured's written request to terminate this rider.

Termination due to (3) shall be on the next Renewal Date after: Our receipt of the Insured's written notice, or any later specified date, if the mode of premium payment is monthly. Otherwise, it will be on the date of our receipt of such written notice, or any later date as indicated by the Insured. Any premium paid in advance of the termination date due to (3) shall be refunded to the Insured.

Signed for LIFE INVESTORS INSURANCE COMPANY OF AMERICA at its Administrative Office on the Effective Date.

Craig S. Vermie
Secretary

President

Form LRC0100

0D1302881

# LIFE INVESTORS INSURANCE COMPANY OF AMERICA

**A STOCK COMPANY**

Home Office: Cedar Rapids, Iowa
Administrative Office: P.O. Box 8063, Little Rock, AR 72203

## INITIAL DIAGNOSIS BENEFIT RIDER

### CONSIDERATION

While this rider is in force, we will pay the benefits defined in this rider subject to all of its provisions, conditions, exceptions, and limitations upon the Initial Diagnosis of internal Cancer after the "waiting period". It is issued in consideration of the issuance of the Policy, the statements contained in the application and the payment of the premium for this rider. This rider is subject to all of the Policy provisions that are not different from or inconsistent with the provisions of this rider.

### DEFINITIONS

**EFFECTIVE DATE:** The Effective Date of the Policy; or the date shown for this rider if added to the Policy by endorsement.

**POLICY:** The Policy to which this rider is attached.

**INDIVIDUAL RIDER:** Provides coverage for the Insured only.

**SINGLE PARENT FAMILY RIDER:** Provides coverage for the Insured and at least one Dependent Child. It does not include the Insured's Spouse.

**FAMILY RIDER:** Provides coverage for the Insured, the Insured's Spouse, and any other Covered Person.

**INITIAL DIAGNOSIS:** The first time you are positively Diagnosed as having internal Cancer, after the "waiting period" of this rider and while it is in force.

**MAXIMUM BUILDING PERIOD:** The number of whole months between the Effective Date of this rider and the first date of the following:

(a) the Initial Diagnosis of internal Cancer of the Insured; and

(b) the rider anniversary next following the Insured's attained age 65.

### BENEFITS

**INITIAL DIAGNOSIS BENEFIT:** Upon the Initial Diagnosis of internal Cancer of any person covered under this rider, we will pay a one time benefit of $1,000. This benefit is payable only once for each Covered Person and is in addition to any other benefits payable under this rider or the Policy. This benefit is not payable for Skin Cancer.

**GRADED INDEMNITY BENEFIT:** Upon the Initia Diagnosis of internal Cancer of the Insured, we will pay $2( times the number of whole months the coverage for tha person has been in force, subject to the Maximum Buildin; Period. This benefit is payable only once during the lifetim of the rider and is in addition to any other benefits payabl under this rider or the Policy. This benefit is not payabl for Skin Cancer.

### LIMITATIONS AND EXCLUSIONS

(1) This rider contains a 30 day "waiting period". Thi: means that no benefits are provided for any Cance: diagnosed before coverage has been in effect 30 day: from the Effective Date of such coverage.

(2) Benefits under this rider are payable only for th Initial Diagnosis of internal Cancer and only once fo: each person covered under this rider.

(3) Benefits are not payable for Skin Cancer or an Cancer excluded from coverage by name or specifi description.

(4) We may reduce or deny a claim or void this rider fo loss incurred by a Covered Person: (a) during the firs 2 years from the Effective Date of such coverage fo: any misstatements in the application which woul have materially affected our acceptance of the risk; o (b) at any time for fraudulent misstatements in th application.

(5) With respect to the benefits offered by this Rider, th Time Limit on Certain Defenses will apply from th Effective Date of this Rider.

### TERMINATION

This rider will terminate:

(1) The Policy terminates; or

(2) upon your written request for its termination on an premium due date, accompanied by the Policy fo: endorsement;

(3) at the expiration of the Grace Period for the paymen of any premium for the Policy or this rider in default.

**Signed for LIFE INVESTORS INSURANCE COMPANY OF AMERICA at its Administrative Office on the Effective Date.**

Craig S. Vermie
Secretary

President

Form LRC532

0D1302881

APPLICATION TO: **LIFE INVESTORS INSURANCE COMPANY OF AMERICA**

Home Office: Cedar Rapids, Iowa — Administrative Office: Little Rock, Arkansas

Mr. ☒ Mrs. ☐ Miss ☐ Ms. ☐ — Birthdate [redacted] — Social Security Number [redacted]

Applicant ANTHONY (First) E (Middle) GOOCH (Last)

Home Address 20362 (No.) Kimzy Carr Rd (Street) Athens (City) ALA (State) 35614 (Zip) Home Phone [redacted]

Spouse DENISE (First) V (Middle) GOOCH (Last) DOB 4/7/57 Dependent Children ☐ Yes ☒ No

Business Name ELLIOTT POPHAM PONT, OLDS, BUICK + GMC TRUCK Business Phone (931) 363-5566

Business Address 1225 (No.) E COLLEGE ST (Street) PULASKI (City) TN (State) 38478 (Zip) Occupation MECH.

## CANCER INSURANCE, AND OTHER RIDERS/INTENSIVE CARE

☐ I ☐ SPF ☐ TAF ☐ F

| | Benefit | Premium |
|---|---|---|
| (A) Cancer Policy | 100.00 | 36.80 |
| Chemo/Rad/Blood yr./max | NO CAL YR MAX | |
| Deductible | 0 | |
| B. Specified Disease Rider | | |
| Deductible | | |
| C. Home Recovery Rider | | 5.00 |
| (D) Initial Diagnosis Rider | | |
| E. Intensive Care Policy/Rider | | |
| F. Radiation/Chemo/Blood Additional Benefits Rider | | |

| | Benefit | Premium |
|---|---|---|
| G. Heart Disease, Heart Attack & Stroke Rider | | |
| Deductible | | |
| H. Heart Disease, Heart Attack & Stroke Home Recovery Rider | | |
| I. Vital Organ Transplant Rider | | |
| Sub-Total | | |
| J. Return of Premium Rider | | |
| **Total Policy Premium** | | $ 41.80 |

## HEART DISEASE, HEART ATTACK, STROKE POLICY

☐ I ☐ SPF ☐ F

| | Benefit | Premium |
|---|---|---|
| A. Heart Disease, Heart Attack, and Stroke Policy | | |
| Deductible | | |
| B. Hosp.Inten.Care Policy/Rider | | |
| C. Home Recovery Rider | | |

| | Benefit | Premium |
|---|---|---|
| D. Vital Organ Transplant Rider | | |
| Sub-Total | | |
| E. Return of Premium Rider | | |
| **Total Policy Premium** | | $ N/A |

## ACCIDENT/DISABILITY INSURANCE ☐ I ☐ SPF ☐ TAF ☐ F Industry Classification ______

| | ☐ A | ☐ AA | Premium |
|---|---|---|---|
| AD & D Policy | 4 | 8 | |
| Hospital Income Rider | $100 | 200 | |
| Accident Emergency Treatment Rider | $100 | 200 | |
| Follow-up Treatment Rider | $ 25 | 50 | |
| Specific Sum Injuries Benefit Rider | 5 | 5 | units |
| Additional Benefit Rider | NA | NA | |
| Ambulance Benefit | NA | NA | |
| Transportation Benefit | NA | NA | |
| Family Lodging Benefit | NA | NA | |

| | A | AA | Premium |
|---|---|---|---|
| Physical Therapy/Prosthesis Rider | NA | NA | |
| Appliances Benefit | NA | NA | |
| Physical Therapy Benefit | NA | NA | |
| Prosthesis Benefit | NA | NA | |
| Sub-Total | | | $ |

**Optional Riders**
*(Primary applicant only)*

| | A | AA | Premium |
|---|---|---|---|
| ☐ Off-The-Job Accident/Disability | 400 | 700 | |
| ☐ On-The-Job Accident/Disability | NA | NA | |
| ( 12 months Benefit Periods) | | | |
| Sub-Total | | | $ |

☐ Return of Premium $

Beneficiary ______ Relationship ______

(The Applicant-Insured will be the beneficiary for Spouse and/or Dependent Children Coverage) **Total Accident/Disability Premium** $ N/A

## HOSPITAL INDEMNITY POLICY ☐ I ☐ SPF ☐ TAF ☐ F

| | | Premium |
|---|---|---|
| Hospital Benefit | ☐ $100 ☐ $150 ☐ $200 | $ |
| Initial Hospital Benefit | ☐ $200 ☐ $400 | $ |
| Surgery & Anesthesia Rider | ☐ 1 ☐ 2 ☐ 3 | $ |
| Optional Riders ☐ Yes ☐ No | | $ N/A |
| **Total Hospital Indemnity Premium** | | $ |

Premium Billing Modes ☐ Monthly Bank Draft ☐ Semi-Annual Direct ☐ Annually Direct ☒ Payroll Deduction

Payroll Group Number ______ **Total of all premiums** $ 41.80

Form LMPAC100

(Continued on back)

| Section | HEALTH QUESTIONS | Yes | No | If "Yes", list person(s) to excluded from that Section's Coverage |
|---|---|---|---|---|
| 1. | **FOR ALL COVERAGE:** Have you or anyone proposed for coverage been diagnosed or been treated by a member of the Medical Profession as having Acquired Immune Deficiency Syndrome ("AIDS"); "AIDS" related complex ("ARC"); or "AIDS" related conditions?...... | ☐ | ☒ AES | Person(s) |
| 2. | ***FOR CANCER COVERAGE, INCLUDING RIDERS:*** | | | |
| | A. Have you or anyone proposed for coverage ever been diagnosed as having or treated for any form of Internal Cancer, Skin Cancer or any malignancy?................ | ☐ | ☒ AES | Person(s) |
| | B. Have you or anyone proposed for coverage undergone a biopsy or other diagnostic test within 30 days or are now scheduled for such to determine whether any form of cancer or malignancy exists? *(Do not submit if "Yes")* ............. | ☐ | ☒ AES | Person(s) |
| 3. | ***FOR SPECIFIED DISEASE RIDER:*** Have you or anyone proposed for coverage ever been diagnosed as having or treated for: Adrenal Hypofunction (a.k.a. Addison's Disease), Amyotrophic Lateral Sclerosis (a.k.a. Lou Gehrig's Disease), Botulism, Brucellosis, Budd-Chiari Syndrome, Cystic Fibrosis, Diphtheria, Encephalitis, Histoplasmosis, Legionnaires Disease, Lupus Erythematosus, Malaria, Meningitis, Multiple Sclerosis, Muscular Dystrophy, Myasthenia Gravis, Osteomyelitis, Poliomyelitis (Polio), Q Fever, Reye's Syndrome, Rheumatic Fever, Rocky Mountain Spotted Fever, Sickle Cell Anemia, Tay Sachs Disease, Tetanus, Toxic Shock Syndrome, Trichinosis, Tuberculosis, Typhoid Fever, or Whooping Cough?.. | ☐ | ☐ | Person(s) |
| 4. | ***FOR INTENSIVE CARE POLICY/RIDER:*** Have you or anyone proposed for coverage been diagnosed, treated, hospital confined or received medical advice from a Physician for a heart attack, heart disease, a heart condition or any heart abnormality?.......... | ☐ | ☐ | Person(s) |
| 5. | ***FOR HEART DISEASE, HEART ATTACK AND STROKE COVERAGE*** | | | |
| | A. Within the past 10 years has anyone proposed for coverage been diagnosed, treated, received medical advice or taken prescribed medication for Stroke, or any disease, disorder, or abnormality of the brain, heart, or circulatory system (arteries, veins, lymph nodes, and vessels) ?.......... | ☐ | ☐ | Person(s) |
| | B. Within the last 5 years has anyone proposed for coverage, been diagnosed, treated, received medical advice or taken prescribed medication for High Blood Pressure?.......... | ☐ | ☐ | Person(s) |
| | C. Within the past 5 years has anyone proposed for coverage, been diagnosed, treated, received medical advice or taken prescribed medication or used insulin for Diabetes?.... | ☐ | ☐ | Person(s) |
| 6. | ***FOR ACCIDENT/DISABILITY COVERAGE*** | | | |
| | A. Do you work 30 or more hours per week with the employer listed on the first page of this application and is this your primary (full-time) occupation?.......... | ☐ | ☐ | |
| | B. Do you earn $10,000 or more annually in your primary occupation?.......... If your answer to A or B was "No", you are not eligible for any Optional Disability Coverage. | ☐ | ☐ | |
| | C. Are you covered by Worker's Compensation or similar law in your full-time job?........ (If "Yes", do not apply for On-The-Job Disability Coverage.) | ☐ | ☐ | |
| 7. | ***FOR HOSPITAL INDEMNITY COVERAGE*** | | | |
| | A. Is anyone proposed for coverage currently confined in a hospital or nursing home, or has hospitalization been recommended by a physician?.......... | ☐ | ☐ | Person(s) |
| | B. Has anyone proposed for coverage been confined in a hospital or nursing home or treated on an outpatient basis within the last 24 months because of internal cancer, heart surgery, heart attack, congestive heart failure, vascular disease or chronic obstructive pulmonary disease; or been confined in a hospital or nursing home within the last 12 months for chronic liver disease, stroke, emphysema, sickle-cell anemia, asthma, chronic bronchitis or Parkinson's disease?.......... | ☐ | ☐ | Person(s) |
| | C. Has anyone proposed for coverage ever been treated or diagnosed as having Alzheimer's disease, senile dementia, systemic lupus, kidney failure or insulin dependent diabetes?.. | ☐ | ☐ | Person(s) |
| | D. List all health insurance you currently have in force or applied for. | | | |

Details of "Yes" answers to questions above. (Except Question #6)

| Question # | Person(s) | Condition and Date of Last Treatment | Name and Address of Doctor or Hospital |
|---|---|---|---|
| | | | |
| | | | |

Form LMPAC100

(Continued on next page)

## REPRESENTATION OF APPLICANT

I understand that the policy(ies) I am applying for will not cover any person who has attained age 65 prior to the Effective Date of the policy for intensive care, accident, heart and stroke, or hospital coverage.

I hereby certify that I have read or had read to me the completed application and that the statements are true to the best of my knowledge, information and belief and realize that any false statements herein which materially affect the acceptance of the risk or the hazard assumed may result in loss of coverage under the policy to which this application is attached.

I agree that the insurance applied for shall take effect on the application date if the full premium is paid, provided that all persons proposed for coverage is acceptable in every respect under the Company's standard rate of premium and practices for the amount and plan of insurance applied for.

I hereby authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company, or the Medical Information Bureau that has knowledge of my health, or of my family's health, to give to LIFE INVESTORS INSURANCE COMPANY OF AMERICA any such information. A photographic copy of this authorization shall be as valid as the original.

I have received an outline of coverage (if required)........ ☒ Yes ☐ No AEG

Is the insurance applied for intended to replace any other health insurance presently inforce?........ ☐ Yes ☒ No AEG

If "Yes", name of Company ______ Amount (if known) ______ AEG

Is anyone proposed for coverage covered by any Title XIX program (e.g. Medicaid)?........ ☐ Yes ☒ No

If "Yes", name(s): ______

Permission to show Insured's name for marketing purposes only: ☒ YES ☐ NO

Effective Date of Coverage: ☒ Application Date ☐ Other _/_/_

Dated at Pulaski TN this 24 day of Nov. 19 97.

Signature of Owner/Applicant [signature] Signature of Spouse ______ (If medical history listed)

I certify that: I personally saw the applicant when the application was written and each question was asked of the applicant and answered as recorded. All answers above are correct to the best of my knowledge and belief.

Signature of Licensed Representative [signature] 50% / [signature] 50% Agent No. F0664 / FK27 Date 11-24-97

Form LMPACI00 ☐ Check here if adding to existing policy # ______