# EXHIBIT

## "4"

EXHIBIT "4"

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\* FOR OFFICE USE ONLY - PLEASE DO NOT MAIL ANY OF THESE PAGES \*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

May 1, 2006


ANTHONY E GOOCH
18493 SEWELL RD
ATHENS AL 35614-5727

        IMPORTANT INFORMATION ABOUT
        YOUR CANCER INSURANCE POLICY NO. 0D1302881
        INSURED:   ANTHONY E GOOCH


DEAR ANTHONY E GOOCH

Our records show that you have the above cancer insurance policy with Life Investors Insurance
Company of America (the "Company").  Protecting yourself and your family through our
supplemental insurance coverage is obviously a responsible decision.

Your policy provides a number of different types of benefits, including benefits based upon the
"actual charges" for certain kinds of medical services, such as radiation therapy and
chemotherapy treatments.  Absent an assignment of benefits, your policy pays these monies
directly to you, regardless of whether you have other health insurance coverage, and you are free
to use these monies for any purpose.

When submitting a claim for these types of benefits, it is important to submit the appropriate
information and documentation showing the actual charges being paid to and accepted as
payment by the healthcare provider.  This information is your "proof of loss."  Submitting the
correct proof of loss will help assure that the Company has the necessary information to pay the
benefits provided under your policy.

Doctors, hospitals, and other healthcare providers will often send informational statements to the
patient that contain "list" prices or "standard" rates for their medical services.  This happens
most frequently if the patient is covered by Medicare or a group health insurance plan.  These
statements are not true "bills" and do not reflect the actual amounts being paid to and accepted
by the healthcare provider as payment in full.  Consequently, these types of informational
statements do not reflect the "actual charges" being incurred and paid.  The amounts healthcare
providers are actually charging and accepting as payment are often significantly less than the
amounts listed on these informational statements.

**LIICA00598**

The Company has revised its claim documents to make sure that the necessary information and documentation are included to support a claim for benefits based on actual charges under your policy. We have enclosed a copy of the updated Claim Package and instructions for submitting a claim. The new claim documents must be submitted for all medical services provided on or after July 1, 2006. As discussed in the instructions, you must submit the Explanation of Benefits or other documentation which shows the amount of the actual charges being paid to and accepted by the healthcare provider as payment in full for the medical services rendered. If the information submitted is not sufficient, the Company may request more information.

If you have any questions about the enclosed Claim Package or instructions for submitting a proof of loss, please call us toll free at 1-866-268-5788 between 9:00 a.m. and 4:00 p.m. Eastern time to speak with a customer service representative, or write us at P.O. Box 36580, Louisville, KY 40233. We appreciate our customers and look forward to having you as a valued customer for many years.

Sincerely,
LIFE INVESTORS INSURANCE COMPANY OF AMERICA


Connie Whitlock
Vice President, Chief Operating Officer


Enclosure:
Claim Package and Instructions

**LIICA00599**

# EXHIBIT

## "5"


**LIFE INVESTORS INSURANCE**
COMPANY OF AMERICA

Administrative Office
P.O. Box 36580
Louisville, KY 40233-6580
1-866-268-5788

May 1, 2006

ANTHONY E GOOCH
18493 SEWELL RD
ATHENS      AL 35614-5727

**IMPORTANT INFORMATION ABOUT
YOUR CANCER INSURANCE POLICY NO. 0D130288I
INSURED: ANTHONY E GOOCH**

DEAR ANTHONY E GOOCH

Our records show that you have the above cancer insurance policy with Life Investors Insurance Company of America (the "Company"). Protecting yourself and your family through our supplemental insurance coverage is obviously a responsible decision.

Your policy provides a number of different types of benefits, including benefits based upon the "actual charges" for certain kinds of medical services, such as radiation therapy and chemotherapy treatments. Absent an assignment of benefits, your policy pays these monies directly to you, regardless of whether you have other health insurance coverage, and you are free to use these monies for any purpose.

When submitting a claim for these types of benefits, it is important to submit the appropriate information and documentation showing the actual charges being paid to and accepted as payment by the healthcare provider. This information is your "proof of loss." Submitting the correct proof of loss will help assure that the Company has the necessary information to pay the benefits provided under your policy.

Doctors, hospitals, and other healthcare providers will often send informational statements to the patient that contain "list" prices or "standard" rates for their medical services. This happens most frequently if the patient is covered by Medicare or a group health insurance plan. These statements are not true "bills" and do not reflect the actual amounts being paid to and accepted by the healthcare provider as payment in full. Consequently, these types of informational statements do not reflect the "actual charges" being incurred and paid. The amounts healthcare providers are actually charging and accepting as payment are often significantly less than the amounts listed on these informational statements.

The Company has revised its claim documents to make sure that the necessary information

and documentation are included to support a claim for benefits based on actual charges under your policy. We have enclosed a copy of the updated Claim Package and instructions for submitting a claim. The new claim documents must be submitted for all medical services provided on or after July 1, 2006. As discussed in the instructions, you must submit the Explanation of Benefits or other documentation which shows the amount of the actual charges being paid to and accepted by the healthcare provider as payment in full for the medical services rendered. If the information submitted is not sufficient, the Company may request more information.

If you have any questions about the enclosed Claim Package or instructions for submitting a proof of loss, please call us toll free at 1-866-268-5788 between 9:00 a.m. and 4:00 p.m. Eastern time to speak with a customer service representative, or write us at P.O. Box 36580, Louisville, KY 40233. We appreciate our customers and look forward to having you as a valued customer for many years.

Sincerely,
LIFE INVESTORS INSURANCE COMPANY OF AMERICA


Connie Whitlock
Vice President, Chief Operating Officer


Enclosure:
Claim Package and Instructions

# EXHIBIT

## "6"

EXHIBIT "6"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| ANTHONY E. GOOCH, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No: 1:07-0016 |
| | ) | JUDGE HAYNES |
| LIFE INVESTORS INSURANCE | ) | |
| COMPANY OF AMERICA, et.al., | ) | |
| | ) | |
| Defendants. | ) | |

### AFFIDAVIT OF ANTHONY GOOCH

STATE OF ALABAMA

COUNTY OF MADISON

I, Anthony Gooch, being duly sworn, state as follows:

1.      I am a competent adult, over 18 years of age, and I have personal knowledge of the matters set forth in this Affidavit. If called upon to do so, I would testify to these facts in a court of law.

2.      On or about December 1997, I purchased a "Cancer Only Policy" ("the Policy") from the Defendants. This Policy, bearing the number 0D1302881, was issued to me on December 17, 1997. A true and correct copy of said Policy, together with purchased riders, is attached hereto as Exhibit A.

3.      I understood from the Policy that the Defendants would provide me with monetary benefits for identified treatments and services in the event of a cancer diagnosis covered by the Policy. As to radiation therapy and chemotherapy benefits in particular, I understood that I would receive benefits equal to the amount my physicians and healthcare providers billed for those services.

4.      On or about October 1999, I was diagnosed with non-Hodgkins lymphoma. Over the next eight years, my physicians found the following cancers and tumors: (a) a tumor near my aorta that was my doctors told me was the size of a grapefruit when it was discovered; (b) cancerous cells in my bone marrow; (c) four tumors in my abdomen, each of which formed in lymph nodes; (d) tumors on both of my kidneys, causing me to suffer kidney failure; and (e) a tumor on my right breast.

5.     As of the date of this Affidavit, I continue to suffer from the tumor on my right lung, the four tumors throughout my abdomen, the tumors on each of my two kidneys, and remnants of the tumor on my right breast left after it most of it was removed on or about January 2007.

6.     I have received chemotherapy throughout the past eight years since the first tumor was found in October 1999 up through the present date, and I have been told that further chemotherapy will be necessary. I have recently received treatments strong enough to cause me to lose my vision for up to two weeks after administration. During this period, I required substantial assistance from my wife.

7.     After my cancer diagnosis in October 1999, my wife and I asked the Defendants about the process for submitting claims. In response, the Defendants sent me instructions, a true and correct copy of which is attached hereto as Exhibit B. These instructions provide, in relevant part:

> **Cancer, Specified Disease, Hospital & Heart**. Submit the completed [claim] form along with your itemized hospital bills, doctor bills (surgery, anesthesia, in-patient attending physician bills), chemotherapy and radiation therapy bills. On claims for cancer and specified disease, submit the first pathology report diagnosing your condition.

I understand these instructions to further confirm that the Defendants had contracted to provide me with benefits that were equal to my medical bills.

8.     In accordance with my Policy and Exhibit B referenced above, I submitted my first claim on or about November 1999 by transmitting the billing statements from my healthcare providers as my proofs of loss. Thereafter, I continued to submit claims in this fashion. Up until July 1, 2006, the Defendants paid each of those claims based on the healthcare provider billing statements I had submitted. True and correct copies of examples of some of these billing statements are attached hereto as Exhibit C, together with documentation from the Defendants showing payment of these claims equal to the amount indicated on the corresponding healthcare provider billing statement.

9.     On or about May 2006, I received a letter from the Defendants informing me that, effective July 1, 2006, they would no longer pay benefits for certain treatments, such as those relating to radiation therapy or chemotherapy, using the amount charged as shown in healthcare provider billing statements as its contractual index. A true and correct copy of said letter is attached hereto as Exhibit D. I received this letter

despite the fact that I never agreed or consented to this change in my Policy benefits, nor have I agreed or consented to this change as of the date of this affidavit.

10.     On or about October 2006, I submitted another claim for benefits to the Defendants for additional courses of chemotherapy I received after July 1, 2006, or when the Defendants informed me of their unilateral change in benefits. As I had done before receiving that letter, I submitted the healthcare provider billing statement furnished by my treating physician and asked that the Defendants pay the claim in full. A true and correct copy of the documents I submitted are attached hereto as Exhibit E.

11.     On or about November 2006, the Defendants informed me by way of written correspondence that they had processed my claim on November 1 and found that I had improperly submitted my proof of loss. This correspondence informed me that I had to re-file my proof of loss attaching either (1) a summary notice from Medicare or Medicaid; (2) an Explanation of Benefits ("EOB") from whatever other medical care coverage I had in place; or (3) a statement from my physician showing the amount I paid for the services rendered. A true and correct copy of this correspondence is attached hereto as Exhibit F.

12.     On or about November 10, 2006, I re-submitted my proof of loss and attached an EOB obtained from Blue Cross/Blue Shield ("BCBS") showing that BCBS had paid only a portion of the amount my physician charged. I attached this BCBS EOB in addition to the medical bill I sent previously. The Defendants subsequently paid the claim in an amount that was substantially less than the medical bill to which my benefits were contractually indexed.

13.     I have since filed a number of additional claims with Defendants for chemotherapy. I have submitted claims for chemotherapy benefits based on medical bills totaling several thousands of dollars, but have received only a fraction of my benefits from the Defendants based on the EOBs they required me to submit. As a result, the Defendants have withheld a substantial amount of benefits since July 1, 2006, totaling thousands of dollars, and they promise to underpay my claims in the future.

14.     After I was diagnosed with cancer in 1999, my declining health forced me to retire from my job as an automobile mechanic working in Pulaski, Tennessee. As a result, I now substantially depend on the moneys I receive under the policy to support my wife and myself.

15.     This Policy was never intended to pay medical benefits and I purchased it solely as a means to provide a stream of income if I was diagnosed with cancer. Because of our present income needs, my wife has been forced to work overtime on a regular basis for us to be able to meet our financial obligations. Her lengthened work schedule, in turn, has greatly hindered her ability to care for me and provide me with companionship and emotional support during this difficult time.

16.     The Defendants' decision to cut benefits as of July 1, 2006, has substantially decreased my income and, as a result, has financially burdened me and my wife. That decision has also caused us hardship attributable to stress caused by receiving benefits in amounts substantially less than anticipated.

17.     Finally, the Defendants' imposition of new claims submission documentation that is irrelevant under the Policy has resulted in my wife and I spending substantially more time on the submission of proofs of loss to obtain benefits. Rather than being able to immediately fax my medical bills to the Defendants and receive payments in the amount of those bills, I must now wait on my medical insurance carrier to process the doctor's payment, make payment to the physician and generate an EOB. I am then required to produce to the Defendants a copy of that EOB from my medical insurance carrier. The additional time required by my medical insurance carrier to process claims has appreciably added to the amount of time it takes me to receive my benefits under the policy.

18.     My health has substantially declined in the past few months as my cancer has progressed. I am currently undergoing a more aggressive course of chemotherapy because my cancer has not responded to less drastic treatments as my physicians had hoped. The chemotherapy I have recently received is so strong that it caused me to lose my vision for up to two weeks after each session. I have also recently experienced renal failure as a result of tumors on my kidneys and have had stents inserted in the ducts for each kidney to keep them functioning. I have been told by my treating physician that my cancer is becoming increasingly aggressive. I do not know how much longer I can continue fighting this disease and these insurance companies.

_(signature)_

Anthony Gooch

SWORN TO AND SUBSCRIBED BEFORE ME, this the 22= day of

May , 2007.

_(signature)_

NOTARY PUBLIC

My Commission Expires:

9/5/2010

# EXHIBIT

## "7"

EXHIBIT "7"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**WILLIAM E. SMITH,**                                  )
on behalf of himself and all others similarly situated, )
                                                       )
        Plaintiff,                                )       Case No. 2:07-cv-00681
                                                       )
v.                                                     )
                                                       )       Honorable Terence F. McVerry
**LIFE INVESTORS INSURANCE COMPANY**                   )
**OF AMERICA,**                                        )
                                                       )       [Electronically Filed]
        Defendant.                               )

## DECLARATION OF JAMES A. BYRNE IN SUPPORT OF
## LIFE INVESTORS' MOTION TO DISMISS THE CLASS ACTION COMPLAINT

Pursuant to 28 U.S.C. § 1746, the undersigned, James A. Byrne, states the following:

1.    My name is James A. Byrne. The statements made herein are based on my personal knowledge and review of the business records of Life Investors Insurance Company of America ("Life Investors"). I am over 21 years of age and competent to testify to the statements set forth in this Declaration.

2.    I am Director of Claims Analysis in the Administrative Offices of Life Investors in Louisville, Kentucky (the "Louisville Office").

3.    The Cancer Only Policy No. 0D1349751 issued to Frances J. Smith (the "Policy") has been administered by the Louisville Office from December 2002 to the present.

4.    I have reviewed the plaintiff's proposed class definition in paragraph 31 of the Complaint which reads as follows:

> All individuals in Pennsylvania who (i) were covered persons
> under cancer-only insurance policies issued or underwritten by
> Life Investors Insurance Company of America ("Life Investors")
> that were identical or similar to Policy Form Series LPC01PA, (ii)

1

received covered treatments, services or procedures for which the policies provided that Life Investors would pay the "actual charges" as benefits, and (iii) were paid lesser benefits by Life Investors based on the amounts paid to healthcare providers by third-party payors.

5.    Six individuals meet the criteria set forth in the plaintiff's proposed class definition.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 22, 2007.

JAMES A. BYRNE

2

# EXHIBIT

## "8"

EXHIBIT "8"



# Commonwealth National Life Insurance Company

113 South Davis Avenue
CLEVELAND, MISSISSIPPI 38732

## THIS IS A LEGAL CONTRACT BETWEEN YOU AND US. READ YOUR POLICY CAREFULLY.

We agree to pay the benefits as provided in your policy.

This policy is issued in consideration of the payment of the premium and the statements made in the application.

Your policy is in force on the Effective Date. Its term begins and ends at 12:00 Noon, Standard Time, where you live.

The first premium is due on the Effective Date.

### RENEWAL AND PREMIUM PAYMENT PROVISIONS

You may keep your policy in force by paying the premiums when they are due or during the grace period. If premiums are paid on time, we cannot cancel the policy or place any restrictive rider on it. Send your premiums to us at our Home Office, in Cleveland, MS.

We have the right to change the renewal premiums for this policy only if we change them for all policies like yours in the state where you live. Any change in rates will apply only to the premiums due after the effective date of change. Premium rate adjustments will be made only on the policy anniversary and we will give you at least 30 days prior written notice of the change at your last known address.

### IMPORTANT NOTICE! PLEASE READ!

Your policy was issued on the basis of the information shown on your application, a copy of which is attached. If, to the best of your knowledge and belief, there is any misstatement in your application or if any past medical history has been omitted, please write to Commonwealth National Life Insurance Company within 10 days regarding the incorrect or omitted information; otherwise, your policy may not be a valid contract.

### NOTICE OF TEN DAY RIGHT TO EXAMINE POLICY

Please read your policy. If you are not satisfied, send it back within 10 days after you receive it. Send your policy to us at our Home Office. We will send back your money. The policy will be void.

This policy is signed for Commonwealth National Life Insurance Company by its President and Secretary.

President                                            Secretary

LIMITED BENEFIT
CANCER TREATMENT POLICY
OPTIONAL BENEFITS FOR INTENSIVE CARE UNIT, DREAD DISEASE,
AND FIRST OCCURRENCE BENEFIT
NON-PARTICIPATING

Form - CEP-350-MAX-COMB

DEFENDANT'S EXHIBIT

POLICY INDEX                                                          PAGE/FORM

RENEWAL AND PREMIUM PAYMENT PROVISION.                Cover page/CEP-350-MAX-COMB

NOTICE OF TEN-DAY RIGHT TO EXAMINE POLICY             Cover page/CEP-350-MAX-COMB

PART ONE - Definitions                                              Page 2

PART TWO - Payment of Benefits Provision                            Page 2

PART THREE - Schedule of Benefits                                 Pages 3-5

   A. HOSPITAL CONFINEMENT
   B. DRUGS AND MEDICINE BENEFIT
   C. INPATIENT LABORATORY, DIAGNOSTIC AND BIOPSY BENEFIT
   D. OUTPATIENT LABORATORY, DIAGNOSTIC AND BIOPSY BENEFIT
   E. SURGICAL BENEFIT
   F. SECOND AND THIRD SURGICAL OPINION BENEFIT
   G. ANESTHESIA BENEFIT
   H. ATTENDING PHYSICIAN BENEFIT
   I. PRIVATE-DUTY NURSING SERVICES BENEFIT
   J. RADIATION THERAPY BENEFIT
   K. CHEMOTHERAPY BENEFIT
   L. EXPERIMENTAL TREATMENT FOR CANCER BENEFIT
   M. BLOOD, PLASMA, AND PLATELETS BENEFIT
   N. AMBULANCE BENEFIT.
   O. GOVERNMENT HOSPITAL BENEFIT
   P. SKIN CANCER BENEFIT
   Q. PROSTHESIS BENEFIT
   R. AMBULATORY SURGICAL CENTER BENEFIT
   S. HOSPICE CARE OR HOSPICE TEAM BENEFIT
   T. PATIENT TRANSPORTATION BENEFIT
   U. AT-HOME NURSING SERVICES BENEFIT
   V. FAMILY MEMBER LODGING AND TRANSPORTATION BENEFIT
   W. EXTENDED CARE FACILITY BENEFIT
   X. PHYSICAL THERAPY AND SPEECH THERAPY BENEFIT

PART FOUR - Extended Benefits                                       Page 6

PART FIVE - Waiver of Premium                                       Page 6

PART SIX - Disability Compensation at Option of Insured             Page 6

PART SEVEN - Termination of Coverage                                Page 6

PART EIGHT - Conversion Privilege                                   Page 6

PART NINE - How to File a Claim                                     Page 7

PART TEN - Payment of Claims                                        Page 7

PART ELEVEN - Grace Period and Reinstatement                        Page 7

PART TWELVE - Other Policy Provisions                               Page 7

APPLICATION                                            App. CEP-350-MAX-COMB

SPECIMEN

·Wherever the following terms appear in the Policy, the following definitions will apply:

**You, Your:** The Applicant named in the Application.

**We, Us:** Commonwealth National Life Insurance Company

**Insured:** You, and if the schedule states that family coverage is provided, "insured" includes your spouse if legally married and your children if the child is (a) dependent upon you for his or her support, (b) unmarried, (c) under the age of twenty-one or twenty-five if a full time student, (d) your child or your spouse's child, natural born, legally adopted, or pending legal adoption and is in placement in the residence of the Insured. A dependent child, regardless of age, will be an insured while the policy is in force if such child is incapable of self-sustaining employment because of mental or physical handicap. If a claim is denied under this policy for the stated reason that the child has attained the limiting age for dependent children, the burden is upon the policyholder to establish that the child is and has continued to be handicapped as defined above. A child born to the insured or any covered family member while this policy is in force is covered under this policy from the moment of birth for the same benefits and under the same terms and conditions applicable for children. Insured does not mean any person for whom coverage has been excluded.

**SPECIFIED DISEASE** means Cancer

**CANCER:** Cancer is defined as a disease manifested by the presence of a malignant tumor characterized by the uncontrolled growth and spread of malignant cells, the invasion of tissue, leukemia, or Hodgkin's Disease. Cancer is further defined for the purposes of this policy to include cancer in situ, that is in the natural or normal place; confined to the site of origin without having invaded neighboring tissue. Premalignant conditions or conditions with the malignant potential are not to be construed as cancer in interpreting this policy.

Such cancer must be positively diagnosed by a legally licensed doctor of medicine certified by the American Board of Pathology to practice Pathologic Anatomy, or a certified Osteopathic Pathologist. Pathologic interpretation of the histology of skin lesions will be accepted from dermatologists certified by the American Board of Dermatopathology. Diagnosis must be based on a microscopic examination of fixed tissue, or preparations from the hemic system (either during life or post-mortem). The pathologist establishing the diagnosis shall base his judgement solely on the criteria of malignancy as accepted by the American Board of Pathology or the Osteopathic Board of Pathology after a study of the histocytologic architecture or pattern of the suspect tumor, tissue, or specimen. Clinical diagnosis of cancer shall be accepted as evidence that cancer exists in an insured when a pathological diagnosis cannot be made, provided such medical evidence substantially documents the diagnosis of cancer and the insured receives treatment for cancer.

**HOSPITAL:** An institution which meets all of the following requirements: (1) is licensed as a hospital and operates pursuant to law; (2) provides 24-hour nursing service; and (3) provides medical, diagnostic and surgical services on an inpatient basis. The surgical services may be provided on hospital premises or in facilities available to the hospital on a prearranged, contractual basis.

Hospital does not include: (a) convalescent, rest or nursing homes; (b) homes for the aged; (c) facilities for the care and treatment of drug addicts or alcoholics; or (d) hotel units, residential annexes or nurse administered units in or associated with a hospital.

**PHYSICIAN:** A practitioner of the healing arts licensed by the state and practicing within the scope of his license. "Physician" does not include you or a member of your immediate family.

You have the right to select your own physician or surgeon and the physician-patient relationship shall be maintained.

**NURSE:** A graduate Registered Nurse (R.N.); a Licensed Practical Nurse (L.P.N.); or a Licensed Vocational Nurse (L.V.N.); other than you or a member of your immediate family.

**EXTENDED CARE FACILITY:** A licensed nursing facility which provides continuous skilled nursing service under the supervision of a graduate Registered Nurse (R.N.).

**PART TWO–PAYMENT OF BENEFITS PROVISION**

We will pay the benefits set forth herein for the diagnosis and medically necessary care and treatment of a Cancer when: (1) the Cancer is first diagnosed on or after the Effective Date and while this policy is in force as to the Insured; (2) hospital confinement due to the Cancer begins while the policy is in force as to such person; and (3) such person has not had the Cancer diagnosed or received treatment for the Cancer before the Effective Date.

Benefits will begin of the first day of hospital confinement during which diagnosis is made or 10 days prior to such diagnosis, whichever is earlier. If the diagnosis of a Cancer cannot be confirmed until after the Insured's death, we will pay benefits beginning with the terminal admission to the hospital, up to 45 days.

CEP-350-MAX-COMB                                                                    PAGE 2

CU 0003MC

. Hospital Confinement Benefit. Pays room benefit as stated in the attached Policy Schedule for first 70 days per confinement. Extended benefits are payable beginning the 71st day of confinement.

.Drugs and Medicine Benefit. We will pay the actual charges made by the hospital for drugs and medicine while an insured is confined, up to a maximum of $250.00 per confinement. Our Maximum payment during any one calendar year shall not exceed $500.00.

. Inpatient Laboratory, Diagnostic and Biopsy Benefit. While an Insured is confined to a hospital, we will pay the following: (a) actual charges for laboratory and diagnostic tests (excluding blood tests covered under Item L. in this section) not to exceed $250.00 per confinement or $500.00 per calendar year; and (b) the actual fee for a surgical biopsy not to exceed the amount provided by the surgical schedule or $250.00. If a biopsy is performed with another surgical procedure through the same incision, we will only pay for the procedure having the highest benefit as determined by this provision and Item D. Surgical Benefit.

. Outpatient Laboratory, Diagnostic and Biopsy Benefit. If a Cancer is positively diagnosed, we will pay the actual charges for: (a) the diagnostic test (other than biopsies) used to establish the diagnosis, not to exceed $500.00; (b) a surgical biopsy, not to exceed 150% of the surgical fee shown in the Surgical Schedule; and (c) anesthesia services not to exceed 25% of the fee payable under (b) above. Positive diagnosis must be made no later than 90 days after the date a test is performed.

. Surgical Benefit. When a surgical operation (other than a biopsy) is performed, we will pay the fee for such operation, including postoperative attendance, in an amount not to exceed that shown in the Surgical Schedule. If an operation other than those listed is performed for the treatment of a Cancer, we will pay the actual fee, not to exceed an amount equal to: the unit value for the operation (as set forth in the 1964 California Relative Value Schedule) multiplied by a factor of $18.00. Two or more surgical procedures performed through the same incision will be considered as one operation. The amount payable for one operation shall not exceed $2,700.00.

. Second and Third Surgical Opinions Benefit. When surgery has been recommended following the positive diagnosis of Cancer; we will pay the actual charges for opinion of a second physician. If the second opinion contradicts the first physician's opinion, we will pay for a third opinion. An insured is not required to obtain a second opinion in order to receive benefits under this policy. Second or third opinions must be received before surgery is performed and must be given by a physician who is not associated with the surgeon. This benefit is not payable for skin cancer treatment.

## SURGICAL SCHEDULE

| SKIN | Maximum Amount | DIGESTIVE SYSTEM | Maximum Amount |
|---|---|---|---|
| xcision of lesion from trunk, up to 1 inch | $180.00 | Excision of liver, partial | $1,260.00 |
| xcision of lesion from face, up to ½ inch | 270.00 | Excision of pancreas, partial | 1,260.00 |
| .adical excision of breast, | | Laparotomy (inoperative tumor) | 720.00 |
| including axillary lymph nodes, unilateral | 1,260.00 | GENITO-URINARY SYSTEMS | |
| AMPUTATIONS | | Excision of kidney and ureter | 1,440.00 |
| .rm at shoulder joint | 1,350.00 | Resection of kidney | 1,800.00 |
| orearm | 720.00 | Excision of bladder, partial | 1,260.00 |
| inger or thumb | 270.00 | Radical excision of bladder with | |
| eg at hip joint | 1,440.00 | ureteral transplants | 2,160.00 |
| ower Leg | 900.00 | Partial amputation of penis | 720.00 |
| One toe | 180.00 | Simple excision of testis | 360.00 |
| More than one toe | 270.00 | Radical excision of prostate | 1,800.00 |
| RESPIRATORY SYSTEM | | Radical excision of vulva, including | |
| xcision of larynx with neck dissection | 2,520.00 | bilateral lymph nodes | 2,700.00 |
| xcision of complete lung | 1,800.00 | Excision of uterus, tubes and ovaries | 1,080.00 |
| xcision of lung lobe | 1,800.00 | Radical hysterectomy, including | |
| | | lymph nodes | 1,800.00 |
| DIGESTIVE SYSTEM | | | |
| /ermilionectomy (lip peel) | 720.00 | NERVOUS SYSTEM | |
| Resection of tongue | 720.00 | Craniotomy for excision of | |
| Resection of esophagus | 2,160.00 | brain tumor | 2,250.00 |
| xcision of stomach | 1,440.00 | Sub-occipital craniectomy for | |
| Resection of small intestine | 1,260.00 | brain tumor | 2,700.00 |

Resection of colon, including colostomy     1,800.00     spinal cord     1,800.00
Complete excision of rectum     1,800.00     Interruption of roots of spinal nerves     1,350.00
MISCELLANEOUS
Excision of intracardiac tumor     2,700.00
Excision of thyroid gland with
radical neck dissection     1,800.00
Enucleation of eyeball     720.00

**G. Anesthesia Benefit.** When a surgical operation (other than a biopsy) is performed, we will pay the actual charges of an anesthesiologist not to exceed an amount equal to 25% of the fee payable for the operation under the Surgical Benefit, Item E., above. For Skin Cancer operations, the maximum anesthesia benefit we will pay is $80.00.

**H. Attending Physician Benefit.** If visits by licensed physicians, other than the surgeon who performed surgery, are required during hospital confinement, we will pay the actual charges for such visits, not to exceed: (a) $30.00 per visit; or (b) one visit per day of hospital confinement. A "visit" shall mean personal attendance by the physician.

**I. Private-Duty Nursing Services Benefit.** If the full-time services of private-duty nurses are required for an Insured during a hospital confinement, we will pay the actual charges for such services up to $100.00 per day. Such nursing services must be ordered by the attending physician.

**J. Radiation Therapy Benefit.** We will pay the actual charges for radiation for the purpose of modification or destruction of abnormal tissue. We will also pay actual charges up to $150.00 per calendar year for physical examinations, checkups, consultations and treatment planning, diagnostic x-ray or other laboratory tests related to the radiation therapy.

**K. Chemotherapy Benefit.** We will pay the actual charges for: chemical substances, including chemicals used in immunotherapy and hormonal therapy, and their administration for the purpose of modification or destruction of abnormal tissue. Such drugs and chemical substances must be approved by the United States Food and Drug Administration and administered by or under the direct supervision of a physician. This benefit is not payable for physical examinations, checkups, treatment planning, diagnostic x-ray or other laboratory tests related to the therapy.

**L. Experimental Treatment for Cancer Benefit.** If an Insured undergoes treatment in an experimental cancer treatment program, we will pay the actual charges made to you for all hospital, medical and surgical care rendered to such person in connection with the treatment, not to exceed $4,000.00 for all such treatment during a calendar year. The treatment must be authorized by the Insured's physician and must be received in a hospital in the United States or one of its territories. This policy defines experimental treatment to be: (a) Drugs or chemical substances approved by the United States Food and Drug Administration for experimental use in treatment of human cancer; and (b) surgery or therapy endorsed by either the National Cancer Institute or the American Cancer Society for experimental studies. Included in such definitions are:
**1.** Chemotherapy or immunotherapy using experimental drugs or chemicals;
**2.** Hyperthermia;
**3.** Treatment with Interferon; and
**4.** Atomic Particle Therapy.
    Payment of this benefit for a covered expense is in lieu of payment of any other benefit provided by this policy for the same covered expense.

**M. Blood, Plasma and Platelets Benefit.** We will pay the actual charges made to you for blood, plasma and platelets for: (a) crossmatching; (b) transfusions; (c) processing and procurement; and (d) administration or treatment. There is no lifetime maximum for this benefit. We will not pay for blood, plasma or platelets replaced by donors.

**N. Ambulance Benefit.** If an Insured requires ambulance service for a hospital confinement, we will pay: the actual charges of licensed or professional ambulance company for ground transportation to and from the hospital per confinement. For necessary air ambulance services, we will pay the actual charges for one trip to the hospital per confinement.

**O. Government Hospital Benefit.** If an Insured is confined in a hospital operated by or for the United States Government, including the Veteran's Administration, we will pay room benefits as stated in the Policy Schedule which is attached to this Policy. Room Benefits will be paid for the number of days the insured is confined and eligible for this benefit. This benefit is for cancer only. A "day" of hospital confinement must include an overnight stay to be eligible for these benefits.

CEP-350-MAX-COMB                                                                                    PAGE 4

If an insured requires outpatient Chemotherapy or Radiation Therapy at a government hospital, we will pay $75.00 for each day on which such therapy is received.

The benefits provided under this section for confinement or treatment in a government hospital are in lieu of any other benefits under this policy.

**P. Skin Cancer Benefit.** If skin cancer is diagnosed by a physician other than a legally qualified pathologist, we will pay the actual charges for the removal of skin cancer, not to exceed $150.00 per skin cancer, up to $300.00 per calendar year. If such diagnosis is made by a pathologist, benefits shall be payable as indicated in the other benefit provisions of this policy.

**Q. Prosthesis Benefit.** If an Insured requires a Prosthetic Device due to a Cancer first diagnosed while this policy is in force, we will pay the actual charge for the prosthesis and its surgical implantation when required, up to $1,000.00 per prosthetic device.

**R. Ambulatory Surgical Center Benefit.** We will pay the actual charges for surgery performed at an Ambulatory Surgical Center or at a hospital's outpatient department for: (a) surgery and postoperative care, not to exceed 150% of the surgical fee for the operation as determined by the Surgical Benefit, item E of this section; (b) anesthesia services not to exceed 25% of the surgical benefit under this provision; and (c) drugs, medicines, and laboratory tests (not payable under Item M. in this section), not to exceed $375.00 per operation. Such expenses must be directly related to the surgery and incurred not more than 15 days before or after the surgery. We will also pay up to $45.00 for one visit by the attending physician on the day surgery is performed (when such physician is not the surgeon who performed the operation).

**S. Hospice Care or Hospice Team Benefit.** We will pay the actual charges for Hospice Care not to exceed: $40.00 per day of confinement in a Hospice Center; or $40.00 per visit at the Insured's home by a Hospice Team limited to one visit per day. Our payments will be based on the following conditions being met: (a) the Insured is terminally ill with a prognosis for life of 6 months or less; and (b) we have received certification of such prognosis by the attending physician. This benefit is limited to $4,000.00 per calendar year and is not payable while an Insured is confined to a hospital.

**T. Patient Transportation Benefit.** If special treatment is prescribed and cannot be obtained locally, we will pay the actual charge for round-trip coach fare for an Insured on a common carrier to the nearest hospital in the United States where such treatment is available. If the person requiring such treatment is an insured dependent child, we will also pay the actual charge for one round-trip coach fare for either you or your spouse to accompany the child. If common carrier service is not available we will pay a $.35 per mile allowance. Mileage will be based upon the distance from the city of residence to the city where the hospital is located. This benefit is not payable for: visits to the person requiring treatment; or doctor or clinic visits when hospital confinement in not required. "Locally" means within a 40-mile radius of the center of the city where you live.

**U. At-Home Nursing Services Benefit.** If the full-time services of private-duty nurses are required while an insured is confined at home, we will pay the actual charges for such services up to $100.00 per day. The services must be ordered by the attending physician and must begin within three days after a hospital confinement as covered under the Hospital Confinement Benefit, Item A. The number of days this benefit is payable shall not exceed the number of days the Hospital Confinement Benefit is payable.

**V. Family Member Lodging and Transportation Benefit.** If one adult member of an Insured's immediate family requires lodging while such insured is confined to a hospital, we will pay the acutal charge made by a hotel or motel, up to $40.00 per day not to exceed $2,400.00 per confinement. This benefit is payable when treatment cannot be obtained within a 40-mile radius of the Insured's city of residence. The benefit is limited to a maximum of 60 days for each period of hospital confinement. We will also pay the actual charge for one round trip coach fare for the family member to the city in which the Insured is hospital confined. This benefit will be provided once for each hospital confinement, but it is not provided for a fare covered under Item T, Patient Transportation Benefit.

**W. Extended Care Facility Benefit.** We will pay the actual charge up to $40.00 per day while an Insured is confined in an Extended Care Facility. Such confinement must begin within fourteen days after hospital confinement covered under the Hospital Confinement Benefit, Item A. The number of days this benefit is payable per hospital confinement shall not exceed the number of days the Hospital Confinement Benefit is payable for the same hospital confinement.

**X. Physical Therapy and Speech Therapy Benefit.** We will pay the actual charges not to exceed $25.00 per therapy session, up to $400.00 per calendar year for: (a) the services of a Registered Physical Therapist; or (b) the services of a Speech Pathologist/Therapist.

**PART FOUR - EXTENDED BENEFITS**

When a hospital confinement for the treatment of a Cancer continues for more than 70 consecutive days, we will pay the actual charges for room and board and other hospital services, beginning on the 71st day until the Insured is discharged from the hospital.

"Extended Benefits" are payable in lieu of all other applicable benefits for hospital services and supplies. There is no lifetime maximum benefit applicable to this provision.

This benefit does not apply to confinement in a government hospital.

**PART FIVE - WAIVER OF PREMIUM**

If you become totally disabled for more than 60 days as the result of internal cancer while this policy is in force, we will waive the premiums which fall due while you are totally disabled. Your total disability must begin before the policy anniversary following your attainment of age 60. To be eligible for this benefit, you must continue paying premiums for 60 days after the commencement of your total disability. Upon approval of this benefit, waiver of premiums will begin on the premium due date next following 60 days of continuous disability. This benefit does not apply to the disability of your spouse or children insured under this Policy.

**PART SIX - DISABILITY COMPENSATION AT OPTION OF INSURED**

You may elect to receive disability compensation as set forth below in lieu of all other benefits provided by this policy. This option must be exercised before any benefits are paid under this policy. This option may be elected only when an Insured: (a) is diagnosed as having a Cancer; and (b) is covered under another health insurance policy or hospital or medical service plan which contains a provision which acts to reduce benefits on account of the coverage provided by this policy. When these conditions are met, we will pay the following benefits while such Insured is confined in a hospital for the definitive treatment of a Cancer.

A. $1,400.00 per week, up to 52 weeks, while the Insured is confined to a Hospital;

B. $280.00 per week, up to 104 weeks, while the Insured is confined to an Extended Care Facility; and

C. $350.00 per week during the lifetime of the Insured, not to exceed 26 weeks, if the Insured is released from a Hospital or Extended Care Facility with a prognosis of terminal illness and an estimated life expectancy of 6 months or less.

All successive periods of confinement under this provision during a three year period shall be deemed one confinement. The daily benefit shall be 1/7th of the weekly benefit.

**PART SEVEN - TERMINATION OF COVERAGE**

Coverage of your insured spouse ends on the next premium due date after the date of divorce or legal separation from you.

Coverage of an insured child ends on the premium due date following: the attainment of age 21 (or age 25 if enrolled fulltime in an accredited college or university); or marriage, whichever occurs first. However, coverage may be continued for a physically or mentally handicapped child who is incapable of self-sustaining employment and is dependent on you for support. Proof of this must be received at least 31 days before such child attains age 21. We reserve the right to require additional proof of such incapacity and dependency; however, we will not require such proof more than once a year after the dependent child attains age 25.

If you die while this policy is in force, you insured spouse will be deemed to be the primary Insured. If your spouse is not an Insured on the date of your death, coverage will terminate at the end of the term for which premium has been paid. Premium accepted after coverage for an Insured has terminated will be considered premium for the persons still covered under the policy. Termination under this provision shall not affect a claim existing on the date of such termination.

**PART EIGHT - CONVERSION PRIVILEGE**

An Insured may apply for a policy of insurance (hereinafter called Conversion Policy) if coverage under this policy ends as set forth in PART SEVEN—TERMINATION OF COVERAGE. The conversion Policy will be issued without proof of good health, subject to the following conditions:

A. A written application for the Conversion Policy is sent to us no later than the date on which such person's coverage under this policy ends. The effective date of the Conversion Policy shall be the date such person's coverage ends. The premium for the Conversion Policy will be the premium payable on the Effective Date for the form and amount of coverage provided.

B. The Conversion Policy will be a form in use by us. It will provide coverage as provided under this policy.

C. The same limitations under this policy, if any, for such person will also apply under the Conversion Policy. We will not pay benefits under the Conversion Policy for expenses covered while this policy is in force.

CEP-350-MAX-COMB                                                                                      PAGE 6

## PART NINE - HOW TO FILE A CLAIM

**Notice of Claim:** Written notice must be given within 90 days after a covered loss starts, or as soon as reasonably possible. Send this notice to us at our Home Office, Cleveland, MS. Include your name and policy number.

**Claim Forms:** After we receive notice of claim, we will send you claim forms within 15 days. If we do not, you will meet the proof of loss requirements by giving us a written statement of the nature and extent of the loss within the time stated in the Proofs of Loss provision.

**Proofs of Loss:** For any covered loss, proof must be sent to us within 90 days. If it was not reasonably possible to give the proof within 90 days, your claim is not affected if the proof is sent as soon as possible. In any event, unless you are legally incapable of furnishing proof and have no one to furnish proof for you, proof of your loss must be furnished within one year from the date it is otherwise due.

## PART TEN - PAYMENT OF CLAIMS

**Time of Payment of Claims:** Benefits for any loss covered by this policy will be paid as soon as we receive proper written proof.

**Payment of Claims:** All benefits will be paid to you. Any benefits left unpaid at your death will be paid to your estate.
**Physical Examinations:** At our expense, we will have the right to have an Insured examined as often as is reasonably necessary while a claim is pending.
**Legal Actions:** No legal action may be brought to recover on this policy within 60 days after written proof of loss has been given as required by this policy. No such action may be brought after 6 years from the time written proof of loss is required.

## PART ELEVEN - GRACE PERIOD AND REINSTATEMENT

**Grace Period:** This policy has a 31 day grace period. This means that you can pay your Premium during the 31 days following the date it is due. During this time your policy stays in force.
**Reinstatement:** If you do not pay your premium before the end of the grace period, your policy will lapse. Later acceptance of the premium by us without requiring an application for reinstatement will reinstate your policy.
  We may require an application. If we do, you will be given a conditional receipt for the premium. If the application is approved, your policy will go back in force as of our approval date. Lacking such approval, your policy will be reinstated on the 45th day after the conditional receipt date, unless we have written you of our disapproval.
  The reinstated policy will cover only loss from sickness that starts 10 days after such date. Except for any new provisions added because of reinstatement, both your rights and ours will be the same as before the policy lapsed.

## PART TWELVE - OTHER POLICY PROVISIONS

**Entire Contract; Changes:** This policy, the Application, and the attachments, if any, is the entire contract between you and us. No agent may change it in any way. Only one of our officers can approve a change. Any such change must be shown in your policy.
**Time Limit on Certain Defenses:** (a) Except for fraudulent misstatements, no misstatements made in the application will be used to void coverage or deny a claim for loss that starts two years after an Insured's Effective Date. The wording as used above "except fraudulent misstatements" shall not apply in Georgia or North Carolina. (b) No loss that starts two years after the Effective Date of an Insured's coverage will be reduced or denied because a disease or a physical condition not excluded by name or specific description on or before the date of loss had existed prior to the Effective Date.
**Conformity with State Statutes:** Any provision of this policy, which on its Effective Date is in conflict with the laws of the state in which you live on that date, is amended to conform to the minimum requirements of such laws.
**Other Insurance with Us:** You may have only one like policy form at a time. If we issue more than one to you, only one policy chosen by you or your estate, as the case may be, will stay in force. We will send back your money for any others which were in effect at the same time as the policy you choose.

## LIMITATIONS AND EXCLUSIONS

  A. We will not pay for any losses due to cancer diagnosed prior to the policy date.
  B. We will not pay for any loss except for losses due directly from cancer. Positive diagnosis must be submitted to support each claim.
  C. We will not pay for any disease or incapacity that has been: caused; complicated; worsened; or, affected by cancer or as a result of cancer.

CEP-350-MAX-COMB                                                                                          PAGE 7

# COMMONWEALTH NATIONAL LIFE INSURANCE COMPANY

113 South Davis Avenue
CLEVELAND, MISSISSIPPI
(Old Line Legal Reserve Company)

## Cancer Screening Benefit Rider

Form CSB–91

**NOTICE:**
This rider is made part of the policy to which it is attached. It takes effect on the Effective Date shown in the Application. It is issued in consideration of the statements made in the Application and the payment, in advance, of the first premium shown in the Application. It is subject to the definitions, provisions, exceptions and limitations of the policy which are not inconsistent with the provisions of this Rider.

**DEFINITIONS:**
**YOU, YOUR:** The Applicant named in the Application.
**WE, US, OUR:** Commonwealth National Life Insurance Company
**INSURED:** An Insured, as defined in the Policy to which this Rider is attached.
**CANCER:** Cancer as defined in the Policy to which this Rider is attached. "Cancer" as used herein does not include Skin Cancer.

**BENEFITS:** Cancer Screening Test(s): We will pay the amount charged up to a maximum of $50.00 per calendar year for each insured person who has one of the following cancer screening tests performed:

    (A) Mammography;
    (B) Flexible sigmoidoscopy;
    (C) Pap Smear (test only);
    (D) Chest X-ray;
    (E) Hemocult stool specimen

This rider contains no lifetime maximum for benefits.

**RIDER TERMINATION DATE:** This Rider will automatically terminate upon the termination date of the Policy to which it is attached.

In all other respects, the policy stays the same.

This Rider is signed for us by our President and Secretary.

Paul D. Gladden
Secretary

John S. Camara
President

Form CSB–91

CU 0009MC

# COMMONWEALTH NATIONAL LIFE INSURANCE COMPANY
## Cleveland, Mississippi

*(Herein called "we", "our" or "us")*

### PERSISTENCY BONUS AND WITHDRAWAL BENEFIT RIDER
*(A Part Of The Policy To Which It Is Attached)*

### RIDER SCHEDULE

| | | |
|---|---|---|
| Effective Date | Policy # | Renewal Date |
| Rider Premium: $ | per ~~SCHEDULE~~ | Term |

This rider is issued in consideration of the: (1) payment of the premium set forth in the Rider Schedule; and (2) statements contained in the application for this rider. A copy of the application is attached to the policy. Renewal of this rider for further consecutive terms may be made by payment of the rider premium in accordance with the premium payment and renewal provisions of the policy. This rider cannot be renewed unless the policy is also renewed.

### DEFINITIONS

As used in this rider:

"on an annual basis" means that the premiums paid for the policy and this rider used to compute the Persistency Bonus and Withdrawal Benefit are the annual premium amounts. Additional premium charges made for payments on other than an annual basis will not be included in the Persistency Bonus or Withdrawal Benefit. In computing the amount of Persistency Bonus and Withdrawal Benefit, the term "premium" shall mean only those premiums paid for the base policy and this rider.

The term "claim" shall mean only those claims paid under the base policy. If there are any other riders or attachments to the policy, the premiums paid and claims made pursuant to such rider and attachments shall have no effect and shall be excluded in determining the amount of benefit.

Any premium waived under the policy shall be deemed both a premium paid and a claim paid under this rider.

### PERSISTENCY BONUS AND WITHDRAWAL BENEFITS

This provision applies to the person named as the insured on the effective date of the policy and includes the premiums and claims paid on all persons insured under the policy while this rider is in force. After the policy has been continuously in force on the life of such person for twenty (20) years, we will pay a one time Persistency Bonus Benefit. The value of the benefit will be 100% of the premiums paid on an annual basis less any claims paid. We will pay a Withdrawal Benefit: (a) if the named insured surrenders this policy after the sixth policy year but before the end of the 20th policy year; or (b) when we receive due proof that the named insured died prior to the payment of the Persistency Bonus Benefit; whichever is first to occur. The Withdrawal Benefit will be an amount equal to the Cash Value as of the date of surrender or death, less any claims paid. The Cash Value accumulation to the end of each policy year, without regard to any claim payments, is shown in the Persistency Bonus and Withdrawal Cash Value Table below. The values set forth in the Table assume that premiums have been paid for the full policy year and will be adjusted for any partial year payment. Any payment of the Withdrawal Benefit or the Persistency Bonus Benefit terminates this rider. This rider will also terminate when the amount of claims paid under the policy exceeds the value of the premiums paid and due over the 20 year period for which this rider was issued. The premium for this rider shall be discontinued on the date this rider terminates for any reason.

### CASH VALUES

The Cash Value shown in the Table below (at the end of any policy year) is determined on a five year preliminary term basis with an interest only accumulation at the rate of 5% a year compounded annually.

*(Continued on Reverse Side)*

(Continued from Reverse Side)

## RESERVES

Reserves are computed on the basis of the 1958 CSO Mortality Table with 4½% interest using 2-year full preliminary term.

## PERSISTENCY BONUS AND WITHDRAWAL CASH VALUE TABLES

This Table is based on each $1.00 of premium, on an annual basis. The values are applicable only at the ends of the policy years shown. During any policy year the amount of Cash Value will be calculated with due allowance for interest at 5% and payment of any fractional premiums. The amount of the Cash Value derived from the following Table will be reduced by the amount of any claims paid prior to the date of an event which results in any payment under this provision.

| Policy Year End | Cash Value | Policy Year End | Cash Value |
|---|---|---|---|
| 1 | $ 0 | 11 | $ 6.31 |
| 2 | 0 | 12 | 7.55 |
| 3 | 0 | 13 | 8.86 |
| 4 | 0 | 14 | 10.22 |
| 5 | 0 | 15 | 11.66 |
| 6 | .93 | 16 | 13.17 |
| 7 | 1.91 | 17 | 14.76 |
| 8 | 2.93 | 18 | 16.42 |
| 9 | 4.00 | 19 | 18.17 |
| 10 | 5.13 | 20 | 20.00 |

The provisions of the policy are applicable to this rider unless otherwise provided herein. Signed for us on the Effective Date of this rider.

Commonwealth National Life Insurance Company

J. S. Camara
President