# EXHIBIT

# "9"

EXHIBIT "9"

# DIXIE NATIONAL LIFE
## INSURANCE COMPANY

*An Old Line Legal Reserve Stock Company*

Post Office Box 22587
Jackson, Mississippi 39225-2587
Policy Relations 601-982-8210

### THIS IS A LEGAL CONTRACT - READ IT CAREFULLY

Dixie National Life Insurance Company promises to pay the identified benefits in the event an insured suffers a covered loss because of cancer provided the cancer is first diagnosed or first treated more than 30 days after the policy date and while the policy is in force. After the policy has been in force for 2 years, we will pay the benefits under this policy regardless of when the cancer was first diagnosed or treated.

### PLEASE EXAMINE THE APPLICATION

We issued this policy based on the answers in the application (a copy is included). If all answers are not complete and true, or if any medical history has been omitted, the policy may be affected, subject to the Time Limit on Certain Defenses and Legal Process. Write to us within ten days if the application is incorrect or incomplete.

### RIGHT TO RETURN THE POLICY WITHIN TEN DAYS

You must be satisfied. Within ten days from the date of delivery you may return this policy to us or the agent from whom you purchased it. If you do so, we will within ten days return all premium paid.

### GUARANTEED RENEWAL RIGHT

You have the right to continue this policy during your lifetime by timely payment of the required premium. We may change the premium rate only if such change is for all policies of this form number and type in force in the state in which you reside. In the event we change the premium rate, we will notify you in writing at your last known address of such change at least thirty-one days before the premium due date on which the change is to become effective.

THIS IS A LIMITED POLICY
READ IT CAREFULLY

Executed for the Company at its home office in Jackson, Mississippi, on this issue date.

Jerry M. Greer, Secretary

Robert B. Neal, President

CANCER TREATMENT BENEFIT POLICY
GUARANTEED RENEWABLE-SUBJECT TO COMPANY'S
RIGHT TO CHANGE PREMIUM
NONPARTICIPATING
THIS IS A SPECIFIED DISEASE POLICY WHICH ONLY PROVIDES
BENEFITS FOR A LOSS DUE TO CANCER

This policy provides identified benefits in the event an insured suffers a covered loss because of cancer provided the cancer is first diagnosed or first treated more than 30 days after the policy date and while this policy is in force. After the policy has been in force for 2 years, we will pay the benefits under this policy regardless of when the cancer was first diagnosed or first treated.

The schedule states if family coverage is provided.

This policy may be renewed during the lifetime of the named insured identified in the Schedule. After the death of the named insured, his or her spouse may continue the policy in force at an applicable premium rate.

Since the policy benefits are limited, you should read it carefully.

This is only a brief summary of the policy. The detailed provisions of the policy are set forth in the following sections:

Schedule....................................Page 3
Definitions...................................Page 4
Guaranteed Renewal Right......................Page 1
Cancer Treatment Benefits.....................Page 5
Part I Basic Benefit..........................Page 5-8
Part II Unlimited Extended Benefit............Page 8
Part III Optional Cancer Disability Compensation...........................Page 8-9
Required Premium..............................Page 9
Making a Claim for Benefits...................Page 9-10
Conversion Right..............................Page 10-11
Other Terms of Your Policy....................Page 11-12
Application...................................Page Insert

Case 1:07-cv-00016 Document 69-5 Filed 07/12/07 Page 4 of 19 PageID #: 1324

POLICY SCHEDULE

Policy # 02KC598860
National Foundation Life

INSURED: MARTHA J. WARD AND FAMILY
POLICY NUMBER: CC [illegible]
POLICY DATE: 03/2[illegible]/9[illegible]

| | | ANNUAL PREMIUM |
|---|---|---|
| CANCER TREATMENT BENEFIT POLICY - CP-1004-SC | GUARANTEED RENEWABLE - SUBJECT TO COMPANY'S RIGHT TO CHANGE PREMIUM. | |
| ABP-RP-AH-1 | BASIC BENEFITS - EXTENDED BENEFITS - | $143.40 |
| | RETURN OF PREMIUM RIDER | $71.70 |
| | TOTAL ANNUAL PREMIUM | 215.10 |

SEMI-ANNUAL
$111.85

PAYROLL
$17.93

ENDORSEMENT

THIS ENDORSEMENT IS ATTACHED TO AND FORMS A PART OF THE POLICY TO WHICH IT IS ATTACHED. THIS POLICY IS HEREBY ENDORSED TO SHOW THAT THE 30 DAY WAITING PERIOD IS WAIVED.

MARTHA J. WARD
3213 OAKDALE RD
WEST COLUMBIA, SC
29169

Harpootlian 0984

DEFINITIONS

When these words are used in this policy, they have the meaning stated:

"you"

The named insured identified in the schedule.

"we (our, us)"

Our Company, Dixie National Life Insurance Company.

Harpootlian 0985

"insured"

You, and if the schedule states that family coverage is provided, "insured" includes your spouse if legally married and your children if the child is (a) dependent upon you for his or her support, (b) unmarried, (c) under the age of twenty-one or twenty-five if a full time student, (d) your child or your spouse's child, natural born, legally adopted, or pending legal adoption and in your custody. A dependent child, regardless of age, will be an insured while the policy is in force if such child is incapable of self-sustaining employment because of mental or physical handicap. You must furnish proof of such incapacity at least thirty-one days prior to the date coverage would otherwise terminate. We may request proof of continued incapacity, but not more frequently than annually.

"schedule"

The page of the policy which identifies specific information about the policy and the benefits.

"policy date"

The date we issued this policy and it became effective.

"cancer"

A disease manifested by the presence of a malignant tumor, characterized by the uncontrolled growth and spread of malignant cells, the invasion of tissue or leukemia. Cancer must be positively diagnosed by a physician upon the basis of a microscopic examination of fixed tissue or preparations from the hemic system (either during life or post-mortem). Clinical diagnosis is also acceptable.

"extended care facility"

A licensed nursing facility under the supervision of a Physician or a Registered Nurse which provides 24 hour skilled nursing service and maintains daily medical records on each patient. It does not include facilities which are primarily for the care and treatment of: The aged, drug addicts, or alcoholics.

"hospice"

A facility which provides short periods of confinement for terminally ill patients. It must operate a program of hospice care which meets the standards set for the National Hospice Organization. It must also be directed by a physician, supervised by a nurse and licensed or certified by the state in which it is located.

"hospital"

A legally operated institution for the care and treatment of sick and injured persons which is primarily engaged in providing, either on its premises or in facilities available to it on a prearranged contractual basis, medical, diagnostic, surgical and twenty-four hour nursing service. An institution is not a hospital if it is principally a rest home, nursing home, custodial care facility, extended care facility, convalescent home, home for the aged, or is principally an institution for the care and treatment of alcoholics and drug addicts. It shall not include any facilities that are separate, identifiable and/or apart from rooms, beds, units, sections or wards used customarily for patient confinement. Examples of such facilities that are not included in the word "Hospital" are facilities termed "swing bed", "intermediate care", or "step down".

"physician"

A person (other than the insured or a person related to him or her) who is licensed to practice the healing arts, and who is providing medical advice and treatment within the scope of such license.

"monthly-automatic premium"

A method of paying required premiums for each month automatically, for example, by bank draft or salary deduction.

"pre-existing condition"

Any condition not revealed in the application for which medical advice or treatment was recommended or received by or from a physician within 5 years prior to the policy date. This condition is one that would cause an ordinarily prudent person to seek diagnosis, care or treatment.

CANCER TREATMENT BENEFITS

If an insured become[illegible] first diagnosed or first treat[illegible] for cancer more than 30 days after the policy date of this policy while this policy is in force, we will pay the benefits provided herein. Benefits will be paid for the treatment of cancer beginning on the first day of hospital confinement during which diagnosis is made; provided that in the event diagnosis is not made on or before the first day of hospital confinement, benefits will be paid for no more than ten days of hospital confinement prior to diagnosis of cancer.

This policy does not provide a benefit for any loss or expense resulting from any other disease, sickness, side effect or incapacity other than cancer or any treatment thereof as specifically defined herein.

PART I - BASIC BENEFIT

We will pay benefits for cancer treatment according to the following schedule of benefits:

(A) Hospital Confinement Benefit. No Lifetime Maximum Benefit.

We will pay $250.00 per day for each day of hospital confinement for each period of hospital confinement up to sixty days. If less than thirty days separates two periods of hospital confinement, for purposes of determining the hospital confinement benefit, the second period of hospital confinement shall be considered to be a continuation of prior confinement. After sixty days of continuous confinement, benefits will be as payable under the Extended Benefits section.

(B) Surgical Benefits. No Lifetime Limit on Number of Surgeries Performed.

When a surgical operation is performed on an insured for a condition which is diagnosed as cancer, we will pay the actual fee for such surgical operation, including post-operative attendance, but not exceeding the amount stated in the Schedule of Operations. If an operation is performed which is not scheduled, we will pay a benefit equal to a comparable fee for such operation. Such comparable fee shall not exceed the lesser of the actual charge or a benefit amount determined by use of the 1974 Revision of the 1969 California Relative Value Studies (Fifth Edition, Revised) with a conversion factor of $50.00 rounded to the nearest dollar. The maximum surgical benefit we will pay is $3,000.00 per operation.

Where two or more surgical procedures are performed through the same incision, the procedure providing the highest surgical benefit will be the basis for the benefit payment.

SCHEDULE OF OPERATIONS
Maximum Amount

| Procedure Description | Surgery Amount |
|---|---|
| Mastectomy, radical, including breast pectoral muscles and axillary lymph nodes, unilateral | $ 900.00 |
| Shoulder and arm amputation | 1500.00 |
| Laryngectomy, total, with radical neck dissection | 1800.00 |
| Lung lobectomy | 1163.00 |
| Retroperitoneal lymphadenectomy, including pelvic aortic and renal nodes | 1388.00 |
| Tongue removal with radical neck dissection | 1238.00 |
| Removal of parotid tumor with radical cervical lymphadenectomy | 1313.00 |
| Resection of esophagus | 1425.00 |
| Total gastrectomy with transplant | 1500.00 |
| Total colectomy with ileostomy or ileoproctostomy and proctectomy | 1650.00 |
| Hepatectomy (resection of liver) partial lobectomy | 938.00 |
| Pancreatectomy (Whipple type) | 1650.00 |
| Cystectomy (bladder removal) with bilateral pelvic lymphadenectomy | 1800.00 |
| Total hysterectomy with radical lymphadenectomy (Wertheim type) | 1500.00 |
| Brain Tumor (excision infratentorial or posterior fossa) | 1800.00 |
| Excision intracardiac tumor with ByPass | 3000.00 |
| Excision of lesion of skin | 150.00 |

**(C) Anesthesia Benefit. N[illegible] Limit on Number of Surgeries [illegible]rmed.**

We will pay the a[illegible] fee for either the professional charge of an anesthesiologist not employed by the hospital or charges made by the hospital where anesthesia is administered by an anesthetist employed by the hospital. The benefit payable shall not exceed an amount equal to twenty-five percent of the surgical benefit we paid.

**(D) Drugs and Medicine Benefit**

We will pay the actual charges made for drugs and medicines administered to an insured while confined to the hospital. The benefit payable shall not exceed $30.00 per day for each day you are eligible for the Hospital Confinement Benefit payable under Item (A) above.

**(E) Special Nursing Benefit While Hospitalized.**

If an insured is confined to the hospital and requires the services of full-time, private nurses other than that regularly furnished by the hospital, we will pay the actual charges for such nurses, but not to exceed $100.00 per day. The nursing service must be performed by registered graduate nurses, registered licensed practical nurses or licensed vocational nurses not related to the insured. The nursing service must be required and authorized by the insured's physician.

**(F) X-ray Therapy, Radium Therapy, Radiation Therapy and Chemotherapy Benefit. No Lifetime Maximum Benefit.**

We will pay the actual charges for teleradiotherapy, using either natural or artificially propagated radiation, when used for the purpose of modification or destruction of tissue invaded by cancer. We will also pay the actual charges made for interstitial or intercavity application of radium or radioisotopes in sealed sources. We will also pay the actual charges made for the application of radium or radioisotopic plaques or molds or the administration internally, interstitially, or intracavitarially of radium or radioisotopes in non-sealed sources for the purpose of modification or destruction of tissue invaded by cancer. We will also pay the actual charges for cancericidal chemical substances and the administration thereof for the purpose of modification or destruction of tissue invaded by cancer, to the extent such charges are not paid under the Attending Physician Benefit. We will not pay a benefit for pre-planning laboratory tests or diagnostic X-ray related to treatment for cancer.

Benefits under this paragraph will be paid for in-hospital or out-patient treatment.

**(G) Blood and Plasma Benefit. No Lifetime Maximum Benefit.**

We will pay the actual charges made for blood and blood plasma. If the blood is replaced by donors and no charge is made to the insured, the benefit payable under this provision shall be reduced by the value of the donated blood.

**(H) Attending Physician Benefit. No Lifetime Maximum Benefit.**

If an insured is confined to the hospital and requires the services of a physician, we will pay the actual charges for the physician's services, but not to exceed $30.00 per day. The physician must be other than the surgeon who performed a surgical operation for which we paid a benefit. We will not pay for more than one physician's visit each day. "Visit" means an actual call on the insured in the hospital by the physician.

**(I) Ambulance Benefit. No Lifetime Maximum Benefit.**

We will pay the actual charges made by a licensed, professional ambulance company for ground transporting an insured to or from the hospital to which the insured is admitted as a patient. We will not pay for air ambulance service.

**(J) Transportation and Lodging Benefit. No Lifetime Maximum Benefit.**

We will pay the actual charges made by a common carrier for transporting an insured by aircraft, railroad, or bus from his or her legal residence to the nearest hospital in the United States providing special treatment for cancer. This benefit will be paid only if the special treatment required is not obtainable where the insured resides and is specifically prescribed by the insured's physician. If the insured receiving the special treatment is a child, we will also pay for one round trip for you or your spouse to accompany the insured for one such special treatment not to exceed one treatment per confinement. If no public transportation is available from legal residence to the place of specialized treatment and the distance is more than 100 miles round trip, a self driving benefit of $.35 per mile will be payable.

If another person, requiring commercial lodging, accompanies an insured and the transportation benefit is paid, then we will pay $50.00 per day as a lodging benefit.

(K) Prosthesis Benefit.
We will pay the act[illegible] charges for a prosthesis s[illegible]ifically prescribed by the insured's physician. The prosthesis must be provided in connection with the actual treatment of cancer. This benefit is limited to $1,000 for each loss as follows:

1. Breast Prosthesis - Internal or external in connection with breast surgery
2. Artificial Limb Prosthesis - Non-surgical

(L) Hospice Care Benefit. Lifetime Maximum 180 Days.
We will pay this benefit if an insured receives care provided by a hospice as a result of cancer. We will pay this benefit if a doctor determined that cancer treatments are no longer of benefit to the insured and that the insured is expected to live for only six months or less. We will pay the actual charges, not to exceed $40.00 per day for each day the insured, as a result of cancer:

1. receives a visit (including the insured's home) from a representative of a hospice; or
2. uses the services of a hospital on an outpatient basis under the direction of a hospice; or
3. visits a hospice for treatment of services,

We will not pay this benefit while you are confined to a hospital, to a United States Government Hospital, or to an extended care facility.

We will not pay for hospice care as a result of cancer for more than 180 days for each person insured by the policy. The 180 days is a lifetime benefit.

(M) Parent's Dependent Child Care Benefit. No Lifetime Maximum Benefit.
In addition to the Hospital Confinement Benefit under paragraph (A), we will pay $125.00 per day if a dependent child of the insured is confined to a hospital during a period of hospital confinement. We will not pay for more than 60 days for each period of hospital confinement. If less than thirty days separates two periods of hospital confinement, for purposes of determining this benefit, the second period of hospital confinement shall be considered to be a continuation of the prior confinement.

(N) Extended Care Facility Benefit.
We will pay the actual charges not to exceed $50.00 per day when an insured is confined in an Extended Care Facility after a Period of Hospital Confinement. Confinement must begin not later than 14 days after such confinement. The maximum number of days of confinement shall not exceed the number of days in the last Period of Hospital Confinement.

(O) Outpatient Surgery Benefit.
If an Insured requires surgery at an Ambulatory Surgical Facility or at a hospital as an outpatient for the treatment of cancer, we will pay the following benefits:

(a) The actual charges for surgery and post operative care not to exceed 150% of the surgical fee for the operation as determined by Item (B) Surgical Benefits; and
(b) the actual charges not to exceed 25% of the surgical benefits under this provision for anesthesia given by or under the direction of an Anesthesiologist; or by an Anesthetist under the direction of a Physician; and
(c) the actual charges not to exceed $375 per operation for: drugs, medicines, and laboratory tests (otherwise not payable under Item G, "Blood and Plasma") performed on an outpatient basis and directly related to the surgery. Such expense must be incurred not more than 15 days before or after the surgery; and
(d) one visit by the attending Physician on the day surgery is performed (when such Physician is not the surgeon who performed the operation) not to exceed $45.00 per operation.

If the diagnosis of cancer is made at the same time surgery is performed, we will pay benefits as if diagnosis was made prior to the surgery. We will pay benefits under this provision for Skin Cancer upon which positive diagnosis has been made, removed at the Physician's office or other medical facility. If an insured is admitted to a hospital within 30 days following Outpatient Surgery other than due to complications of the surgery, or for reasons totally unrelated to the surgery, we will pay benefits as if the insured were hospital confined for the surgery and the benefits of this provision shall be null and void for the surge


Case 1:07-cv-00016 Document 69-5 Filed 07/12/07 Page 8 of 19 PageID #: 1328

(P) Home Nursing Benefit.

We will pay this benefit if an insured requires the full-time services of a nurse while confined at home. We will pay the actual charges for such services, not to exceed $100 per day. The services must be ordered by your attending physician. The services must begin within 3 days after a hospital confinement as covered under the Hospital Confinement Benefit. The number of days this benefit is payable shall not exceed the number of days the Daily Hospital Benefit was payable in the prior hospital Confinement.

(Q) Government or Charity Hospital Benefit.

We will pay the following benefits when an insured is treated in a government or charity hospital:

(a) $200 per day for each day of confinement; for the first ten (10) days; and
(b) $125 per day for each day of confinement beginning on the 11th day until the insured is released; and
(c) $75 per treatment, limited to one (1) treatment per day, for outpatient radiation or chemotherapy at such a hospital.

Confinement must be in a hospital owned or operated by the United States Government; or a hospital that does not charge for its services. Continued confinement must be primarily for the treatment of cancer. Benefits under this provision are paid in lieu of all other benefits in this policy when an insured is confined or treated in a government or charity hospital. If an insured is confined in a government hospital that requires the insured to pay for most of the services and treatments it renders, we will pay according to the other applicable benefits in this policy, in lieu of this benefit.

PART II UNLIMITED EXTENDED BENEFIT. No Lifetime Maximum.

If an insured has been confined in a hospital for an uninterrupted period of sixty days for cancer treatment, thereafter the Basic Benefit under paragraph (A) for Hospital Confinement shall cease and this Unlimited Extended Benefit shall be paid in lieu thereof. Beginning with the sixty-first day of continuous hospital confinement and continuing until the end of such continuous confinement, we will pay in full the actual charge made for hospital room and board, including intensive care. These payments shall be made in addition to any other benefits payable under this policy.

This Unlimited Extended Benefit is paid in addition to the Basic Benefit under Part I except for paragraph (A).

PART III OPTIONAL CANCER DISABILITY COMPENSATION (In Lieu of All Other Benefits)(THIS OPTIONAL BENEFIT IS NOT APPLICABLE IN SOUTH CAROLINA)

If you have been positively diagnosed with cancer and you have other health insurance, under one or more policies or service contracts in force, you may elect to receive optional disability compensation.

However, if this provision is prohibited in the state where this policy was issued, this provision shall be null and void (In addition, this policy will contain an endorsement to this effect, if required by law in the state of issue).

If this option is elected we will pay the following benefits:

(a) $1400 per week not to exceed 52 weeks while you are hospital confined for cancer; and
(b) $280 per week not to exceed 104 weeks while you are confined in an extended care facility for cancer. Admission must begin not more than 14 days after your release from a hospital; and
(c) $350 per week not to exceed 26 weeks if you are released from a hospital with a prognosis of terminal illness and an estimated life expectancy of 6 months or less.

In addition, the election of this option is subject to the following conditions:

(a) You must request to elect this option before any payments from other benefits of this policy are made for each cancer that is positively diagnosed.
(b) Once this option has been elected for cancer all future benefits payable with respect to the cancer will be paid under this provision, subject to the above maximums. Benefits paid for periods less than one week will be paid pro rata.



Case 1:07-cv-00016 Document 69-5 Filed 07/12/07 Page 9 of 19 PageID #: 1329

(c) Once elected, [illegible] enefits of this provision a[illegible] lieu of all other benefits in this policy for the cancer.

Harpootlian 0990

REQUIRED PREMIUM

Premium Payment

To keep this policy in force, you must pay the premium when it is due. The first premium is due on the policy date. The due dates of renewal premiums are determined by the mode of premium payment you have selected. If the mode is monthly-automatic, the renewal premium is due on the same day of each month as the policy date.

You may change the frequency selected for the payment of premium. Your request must be written and received by us while the policy is in force.

Premium Adjustment

We may adjust the premium for this policy effective on a due date of any premium. If we do so, we must adjust the premium for all policies of this form number and type in force in the state in which you reside. Before any premium adjustment is effective, we will mail you written notice thirty one (31) days prior to the effective date. Only the premium can be adjusted, we cannot modify the benefits provided by this policy while it continues in force.

Grace Period

You are allowed a grace period of thirty-one days after the premium due date in which to pay premium. The policy remains in force during the grace period.

Reinstatement

If this policy lapses because you did not pay the premium, it can be later reinstated on a premium paying basis.

If we require an application for reinstatement and issue a conditional receipt for the unpaid premium, we must approve the reinstatement before it is effective. We can impose conditions on the reinstatement.

We must act on your application for reinstatement within forty-five days after we receive it. If we fail to notify you of rejection or of any conditions to reinstatement within forty-five days, the reinstatement will be complete.

If this policy is reinstated, it will cover only loss sustained after the date of reinstatement and from treatment of cancer which begins after the date of reinstatement.

Any premium we accept for reinstatement will be applied to a period for which premium has not been paid. No premium will be applied to a period more than sixty days prior to the reinstatement date.

Reinstatement will not be permitted if the date of reinstatement is subsequent to the date coverage otherwise terminates for any insured.

MAKING A CLAIM FOR BENEFITS

It is our intention to help you to fulfill your responsibility to supply the information necessary for a determination of your right to benefits under this policy. If you have any questions about the processing of your claim, please contact our home office by writing Post Office Box 22587, Jackson, Mississippi 39205.

Notice of Claim:

You must give us written notice of a claim for benefits under this policy. The notice should be received by us within thirty days after the loss, or as soon as is reasonably possible. Notice to us by writing the address shown above, identifying the insured, is sufficient. You may also inform our agent of the claim.

Claim Forms:

After we have received notice from you of a claim, we will supply forms for filing your proof of loss. If we have not sent the forms to you within fifteen days after the notice of claim is received, you will be deemed to have complied with the proof of loss requirement if you send to us a written report of the cancer treatment for which benefits are claimed. This information should be supplied to us within ninety days.

Proof of Loss:

Written proof of loss of your claim for benefits, made by completing the claim form we supply, should be sent to us within ninety days after the date of loss or as soon as is reasonably possible. Failure to send us the completed claim form within ninety days will not affect your right to benefits, however, you must send us the completed form within one year of the loss. We cannot process your claim for benefits until you supply us the required information.

You are excused from the time requirements for making a claim for benefits if you lack legal capacity.

Payment of Benefits:

We will pay benefits to which you are entitled immediately upon receipt of the proof of loss supporting the claim. We will notify you in writing within fifteen working days if additional data is needed to review a claim. The same fifteen day notice will be given if we deny a claim. Any benefits withheld and paid later will receive interest at the rate of 9 percent per annum. If we are paying a monthly disability benefit, the benefit will be paid each thirty days.

Benefits will be paid to you. If accrued benefits are payable at the time of the death of an insured, such benefits will be paid to you and if you are not living, to your spouse. If the amount payable is $1,000.00 or less, and there is no one available to give us a valid release, we can pay the benefit to any relative (by blood or marriage) of the insured whom we believe to be equitably entitled to it. If we do this, we shall be deemed discharged of further obligation to pay the benefit.

Post-Mortem Diagnosis:

We will pay the benefits of this policy if the required diagnosis of cancer is made after the death of an insured. Our liability for benefits is limited to the period beginning on the date of admission of the insured to a hospital, but not to exceed 30 days prior to death.

Assignment:

No assignment of any benefit of this policy shall bind us unless we receive written notice thereof prior to the payment of the benefit. We do not assume any responsibility for the validity of any assignment.

Unpaid Premium at Time of Claim Payment:

If when we pay a claim hereunder any premiums are then due but unpaid, we will deduct the unpaid premium from the benefit.

Physical Examination; Autopsy:

While there is a claim pending, we may require that the insured be examined by a physician we choose. In the case of death, we also have the right to make an autopsy where it is not forbidden by law. If we require a physical examination or autopsy, we will pay the cost.

Nonwaiver:

Receipt by us of a notice of claim, the furnishing of claim forms or the investigation of a claim will not constitute a waiver of any of our rights with reference to the payment of a claim.

CONVERSION RIGHT

If coverage of an insured other than the named insured terminates for any reason other than failure to pay premium, such insured may be issued, without evidence of insurability, an individual cancer treatment benefit policy ("the conversion policy") on the following conditions:

(1) We must receive written application for the conversion policy not later than 60 days after the date on which such insured's coverage under this policy terminates. The effective date of the conversion policy will be the date of the termination of the coverage under this policy.

(2) The premium for the conversion policy shall be that which we are charging for the conversion policy on its issue date.

(3) The conversion [illegible]cy will be on such form as [illegible] then being issued by us and will provide [illegible]ncer treatment benefits which most nearly approximate the benefits provided by this policy.

(4) The conversion policy will exclude any condition excluded by this policy with respect to such insured at the time of termination of coverage. No new conditions will be excluded in the conversion policy.

(5) Benefits payable under the conversion policy will be reduced by any benefits payable under this policy with respect to such insured after termination of coverage under this policy.

OTHER TERMS OF YOUR POLICY

Our Contract With You:

These pages are your entire contract with us. We issued it based upon your application and the payment of premium by you. A copy of the application is included.

Only our officers have authority to agree to extend the time in which you can pay premium or otherwise change this policy. Any change must be written.

When Protection Starts:

The issue date is the date when this policy becomes effective if the first premium has been paid. The premium due dates, policy years and policy anniversaries are determined by the issue date stated in the Schedule. All periods of insurance begin and end at 12:01 o'clock a.m., standard time, at the place where the named insured resides. Coverage begins 30 days after the date of the policy.

Time Limit on Certain Defenses:

This policy will be incontestable by us, unless you do not pay the premium, after it has been in force for two years from the issue date. This means that we cannot use any misstatement by you in the application to challenge any claim or to avoid liability under this policy after that time.

Pre-Existing Condition Limitations:

Cancer which is first diagnosed or first treated within 5 years prior to the policy date or less than 30 days after the policy date of this policy is called a pre-existing condition. Pre-existing conditions will not be covered until this policy has been in force for two years. Pre-existing conditions will be covered after this policy has been in force for two years unless they are excluded by name or specific description in this policy.

Ownership:

The named insured is the owner of this policy. The owner controls the policy while it is in force. No assignment of this policy shall bind us unless we receive written notice of it.

Incorrect Age:

If the age of an insured is incorrectly stated in the application, we will adjust any benefits payable to the amount which the premium paid would have purchased at the correct age.

Client-Physician Relationship:

Each insured shall have the right to select his or her own physician and hospital.

Nonparticipating:

This policy does not participate in our earnings.

Harpootlian 0992

Legal Actions:

If you are not satisfied with the payment of benefits we make under this policy, you may institute a legal action against us. You must wait at least sixty days after you have submitted the proof of loss before beginning the legal action. The laws of the state in which you reside establish a maximum of six (6) years in which a legal action can be brought. If you do not timely file a legal action, your right to do so can be barred.

Conformity With State Law:

This policy is subject to the laws of the state where the application was signed. If any part of the policy does not comply with the law, it will be treated by us as if it did.

Death of Named Insured:

If you die and your spouse is then an insured, she or he may continue this policy in force by requesting in writing that we designate her or him the named insured.

# RETURN OF PREMIUM RIDER

This Rider is made a part of the policy to which it is attached. The Rider is effective as of the date of issue of the policy unless a different date of issue is shown below. This rider may only be attached to an accident and health policy.

BENEFIT. A return of premium benefit is available under this Rider after the Rider has been in force continuously and premiums have been paid for more than 5 years. The return of premium benefit will be available prior to the maturity date on termination of this Rider.

The return of premium benefit is determined by the value in the Table of Return of Premium Percentages according to the duration for which premiums for this Rider have been paid, subject to the Return of Premium Benefit Calculation paragraph.

MATURITY DATE. The maturity date of this Rider is the last day of the 20th rider year following the effective date of this Rider. Rider years are measured from the date of issue of this Rider.

TERMINATION AND MATURITY. Termination of this Rider prior to the maturity date will be due to: (1) cancellation at your request; or (2) lapse of the policy and/or this Rider for nonpayment of premium; or (3) receipt of proof of your death.

In the event of your death while your spouse is alive and covered under this policy, your spouse may elect to continue the coverage under this Rider by continued payment of the premium for the policy and this Rider.

This Rider must be surrendered as a condition for payment hereunder for any value at termination prior to the maturity date. Upon receipt of your request for surrender, this Rider shall cease to be in force from the date the termination value is calculated. After surrender, this Rider may not be reinstated.

If you elect not to receive the return of premium benefit at the maturity date, you may keep this rider in force by continuing to make the premium payments. If the rider is kept in force, the return of premium percentage for policy years after the maturity date will be 100%. Termination of this rider after the maturity date will be due to: (1) cancellation at your request; (2) lapse of the policy and/or this rider for nonpayment of premium; or (3) receipt of proof of your death.

RETURN OF PREMIUM BENEFIT CALCULATION. The return of premium benefit is determined according to the duration for which premiums for this Rider have been paid and the total of all premiums applicable to the policy (including all riders) since the date of issue of this Rider multiplied by the applicable percentage shown in the Table of Return Premium Percentages. The values stated in the Table are based on a percentage applicable to the total premium which includes the premium for the policy itself combined with the Return of Premium Benefit Rider premium and all other rider premiums. The value is available after premiums for this Rider have been paid in full at the end of the indicated year. The values at any date to which premiums have been paid within a rider year shall be obtained by interpolation between the values at the beginning and end of a rider year. Return of Premium Percentages for any years not shown will be furnished upon request. The value at the end of rider year 5 shall be considered to be zero for the purpose of this calculation.

TABLE OF RETURN OF PREMIUM PERCENTAGES
Completed Years of Premium Payment

Harpootlian 0994

| End of Year | Percentage | End of Year | Percentage | End of Year | Percentage | End of Year | Percentage |
|---|---|---|---|---|---|---|---|
| 1 | 0% | 6 | 16% | 11 | 58% | 16 | 83% |
| 2 | 0 | 7 | 28 | 12 | 63 | 17 | 87 |
| 3 | 0 | 8 | 37 | 13 | 69 | 18 | 92 |
| 4 | 0 | 9 | 45 | 14 | 73 | 19 | 96 |
| 5 | 0 | 10 | 52 | 15 | 78 | 20 | 100 |

RP-AH-1 (Rev. 4/86)

GENERAL PROVISIONS. This Rider is subject to all the provisions, limitations and exceptions of the policy which do not conflict with the Rider.

Issued by Dixie National Life Insurance Company at Jackson, Mississippi on the date of issue of the policy unless a different date is shown here.

Secretary

RP-AH-1 (Rev. 4/86)

Harpootlian 0995

APPLICATION TO DIXIE NA[illegible]NAL LIFE INSURANCE CO., P.O.BOX [illegible], JACKSON, MS 39205

Applicant Name: WARD (Last) Martha (First) J. (MI) 4-27-55 (Date of Birth) 35 (Age)

Spouse Name: WARD (Last) James (First) A. (MI) 11-28-44 (Date of Birth) 45 (Age)

Home Address: 3213 OAKDALE Rd (Street Address) West Columbia (City) S.C. (State) 29169 (Zip) 791-9861 (Phone)

Is this insurance to replace or duplicate other insurance? Yes ☐ No ☐
(If yes, please read and sign replacement form on back.)

Other insurance now in force: N/A
(Policy Number, Type and Company Name)

Primary Beneficiary — Relationship — Contingent Beneficiary — Relationship

COVERAGE APPLIED FOR

Cancer Policy Form Number: CP-1004 S.C.
Specified Dread Diseases: N.A.
Intensive Care: N.A. Unit(s) N.A. Number
Other: Return of Prem. Form Number: RP-AH-1
Other: NA Form Number:
Other: NA Form Number: NA

Individual: N.A
Family: ✓
Mode of Payment: Payroll
Method of Payment: Deduction
Premium Amount: 17.93
Employer's Name: # 5862 [illegible]

REPRESENTATION AND AGREEMENT OF POLICYHOLDER:
No person to be insured has been diagnosed or treated for Acquired Immune Deficiency Syndrome (AIDS), AIDS Related Complex (ARC), Antibodies to Human T-lymphotropic Virus Type III (HTLV-III) prior to this date, except None who is to be excluded from coverage.
(List person and condition. If none, so state)

CANCER: I hereby apply for the type of Cancer coverage checked, and represent that to the best of my knowledge, information and belief no person to be insured hereunder is now or has ever been diagnosed or treated as a victim of cancer, carcinoma, sarcoma, Hodgkin's disease, leukemia, lymphoma or malignant tumor except None who is to be excluded from coverage.
(List person and condition. If none, so state)

DREAD DISEASE: I hereby apply for the type of Specified Dread Disease coverage checked, and represent that to the best of my knowledge, information and belief no person to be insured hereunder is now or has ever been diagnosed or treated as a victim of sickle cell anemia, scarlet fever, small pox, muscular dystrophy, tularemia, typhoid fever, poliomyelitis, encephalitis, rabies, tetanus, tuberculosis, osteomyelitis, meningitis or diphtheria, except N/A who is to be excluded from coverage.
(List person and condition. If none, so state)

INTENSIVE CARE: I hereby apply for the type of Intensive Care Coverage checked, and represent that to the best of my knowledge, information and belief no person to be insured hereunder is now or has ever been diagnosed or treated as a victim of a stroke, heart attack, heart condition, heart trouble, or any abnormality of his heart, prior to this date, except N/A who is to be excluded from coverage. (List person and condition. If none, so state)

I also represent that I have read, or had read to me, the completed application and realize that any false statement or misrepresentation thereon which materially affects the insurance company's acceptance of any person for coverage under a policy or rider may result in loss of coverage for that person subject to the Time Limit on Certain Defenses Provision and Legal Action Provisions. I hereby represent that I have received the Outline of Coverage.

C-APP-B (REV.1/88)-SC

Harpootlian 0996

None of the coverage in this application may be issued in any state where the said coverage has not been approved.

Does proposed insured have a current Medicaid eligibility card? Yes ☐ No ☐

Agent's Signature [signature] Applicant's Signature [signature]
Agent's Number [handwritten] Date [handwritten]

THE "EFFECTIVE DATE" OF THE POLICY WILL BE THE DATE RECORDED BY THE HOME OFFICE. IT IS NOT THE DATE THIS APPLICATION IS SIGNED. POLICY WILL BECOME EFFECTIVE WHEN ALL UNDERWRITING REQUIREMENTS HAVE BEEN SATISFIED.

C-APP-B (REV.1/83)-SC

RECEIVED
AUG - 7 1990
DIXIE NAT'L LIFE UNDER DEPT.

NOTICE TO APPLICANT REGARDING REPLACEMENT
OF ACCIDENT AND SICKNESS INSURANCE

According to information you have furnished, you intend to lapse or otherwise terminate existing accident and sickness insurance and replace it with a policy to be issued by Dixie National Life Insurance Company. For your own information and protection, you should be aware of and seriously consider certain factors which may affect the insurance protection available to you under the new policy.

(1) Health conditions which you may presently have may not be immediately or fully covered under the new policy. This could result in denial or delay of a claim for benefits under the new policy, whereas a similar claim might have been payable under your present policy. (This subsection may be modified if pre-existing conditions are covered under a new policy.)

(2) You may wish to secure the advice of your present insurer or its agent regarding the proposed replacement of your present policy. This is not only your right, but it is also in your best interest to make sure you understand all the relevant factors involved in replacing your present coverage.

(3) If, after due consideration, you still wish to terminate your present policy and replace it with new coverage, be certain to truthfully and completely answer all questions on the application concerning you medical/health history. Failure to include all material medical information on any application may provide a basis for the company to deny any future claims. After the application has been completed and before you sign it, re-read it carefully to be certain that all information has been properly recorded.

The above "Notice to Applicant" was delivered to me on:

(Date)

C-REP-1-SC

(Applicant's Signature)

DUPLICATION OF INSURANCE FORM

I understand that the insurance I am applying for will duplicate coverage I already have. Even so, I still believe I need this new insurance.

(Witness)

(Signature of Applicant)

DIF-1-SC

(Date)

Harpootlian 0997

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Martha Ward, on behalf of herself and all others similarly situated<br><br>Plaintiff,<br><br>vs.<br><br>Dixie National Life Insurance Company and National Foundation Life Insurance Company,<br><br>Defendants. | ) | C/A No.: 03:3-3239-17<br><br>**CERTIFICATE OF SERVICE** |

I, Heather Herron, Legal Assistant to Richard A. Harpootlian, P.A. hereby certify that I have on April 22, 2004, served via U.S. Mail, to the named individual(s) a copy of the following documents:

**Documents:**

1) Amended Civil Action Cover Sheet.;
2) Amended Summons; and
3) Amended Complaint.

**Served:**

Morgan S. Templeton, Esquire
Elmore & Wall, P.A.
Post Office Box 1200
Charleston, South Carolina 29402

J. Calhoun Watson, Jr., Esquire
Sowell, Gray, Stepp & Lafitte, LLC
1310 Gadsden Street
Columbia, South Carolina 29201

Heather Herron, Legal Assistant to
Richard A. Harpootlian, P.A.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Martha Ward, on behalf of herself and all others similarly situated<br><br>Plaintiff,<br><br>vs.<br><br>Dixie National Life Insurance Company and National Foundation Life Insurance Company,<br><br>Defendants. | C/A No.: 03:3-3239-17<br><br>**CERTIFICATE OF SERVICE** |

I, Heather Herron, Legal Assistant to Richard A. Harpootlian, P.A. hereby certify that I have on April 22, 2004, served via U.S. Mail, to the named individual(s) a copy of the following documents:

**Documents:**

1) Amended Civil Action Cover Sheet.;
2) Amended Summons; and
3) Amended Complaint.

**Served:**

Morgan S. Templeton, Esquire
Elmore & Wall, P.A.
Post Office Box 1200
Charleston, South Carolina 29402

J. Calhoun Watson, Jr., Esquire
Sowell, Gray, Stepp & Lafitte, LLC
1310 Gadsden Street
Columbia, South Carolina 29201

Heather Herron, Legal Assistant to
Richard A. Harpootlian, P.A.