IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| ANTHONY E. GOOCH, individually and on behalf of all similarly situated individuals, ) ) ) | |
| Plaintiff, ) ) | CLASS ACTION |
| v. ) ) ) | Civil Action No: 1:07-0016 JUDGE HAYNES |
| LIFE INVESTORS INSURANCE COMPANY OF AMERICA; AEGON USA, Inc. ) ) ) ) | |
| Defendants. ) | |

## SUPPLEMENTAL RESPONSE IN OPPOSITION TO DEFENDANT AEGON USA, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

COMES NOW the Plaintiff, Anthony E. Gooch (hereafter "Plaintiff"), and files his Supplemental Response in Opposition to Defendant AEGON USA, Inc.'s Motion to Dismiss For Lack of Personal Jurisdiction. In this filing, Plaintiff respectfully submits additional evidence and argument after having been allowed limited discovery from Defendant Life Investors Insurance Company of America ("Life Investors") and Defendant AEGON USA, Inc. ("AEGON USA"). This Supplemental Response and the exhibits filed herewith are in addition to the evidence and argument originally filed on June 13, 2007 (Doc. #56)[1], and further satisfy the *prima facie* standard for establishing personal jurisdiction over AEGON USA.

---

[1] Plaintiff's filing of his initial Opposition to Defendant AEGON USA, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction (Doc. #56) on June 13, 2007, was done out of an abundance of caution until it became evident that the Court had intended to stay the briefing deadline on this and other pending motions until the parties' submitted a proposed order establishing a briefing schedule. Plaintiff notes this original Opposition was filed before any depositions were taken in this matter.

1

# INTRODUCTION

The depositions of Connie Whitlock, Life Investors' Rule 30(b)(6) designee (attached as Exhibit "L"), and Jeanne de Cervens, AEGON USA's Rule 30(b)(6) designee (attached as Exhibit "M"), further support Plaintiff's *prima facie* showing that this Court has personal jurisdiction over AEGON USA by way of AEGON USA's intimate relationship with Life Investors, particularly with respect to the events giving rise to this lawsuit. This intimate relationship, which is also discussed in Plaintiff's original Response in Opposition (Doc. # 56), gives rise to personal jurisdiction over AEGON USA under conspiracy, agency and *alter ego* principals.

AEGON USA has contended at length, both through inaccurate legal recitations and through obstructionist positions it has taken during jurisdictional discovery, that the only relevant question is whether AEGON USA *itself* has "actual activities" in Tennessee. By doing so, AEGON USA disingenuously ignores the fact that AEGON USA's "actual activities" in Tennessee are *irrelevant* to jurisdiction based on conspiracy, agency and alter ego, because its contacts are actually derived from its subsidiaries whose presence in Tennessee is *undisputed*. AEGON USA's apparent intent is to avoid the real issue before the Court, which is whether AEGON USA's relationship with its subsidiaries, and Life Investors in particular, gives rise to a situation where the undisputed contacts of these captive companies are legally attributed to AEGON USA.

AEGON USA's obstructive efforts notwithstanding, Plaintiff respectfully submits that certain vital glimpses of testimony slipped through despite this Defendant's persistent refusal to

participate or cooperate in meaning discovery on jurisdictional issues.[2] These critical pieces of testimony, recounted below, further support Plaintiff's *prima facie* showing that AEGON USA's jurisdictional contacts with Tennessee arise <u>vicariously</u> out of the undisputed contacts of its wholly owned subsidiaries, including Life Investors. <u>See</u> <u>Williams v. Firstplus Home Loan Owner Trust 1998-4</u>, 310 F. Supp. 2d 981, 990 (W.D. Tenn. 2004) ("Absent an evidentiary hearing on the issue of personal jurisdiction, the plaintiff 'need only make a prima facie showing of jurisdiction.'") (quoting <u>Bird v. Parsons</u>, 289 F.3d 865, 871 (6th Cir. 2002)). Under these principles, it is not necessary that AEGON USA have "actual activities" in Tennessee for jurisdiction to exist.

Even without conspiracy, agency and alter ego, AEGO USA's jurisdictional motion fails because of a judicial admission in another case that it has at least one Tennessee employee. In the matter entitled <u>Wilson v AEGON USA, Inc</u>., 07-CV-122, E.D. Tenn., Chattanooga Division, the defendants first admit that the Plaintiff is a Tennessee resident (Exhibit "O" Complaint at paragraph 4 and Answer at paragraph 4), and then state "Defendants admit that Plaintiff was employed by Defendant AEGON, USA, Inc." Exhibit "O" Answer at ¶ 8. <u>See also</u> Exhibit "P", Business Card of the Tennessee Agent who sold Mr. Gooch the policy representing himself as an agent of "AEGON USA".

For these additional reasons, supported by the attachments attached hereto, AEGON USA's jurisdictional motion should be denied.

---

[2] As recounted *infra* herein, AEGON USA refused to respond substantively to written discovery(see Exhibit "N") and to designate a corporate representative that was properly prepared to testify on matters that included AEGON USA's relationship and business dealings with Life Investors and other subsidiaries or internal divisions that have been identified in this case as having a role in the conduct involved. AEGON USA's discovery misconduct also included *seven* instructions to AEGON USA's Rule 30(b)(6) designee not to respond to various lines of jurisdictional questioning.

**SUPPLEMENTAL FACTUAL STATEMENT**

In his original Response in Opposition, Plaintiff submitted evidence that included Exhibit "A" – AEGON NV 2005 Annual Report; Exhibit "B" – Declaration of Mary Taiber filed January 10, 2006 in the matter entitled McCullough v. AEGON USA, Inc., et al., Case No. CV05-7215 (C.D. Cal.); Exhibit "C" – AEGON NV 2004 Annual Report excerpts; Exhibit "D" – Claim forms and instructions; Exhibit "E" – Waiver of Premium Claim form; Exhibit "F" – Correspondence dated May 1, 2006 on Life Investors Insurance Company of America letterhead; Exhibit "G" – Market Conduct Examination Report of the life and health business of Life Investors Insurance Company of America by the State of Maryland, Maryland Insurance Administration dated December 29, 2006; Exhibit "H" – Life Investors Insurance Company of America's Explanation of Benefits dated August 23, 2005; Exhibit "I" –Claim payments dated June 7, 2007; Exhibit "J" –Plaintiff's Deposition Notices, First Interrogatories and Requests for Production Related to the Jurisdictional Challenge of Defendant AEGON USA, Inc.; and Exhibit "K" – Flynn v Greg Construction, Inc. , 95 Fed.Appx. 726 (6th Cir. 2003).; See, Inc. v. Imago Eyewear Pty, Limited, et al, 167 Fed.Appx. 518 (6th Cir. 2006).

Plaintiff further submits the following Exhibits attached hereto: Exhibit "L" – Deposition of Connie Whitlock, Life Investors 30(b)(6) Representative; Exhibit "M" – Deposition of Jeanne de Cervens, AEGON USA 30(b)(6) Representative; Exhibit "N" – AEGON USA Responses to Plaintiffs Jurisdictional Discovery Requests; Exhibit "O" – Complaint and Answer in the matter entitled Wilson v AEGON USA, Inc., et al., 07-CV-122, E.D. TN., Chattanooga Division; Exhibit "P" – Business Card of the Tennessee agent who sold Mr. Gooch the Policy in question; and Exhibit "Q", Federal Lobbyist Registration forms signed by Jeanne de Cervens. Because Exhibits A through K have already been extensively discussed, in this Supplemental Response,

4

Plaintiff will present to the Court only those additional facts developed during recent discovery since this earlier filing and included in Exhibits L through Q.

On July 14, 2007, the Plaintiff took the deposition of Connie Whitlock, Life Investors' Rule 30(b)(6) designee as to the areas of testimony permitted by the Court at the June 12, 2007, hearing. At all times relevant hereto, Ms. Whitlock has served as Senior Vice President of Operations for Life Investors. Whitlock Dep. at 16 (Exhibit L). She also has positions and titles with no less than five (5) other AEGON USA subsidiaries, despite receiving a paycheck only from TransAmerica Life Insurance Company (another AEGON USA subsidiary). Id. at 15-18.

On July 22, 2005, Ms. Whitlock authored an internal memorandum urging a change in the way in which Life Investors and other AEGON USA subsidiaries paid "actual charges" benefits after a company actuary expressed concern that payment of those benefits based on medical bills had become too expensive. Id. at 83-85, 89-91. Ms. Whitlock led the "Project Team" that was formed in response to her July 22, 2005 memorandum Id. at 99 – 101. That "Project Team" was comprised of employees of at least three other AEGON USA subsidiaries. Id. This Project Team made the decision to "correct" Life Investors' prior long-standing practice of paying "actual charges" benefits based on medical bills. Id. at 99. Ms. Whitlock testified that they sought approval for the decision from three persons having higher positions, including Brenda Clancy. Id. at 102, 104. Importantly for AEGON USA jurisdictional purposes, Brenda Clancy had dual titles as a Vice President of AEGON USA, Inc. (de Cervens Dep. at 76)[3] and Executive Vice President of Life Investors (Whitlock Dep. at 53). Ms. Clancy approved the Project Team's recommendation to effectuate the change that is at issue in this lawsuit. Whitlock Dep. at 104.

---

[3] Ms. de Cervens' testimony clearly identified Brenda Clancy as a Vice President of AEGON USA, but was unclear whether Ms. Clancy's title was Executive Vice President, or merely Vice President. de Cervens Dep. at 76.

5

Jeanne de Cervens, AEGON USA's corporate representative, likewise testified about the chain of command between AEGON USA and its affiliates, including Life Investors. According to Ms. de Cervens, Patrick Baird, AEGON USA's President and CEO (de Cervens Dep. at 50), is responsible for overseeing the operations of Life Investors and other AEGON subsidiaries in the United States. de Cervens Dep. at 49-50, 119-121. Though Ms. de Cervens could not testify about the decision to change "actual charges", she did say that she would expect that Mr. Baird would be involved in any "material" decisions affecting the financial performance of its subsidiaries. Id. at 120-121.

Ms. de Cervens also offered testimony on AEGON's use of employees from Life Investors and other subsidiaries to carry out its operations. For instance, Ms. de Cervens stated AEGON USA's had "offices" in Cedar Rapids, Iowa, and Baltimore, Maryland. Id. at 79. The Cedar Rapids office alone houses over 2,500 employees belonging to its subsidiaries. Id. at 80-82. Ms. de Cervens confirmed that mail addressed to AEGON USA, Inc. would be received by the subsidiary employees at those offices, and ultimately forwarded to an AEGON USA officer such as Patrick Baird or AEGON USA's general counsel, Craig Vermie.[4] Id. at 83-84. Ms. de Cervens also testified that AEGON USA and each of its subsidiaries share the same e-mail address information, id. at 84-85, and that payroll systems for United States operations are consolidated into a single platform. Id. at 39-40.

Finally, Ms. de Cervens testified that AEGON USA handles "investment activities" for its subsidiaries, although she was unprepared to testify about what those activities entailed. She also testified that AEGON USA handles treasury, accounting and tax functions for the

---

[4] Interestingly, Ms. de Cervens' identification of Craig Vermie as one of the persons who would receive mail on behalf of AEGON USA, Inc., coincides with testimony she gave earlier in her deposition that Mr. Vermie was an "employee" of Life Investors while at the same time serving as general counsel for AEGON operations throughout the United States. de Cervens Dep. at 19-20. Mr. Vermie is likewise Secretary for AEGON USA. Id. at 21.

6

subsidiaries. Id. at 11. Unfortunately, when an effort was made to examine the witness as to the details of these functions (particularly as to investing), Defense Counsel instructed Ms. de Cervens not to answer, id. at 109, despite the nexus that information has with the issue at hand concerning the relationship between AEGON USA and Life Investors.

That instruction not to answer was one of many, and was *de rigeur* for how the Defendant conducted itself during discovery. Over the course of Ms. de Cervens' deposition alone, the witness was instructed not to answer *seven times*[5] based on questionable assertions of privilege (such as jurisdictional facts discovered by the witness in preparing for the deposition, id. at 92-93) and spurious objections based on scope (such as questioning intended to elicit facts concerning the level of operational cooperation between AEGON USA and its subsidiaries, including those concerning investment management and other issues, id. at 103, 109-110).

The examination of Ms. de Cervens was also seriously hamstrung by the fact that the witness had not undertaken any investigation (at least any that she was allowed to speak about) as to whether any agreements existed between AEGON USA and Life Investors concerning the administration and payment function of the subject policies. *See* id. at 26-27, 29-30, 33-34, 47, 110-118. She also had not done anything to determine whether AEGON USA had any contract (as opposed to "payroll") employees, including such persons conducting activities in Tennessee. Id. at 43-44. Ms. de Cervens also was not prepared to testify as to AEGON USA's financial relationship with Life Investors. For example, she was unable to answer questions relating to the source of AEGON USA's revenue or even whether AEGON USA had any revenue at all, much less where any revenue purported to come from. Id. at 72-74. She also did not know: (1) whether AEGON USA receives dividends from Life Investors or other subsidiaries; (2) whether

---

[5] The instances where this instruction was given appear on Ms. de Cervens' deposition as follows: 26-27, 35, 69-70, 89, 92, 103, and 109-110.

AEGON USA was responsible in any way for the statutory liquidity requirements on behalf of its subsidiaries, including Life Investors; (3) whether AEGON USA has any agreement with Life Investors where it assumes the liabilities of Life Investors; (4) whether AEGON USA has any agreements with Life Investors regarding the use of Life Investors employees or vice versa; and (5) whether AEGON USA is a party to any ceding or reinsurance agreements that reinsure or transfer Life Investors' liabilities on the policies it has issued. Id. at 77, 116-118. In fact, she made no investigation as to any of these things. Id.

Despite AEGON USA's cavalier approach to the jurisdictional discovery in this matter, Plaintiff submits that the evidence it *was* finally able to cajole from the Defendant sufficiently establishes a *prima facie* showing of personal jurisdiction under conspiracy, agency and *alter ego* principles.

## ARGUMENT

I. **THE RATIFICATION AND EFFECTUATION OF THE CONDUCT GIVING RISE TO THIS LAWSUIT BY AN AEGON USA, INC. OFFICERS SUPPORTS PERSONAL JURISDICTION UNDER CONSPIRACY AND AGENCY PRINCIPLES.**

Through her testimony, Connie Whitlock made clear that the nature of the conspiracy between AEGON USA and Life Investors is not only on the "boiler room" level where the claims are handled and administered, but is also at the policy-making level where AEGON USA officer approved, ratified and effectuated the change in the manner in which Life Investors paid "actual charges" benefits to Mr. Gooch and its other insureds. The conspiracy arises out of the fact that at least one key person involved in that decision <u>had multiple roles by virtue of having numerous titles with various AEGON USA subsidiaries and with AEGON USA directly.</u> In this respect, AEGON USA clearly was "in the room" when the change in "actual charges" benefits – the conduct giving rise to Mr' Gooch's classwide claims -- was made.

8

AEGON USA's participation in the conduct at issue arises out of the action of its subsidiaries' employees and its own officers. This level of cooperation exceeds the level of cooperation found in Chenault v. Walker, 36 S.W.3d 45 (Tenn. 2001), cited and discussed in Plaintiff's original Opposition. In Chenault, the Tennessee Supreme Court found jurisdiction over a non-Tennessee defendant to arise out of a conspiracy where that defendant participated in the conduct at issue. Chenault, 36 S.W.3d at 58.

Here, Ms. Whitlock testified that she serves as Senior Vice President of Life Investors in charge of operations while simultaneously serving as an officer for no less than five (5) other AEGON USA subsidiaries. Whitlock Depo. at 16. Sometime before July 22, 2005, Steven Gwin[6] informed Ms. Whitlock that the longstanding practice of paying "actual charges" benefits in the amount of medical bills had become too expensive to maintain without premium increases. Id. at 89 – 90. Ms. Whitlock and others studied the issue, which led to Ms. Whitlock's July 22, 2005 memo announcing internally that the index for payment of "actual charges" benefits for all policies across all AEGON USA subsidiaries, including TransAmerica and Life Investors, needed to be changed. Id. at 83-85, 99-101. She then sought approval for that decision from her supervisor Brenda Clancy, Id. at 104 who similarly had dual roles within the AEGON organization, serving as both an Executive Vice President of Life Investors (Whitlock Dep. at 53) and as a Vice President at AEGON USA (de Cervens Depo. at 76). Accordingly, once again, AEGON USA, as an entity, directed and signed off on the conduct at issue.

Also supporting a finding of conspiracy, Jeanne de Cervens confirms Mary Taiber' Affidavit (Exhibit B to Plaintiff's original Opposition) where Ms. Taiber explains that AEGON USA's operations are carried out by its subsidiaries. Exhibit B, ¶ 2. On this point, Ms. de Cervens testified, "AEGON USA operations, business operations in the US are conducted

---

[6] Mr. Gwin is actually a "payroll employee" of another AEGON USA wholly owned subsidiary, Peoples Benefit.

9

through its operating companies." de Cervens Dep. at 10. Ms. de Cervens also confirmed that AEGON USA's Cedar Rapids office is staffed by over 2,500 employees belonging to its various subsidiaries. de Cervens Depo. at 80-83. Accordingly, the reason AEGON USA does not "have any [payroll] employees" as stated in her affidavit (Doc. # 39) is obvious: it does not need any of its own "payroll employees" when it directs the payroll employees of its various subsidiaries to staff its offices and gives them titles as officers of AEGON USA.

Ms. de Cervens also testified that mail addressed to AEGON USA would be forwarded either to Craig Vermie or Pat Baird, <u>both of whom have titles with Life Investors in addition to having titles with *AEGON USA*</u>. de Cervens Depo. at 83. This presents another example of dual roles filled by AEGON USA subsidiaries' employees that evidences a heightened level of cooperation between the various companies at the managerial level having direct involvement with the conduct at issue in this case.

This additional evidence proves direct participation by AEGON USA in the activities upon which this lawsuit is based. It also shows the degree to which AEGON USA depends on employees of its subsidiaries in directing and staffing its business operations. AEGON USA's heightened involvement in Life Investors' affairs, particularly with respect to the decision at the managerial level to change the contractual index for "actual charges" benefits, supports both conspiracy and agency personal jurisdiction under Tennessee law.

## II. AEGON USA'S SERIAL DISREGARD OF THE SEPARATE CORPORATE EXISTENCE OF LIFE INVESTORS AND OTHER WHOLLY-OWNED SUBSIDIARIES SUPPORTS *ALTER EGO* JURISDICTION.

The question of when a parent corporation should be held liable for the conduct of its subsidiary is a factual one involving a number of non-exclusive factors for the Court's consideration. Of the many factors often cited by Tennessee appellate courts, the most relevant

factors for purposes of this case include (1) AEGON USA's use of Life Investors as an instrumentality or business conduit, (2) AEGON USA's use of the same offices as its affiliates (including Life Investors); and (3) the failure of AEGON USA and Life Investors to maintain an arm's length relationship.  See generally Boles v. National Development Co. Inc., 175 S.W.3d 226, 245 (Tenn. App. 2005) (listing these factors, among others, as relevant to an *alter ego* inquiry).

As set forth above in Part I, AEGON USA used Life Investors and other subsidiaries and conduits for conducting its operations.  As Ms. de Cervens succinctly stated, "AEGON USA operations, business operations in the US are conducted through its operating companies."  de Cervens Dep. at 10.  AEGON USA's use of its subsidiaries' "payroll employees", including Connie Whitlock, Brenda Clancy and the 2,500 people at its offices, also illustrates the extent to which the company relied on those persons to conduct the operations described in federal lobbyist registration forms as including "Markets life and health insurance and annuity and investment pro[ducts][7]" (Exhibit Q).  Although AEGON USA may not have any products under its own corporate heading, it clearly relies on the products marketed and sold by its subsidiaries to generate the revenue ultimately reported upstream in the consolidated financial statements of AEGON USA, the parent to AEGON N.V.  It also relies on the payroll employees of those wholly subservient subsidiaries to work the claims on those policies, which is naturally a part of AEGON USA's pursuit of its "business operations in the US … through its operating companies."  de Cervens Dep. at 10.

The fact that the personnel who had key involvement in the "actual charges" benefits change served as officers of AEGON USA and multiple AEGON USA subsidiaries further blurs

---

[7] The attached registration form includes a correspondence letter bearing the name "Jeanne de Cervens" and what appears to be her signature.  The form was submitted to the Secretary of the Senate on August 13, 1998.  Ms. de Cervens testified that AEGON USA's functions in 1998 are the same as they are now.  de Cervens' Depo. at 19.

the fictional corporate line that supposedly separates that company from Life Investors. Indeed, the fact that AEGON USA's Executive Vice President Brenda Clancy approved the change is dispositive as to AEGON USA's *direct* involvement in the activities at issue here and likewise dispositive as to its *alter ego* involvement. It is also notable that the insurance agent who sold Mr. Gooch the policy held himself out as a representative of AEGON USA (See Exhibit "P", Business Card), which is akin to AEGON USA and its subsidiaries sharing letterhead. The sharing of letterhead is one more of the indication of that corporate formalities have been disregarded. Scandlyn v. McDill Columbus Corp., 895 S.W.2d 342, 347 (Tenn. App. 1995).

As to other factors relevant to *alter ego* such as financial relationships, AEGON USA refused to participate in such discovery (as discussed above), so those facts have not been made available to the Plaintiff for presentation here. However, the evidence currently before the Court amply satisfies Plaintiff's burden of presenting evidence making a *prima facie* showing of personal jurisdiction based on other factors discussed both here and in Plaintiff's original Opposition.

## CONCLUSION

For these additional reasons, the Plaintiff respectfully request that this Court deny AEGON USA's Motion to Dismiss.

Respectfully submitted,

/s/ Thomas O. Sinclair
Thomas O. Sinclair
One of the Attorneys for Plaintiff

12

**OF COUNSEL:**
Eric L. Buchanan
TN State Bar No.: 018568
Eric Buchanan & Associates, PLLC
414 McCallie Avenue
Chattanooga, TN 37402
Phone: (423) 634-2506
Fax: (423) 634-2505

Andrew P. Campbell
Andrew P. Campbell
Thomas O. Sinclair
M. Clay Williams
Campbell, Lee,
2100-A SouthBridge Parkway, Suite 450
Birmingham, AL 35209
Phone: (205).803-0051
Fax: (205).803-0053

W. Daniel Miles, III
Beasley, Allen, Crow, Methvin,
Porter & Miles, P.C.
218 Commerce Street
Montgomery, Alabama 36104

**CERTIFICATE OF SERVICE**

   I hereby certify that a copy of the foregoing has been served upon the following counsel of record via the Court's electronic filing system, this the 3rd day of August, 2007.

Thomas H. Dundon, Esq.
A. Scott Ross, Esq.
2000 One Nashville Place
150 Fourth Avenue North
Nashville, TN 37219-2498

Markham R. Leventhal, Esq.
Julianna Thomas McCabe, Esq.
Jorden Burt LLP
777 Brickell Avenue, Suite 500
Miami, FL 33131

          /s/ Thomas O. Sinclair
          Of Counsel