Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| ANTHONY E. GOOCH, Individually and on behalf of all similarly situated individuals, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 1:07-cv-00016 |
| v. | ) ) | Judge Haynes |
| LIFE INVESTORS INSURANCE COMPANY OF AMERICA; and AEGON USA, INC., | ) ) ) ) ) | |
| Defendants. | ) | |

**LIFE INVESTORS' REPLY MEMORANDUM IN SUPPORT OF**
**MOTION TO STAY CLASS RELATED PROCEEDINGS**

Defendant Life Investors Insurance Company of America ("Life Investors") respectfully files this memorandum in further support of its Motion to Stay Class Related Proceedings (D.E. 258) (the "Motion to Stay") and in reply to plaintiff's Response (D.E. 265) (the "Response").

**INTRODUCTION TO REPLY**

Plaintiff's Response to the Motion to Stay consists primarily of an unsupportable attack on the Class Action Settlement (the "Settlement") preliminarily approved by the Arkansas Circuit Court in *Edison Runyan, et al. v. Transamerica Life Insurance Company, et al.*, Case No. CV-09-2066-3 (the "*Runyan* action").[1] Plaintiff's Response is replete with gross misrepresentations of fact and baseless accusations. Plaintiff's characterizations of the

---

[1] A copy of the Class Action Settlement Agreement (the "Agreement") is publicly available on the Settlement website at www.SupplementalInsuranceSettlement.com. Capitalized terms not otherwise defined in this memorandum have the same meanings as defined in the Agreement.

Settlement as "manifestly improper" or some kind of "sweetheart" agreement that provides "no substantive relief" to putative class members are utterly frivolous. The Settlement in the *Runyan* action provides substantial benefits to Settlement Class members and, in fact, provides superior benefits compared to two other recent class action settlements involving cancer policies that paid benefits based on "actual charges," both of which received *final* approval by other courts.

The plaintiff's attacks on the "fairness" or "adequacy" of the Settlement are unsupportable and misplaced, and should be made, if at all, before the Circuit Court in *Runyan*, not in this Court. The Circuit Court's Preliminary Approval Order provides detailed instructions for filing objections to the Settlement. *See* Preliminary Approval Order (D.E. 162-2) ¶¶ 14-15. Moreover, the plaintiff has the ability to "opt out" of the Settlement and pursue his own individual case. *See id.* ¶ 13. He has no substantive right to pursue a class action on behalf of non-parties who are Settlement Class members in another case.[2] His position that the parties and the Court should waste time and resources continuing to litigate class claims in this action that are subject to a comprehensive arms' length settlement runs contrary to well-established principles of comity, judicial economy, and the strong public policy favoring settlements.

There is no question that this Court has the authority to stay the class related proceedings here until after a ruling by the Circuit Court in *Runyan* on the fairness and adequacy of the Settlement. Comity, judicial economy, and precedent favor a stay. Six other federal district

---

[2] It is well established that Rule 23 is a procedural rule which provides no substantive rights. *See, e.g., Blaz v. Belfer*, 368 F.3d 501, 505 (5th Cir. 2004) ("[T]here is no substantive right to a class remedy; a class action is a procedural device."); *Diaz-Ramos v. Hyundai Motor Co.*, 501 F.3d 12, 15 (1st Cir. 2007) ("Both state and federal class action provisions have been construed to confer no substantive rights.") (citations omitted); *In re Baldwin-United Corp.*, 770 F.2d 328, 335 (2d Cir. 1985) (Rule 23 "is a rule of procedure and creates no substantive rights or remedies enforceable in federal court").

2

courts have stayed all proceedings in their respective courts pending a decision by the *Runyan* court on final approval of the Settlement.[3] The length of any stay is clearly reasonable given that the Fairness Hearing for the Settlement is currently scheduled for July 27, 2009. In addition, this Court can limit the duration of the stay, or order a status report at a specified time as did several other district courts which granted stays. *See* Exhibit A.

## ARGUMENT

In addition to baseless attacks on the "fairness" of the Settlement, the Response argues that this Court should disregard the Settlement and proceed with duplicative class certification proceedings because (1) the Settlement is "an egregious compromise of putative class members' due process rights" (Response at 1), (2) the Settlement is a "sweetheart settlement" which is the result of a "fire sale" (*id.* ¶¶ 5, 8), (3) the Settlement provides "no substantive relief" (*id.* ¶ 5), and (4) the Settlement is an "abuse of the judicial system." *Id.* at 1. Plaintiff also includes in his Response spurious accusations of "collusion" and false allegations that Life Investors engaged in "bad faith attempts to manufacture discovery disputes" to prolong this action and allow the Settlement to "go through." *Id.* ¶ 6. None of these arguments have any merit.

**I.  The Class Action Settlement Was Achieved After Months Of Arms' Length Settlement Negotiations With Adversarial Class Counsel, And Plaintiff's Allegations Of "Collusion" And A "Fire Sale" Are Baseless**

Plaintiff's characterizations of the Settlement as "collusive" or the result of a "fire sale" are frivolous and have no evidentiary support. Class Counsel in the *Runyan* action were involved for nearly two years in substantial, adversarial litigation with Life Investors and Transamerica in multiple actions involving supplemental cancer insurance policies prior to the

---

[3] Copies of the Orders granting motions to stay in these other cases are attached hereto as composite Exhibit A.

Settlement. Class Counsel in *Runyan* had six other actions, including four class actions, pending in various states including Arkansas, Mississippi, Michigan, and Louisiana, at the time of the Settlement. *See* Agreement, *supra* note 1, § 1(r) (defining the "Litigation"). These cases included *Pipes v. Life Investors Ins. Co. of Am.*, Case No. 1:07-cv-00035-SWW, filed on June 6, 2007 in the Eastern District of Arkansas.[4] Following extensive discovery and a year and a half of contentious litigation, the parties agreed to meet on October 6, 2008 to discuss the issue of settlement. On November 20 and 21, 2008, after class certification briefing in *Pipes* was complete, the parties engaged in a two-day mediation before a former United States District Court Judge.[5] Plaintiff's allegation that Life Investors somehow engaged in a "fire sale" is nonsense and unsupported by any facts.

While the November 2008 mediation did not result in a settlement, the parties continued to negotiate. On November 25, 2008, the district court in *Pipes* entered an order denying class certification. *Pipes v. Life Investors Ins. Co. of America*, 254 F.R.D. 544 (E.D. Ark. 2008). Class Counsel in *Runyan* filed a motion for reconsideration. They also had the ability to pursue class certification in multiple other cases. After months of additional arm's-length negotiations, the parties executed a Class Action Settlement Agreement, which was filed with the Arkansas Circuit Court in *Runyan* and preliminarily approved on April 23, 2009. There was nothing "collusive" about the Settlement. Moreover, plaintiff's accusation that Life Investors delayed

---

[4] In addition to *Pipes*, the Litigation included three additional class actions: *Runyan v. Transamerica Life Ins. Co.*, pending in the Western District of Arkansas; the *Ross* class action in the Southern District of Mississippi; and the *Weidman* class action in the Eastern District of Michigan. *See* Agreement, *supra* note 1, § 1(r).

[5] Plaintiff's repeated statements that Life Investors "delayed" this case in order to effectuate the Settlement are false and unsupportable. Class Counsel's case in *Pipes* was far more advanced than this case in terms of discovery and class certification briefing.

4

providing him with notice of the Settlement in order to "forestall any response" is absurd. Plaintiff was provided notice of the Settlement more than two months prior to the date of the Fairness Hearing. Notice was provided on May 14, 2009 to all Settlement Class members pursuant to the timetable set forth in the Preliminary Approval Order. There is no requirement that Life Investors provide the plaintiff notice of confidential settlement discussions in another case prior to the time for Notice ordered by the Circuit Court.

Nor is there any question that the Notice Plan under the Settlement satisfies Rule 23 and due process. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 811-12 (1985). The Notice Plan includes (1) a detailed written Notice sent by U.S. mail, (2) Publication Notice in *USA Today*, and (3) an Internet website with access to Claim Forms, the Settlement Agreement, and other documents. *See supra* note 2. The Notice is structured to follow the style recommended by the Federal Judicial Center in a simplified Question and Answer format with a table of contents to help laypersons easily find answers to specific questions they might have about the Settlement. The written Notice informs Settlement Class members of who is part of the Settlement; the nature of the litigation; the terms of the Settlement; the binding effect of any judgment; the right of Class members to request exclusion (opt out) from the Settlement and the procedures for doing so; the right of Class members to object to any aspect of the Settlement and the procedures for doing so; the date and location of the Fairness Hearing; how to obtain additional information; how to make a claim; and information on Class Counsel's fees and expenses. A copy of the Notice is attached hereto as Exhibit B.

II. **A Stay Is Favored By Principles Of Comity, Judicial Efficiency, And The Strong Public Policy Favoring Settlements**

Plaintiff's suggestion that a temporary stay of class related proceedings in this case pending Final Approval of the Settlement would result in a violation of "due process" or an

5

"abuse of the judicial system" is meritless. "The compromise of complex litigation is encouraged by the courts and favored by public policy." 4 *Newberg on Class Actions* § 11:41. "Due to their uncertainty, difficulty of proof, and length, and in the interests of judicial economy, class action [lawsuits] should be settled whenever possible, as soon as possible." *In re Corrugated Container Antitrust Litig.*, 556 F. Supp. 1117, 1157 (S.D. Tex. 1982), *aff'd*, 687 F.2d 52 (5th Cir. 1982).[6] A stay of class related proceedings here would further this policy.

Precedent also favors a stay. In *Annunziato v. eMachines, Inc.*, 2006 WL 5014567 (C.D. Cal. July 24, 2006), the federal district court addressed a very similar situation and stayed proceedings pending final approval of a class settlement in Ohio state court. The court found that "similarities in both cases weigh in favor of granting the motion to stay," and that "efficiency is best achieved by granting a temporary motion to stay." *Id.* at *5. In addition, the district court held that "consideration of comity compel this Court to honor the injunction ordered by the Ohio state court and consequently, to grant this motion to stay." *Id.* at *6.[7]

---

[6] *See also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context.") (internal quotation omitted); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *In re U.S. Oil and Gas Litigation*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits."); *Colella v. Univ. of Pittsburgh*, 569 F. Supp. 2d 525, 530 (W.D. Pa. 2008) ("The strong public policy and high judicial favor for negotiated settlements of litigation is particularly keen in class actions . . ..") (internal quotation omitted).

[7] Until such time as the plaintiff here "opts out" and excludes himself from the Settlement, he is likewise subject to an injunction in the *Runyan* court's Preliminary Approval Order barring him from prosecuting any action asserting claims subject to the Settlement. *See* Preliminary Approval Order ¶ 17.

Similarly, in *In re RC2 Corp. Toy Lead Paint Products Liability Litigation*, 2008 WL 548772 (N.D. Ill. Feb. 20, 2008), the federal court granted a motion to stay pending final approval of a class settlement that had been preliminarily approved in Illinois state court:

> The Court finds that Plaintiffs are not likely to be prejudiced by a stay. If the *Barrett* settlement is not approved by the state court, then Plaintiffs can proceed with this action. If the settlement is approved, then some or all of the claims of Plaintiffs who do not opt out will be barred by res judicata.

*In re RC2*, 2008 WL 548772, at *5.

The same reasoning applies here. There is no prejudice to the plaintiff from a temporary stay of class proceedings while the *Runyan* court considers final approval of the Settlement. Furthermore, plaintiff's suggestion that Life Investors has somehow abused the judicial system by deciding to settle a class action in state court is unsupported by any fact or legal authority. As the above cases (and countless others) illustrate, parties facing parallel state and federal class actions may settle cases in either jurisdiction. *See, e.g., Negrete v. Allianz Life Ins. Co.*, 523 F.3d 1091, 1098-1103 (9th Cir. 2008).

### III. The Runyan Settlement Provides Substantial Benefits To Settlement Class Members Which Exceed The Benefits Provided By Other Settlements That Have Received Final Approval

Contrary to plaintiff's arguments, the Settlement Agreement in *Runyan* provides valuable benefits to Settlement Class Members. There are three categories of Settlement Class members eligible to receive monetary benefits under the proposed Settlement: (1) Past Claimants, (2) Former Cancer Policyholders, and (3) certain deceased Former Cancer Policyholders.

#### 1. *Monetary Benefits to "Past Claimants"*

"Past Claimants" are defined as all Settlement Class members who (A) submitted a claim for Actual Charges Benefits under a Policy on or after the effective date of the 2006 Updated Claims Procedures (generally April 1 or May 1, 2006) and on or before the Court's Preliminary

7

Approval Order, and (B) received benefits under the Policy for their claim based upon Actual Charges and not List Prices. These monetary benefits are designed for Past Claimants who dispute or disagree with the Company's interpretation of "actual charges" or the 2006 Updated Claims Procedures, however, the Parties have agreed to make these benefits available to all Class members who meet the definition of a Past Claimant and who timely submit a Claim Form.

With respect to all Past Claims,[8] Past Claimants who timely submit a Claim Form will qualify for a cash payment equal to forty percent (40%) of the difference between the Actual Charges and the List Prices for the Past Claims up to the lesser of (A) $15,000.00 or (B) any maximum benefit amount as specified in the Class member's Actual Charges Policy (not including any increase in such maximum under the Settlement). The monetary benefits for Past Claimants will be paid to the insured under the Actual Charges Policy, the surviving spouse of the insured if any, or the estate of the insured.

### 2.  *Monetary Benefits for "Former Cancer Policyholders"*

The Settlement provides a one-time cash benefit of $1,000 to eligible "Former Cancer Policyholders." Agreement § 3(a)(ii). Former Cancer Policyholders include all Settlement Class members, other than Past Claimants, who were insured under a Cancer Policy that lapsed or terminated for any reason prior to the date of the Court's Preliminary Approval Order. Any Former Cancer Policyholder who, after the date on which his or her Policy lapsed, is subsequently diagnosed with or treated for cancer, is eligible for this $1,000 benefit. The Notice provides clear instructions on how to submit a Claim Form to receive the benefit. The positive diagnoses or subsequent treatment can occur any time within ten years after the date of the

---

[8] "Past Claims" means all claims for Actual Charges Benefits processed under or subject to the Company's 2006 Updated Claims Procedures which have been received by the Company on or before the Court's Preliminary Approval Order.

Preliminary Approval Order. This benefit is paid to the former insured under the Cancer Policy, the surviving spouse, or the estate of the insured.

### 3. *Monetary Benefits for Certain Deceased Former Cancer Policyholders*

Under the Agreement, the surviving spouse or legal representative of a deceased Former Cancer Policyholder who is not eligible for the $1,000 benefit discussed above can apply for a cash benefit of $500 if the deceased Former Cancer Policyholder (1) was never diagnosed with cancer, or (2) was diagnosed with cancer, but did not receive treatment for cancer after the date his or her policy lapsed. Agreement § 3(a)(iii). This benefit is paid to the surviving spouse or estate of the deceased Former Cancer Policyholder.

The Settlement Agreement also provides a significant number of non-monetary benefits to Settlement Class members in the form of injunctive relief.

### 1. *One Year Premium Rate Freeze*

The Company has agreed not to file or apply for any premium rate increases with respect to Cancer Policies and Actual Charges Policies during the calendar year 2009, and the proposed Final Judgment contains a provision enjoining the Company from doing so. Premium increases submitted to state regulators prior to 2009 may take effect in 2009, but no additional applications for rate increases will be filed during the calendar year 2009, which will result in a period of at least 12 months without a premium increase for each Class member owning a Policy.

### 2. *Payment of "Actual Charges" Benefits*

The Company will be required to pay all claims for Actual Charges Benefits consistent with the definition of "actual charges" as the amount legally owed to the provider, which is consistent with the plain meaning of "actual charges" and the definition of "actual charges" in all

state statutes which have defined "actual charges."[9] Plaintiff argues that the Settlement is "manifestly improper" because the definition of "actual charges" contained in the Settlement "ratifies the Defendants' breach in contravention of this Court's March 6, 2008 Order." Response at 1-2. First, if plaintiff disagrees with the definition of "actual charges" contained in the Settlement, he can simply opt out and continue to litigate his individual claims in this case.[10] Second, the Settlement provisions addressing payment of benefits for of "actual charges" *benefit* the Settlement Class and are expected to save the Settlement Class tens of millions of premium dollars over the life of these policies.[11]

---

[9] To date, four states have passed statutes governing the payment of "actual charges" benefits in a specified disease policy. *See* OKLA. STAT. ANN. tit. 36, § 3651(A) (2006) ("actual charge" means "the amount actually paid by or on behalf of the insured and accepted by a provider for services provided"); S.C. CODE ANN. § 38-71-242(A)(1) (defining "actual charges" as the amount the healthcare provider agreed to accept or is obligated by operation of law to accept as payment in full for the goods or services provided to the insured); TEX. INS. CODE ANN. §1201.0601 (2005) ("the amount actually paid by or on behalf of the insured and accepted by a provider for services provided"); GA. CODE ANN. § 33-24-16.1(a) (2006) ("actual charge" means "the amount actually paid by or on behalf of an insured person and accepted as full payment by a health care provider or other designated person for the goods or services provided").

[10] Plaintiff's comments go to the merits and provide no basis for denying the stay or attacking the Settlement. Plaintiff is well aware that Life Investors disputes his contractual interpretation. Even if it were proper for this Court to evaluate the Settlement (which it is not), it is well established that a court reviewing a class action settlement "ought not try the case in the settlement hearings." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). As the Fifth Circuit explained: "It cannot be overemphasized that neither the trial court in approving the settlement nor this Court in reviewing that approval have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute. . . . Neither should it be forgotten that compromise is the essence of a settlement." *Id*. (internal citations omitted).

[11] Evidentiary submissions supporting the value of this and other Settlement benefits will be made to the court in the *Runyan* action. Suffice it to say that if plaintiffs' definition of "actual charges" were adopted, many, many policyholders would see premium increases or have to let their policies lapse.

### 3. *Increase of Certain Lifetime Maximum Benefits*

Effective upon Final Approval of the Settlement, for all services rendered on or after the date of Final Approval, all Cancer Policies issued by the Company that contain a lifetime maximum limit on the total amount of benefits for chemotherapy, radiation therapy, or blood benefits (a "lifetime maximum") will be deemed reformed and amended, so the lifetime maximum on these benefits is equal to three times the current amount of the lifetime maximum.

### 4. *Provisional Claim Payments*

The Settlement contains provisions to enable the Company to efficiently handle and make provisional or estimated benefit payments to insureds who do not submit complete information to allow the Company to determine the Actual Charges payable under the Policy. This provision applies as follows:

(a) If a Class member submits a claim for Actual Charges Benefits but fails to submit sufficient documentation to allow the Company to determine the Actual Charges payable, the Company shall have the authority and discretion, but not the obligation, to estimate and provisionally pay the Actual Charges Benefits based upon the amounts allowed by Medicare for the goods or services for which the claim was made, and upon subsequent timely receipt of adequate proof of loss, the Company shall adjust the benefit paid accordingly, if necessary.

(b) In the event a Class member makes a claim for Actual Charges Benefits and submits proof of loss showing the aggregate Actual Charges for all goods and services received on a particular service date or dates, but not itemized proof of loss showing the Actual Charges for the specific covered goods or services, the Company shall have the authority and discretion, but not the obligation, to determine and pay the Actual Charges Benefits by multiplying the List Price for the covered goods or services by a ratio equal to (A) the aggregate Actual Charges divided by (B) the aggregate List Prices.

11

Since a policyholder is not entitled to benefits until he or she submits proof of loss, this provision will benefit policyholders by allowing the Company to make estimated payments even when a proof of loss is not complete.

### 5. *Waiver of Claims Against Class Members*

Under the Settlement, the Company agrees to waive and not pursue any claims or counterclaims for the overpayment of benefits that the Company might otherwise have against any Class members.

In addition to the above benefits, the Company has agreed to pay attorneys' fees and litigation expenses, subject to Court approval, up to $3,500,000, separately without reducing the benefits otherwise available to Class members. The Company has also agreed to pay separately: (1) the cost of printing and mailing the Notice; (2) the cost of the Publication Notice; (3) the cost of the Settlement website; and (4) the cost and expenses of the Settlement Administrator.

There is no question that the Settlement provides substantial and valuable benefits to the Class members. Moreover, the Settlement in *Runyan* is more favorable than two other settlements dealing with the same issues that have already received *final* approval. In *Skelton v. Central United Life Insurance Co.*, Case No. CV-2008-900178 (Ala. Cir. Ct., Mobile County), the court granted final approval to a national class action settlement that generally provided monetary benefits to a sub-class of "past claimant" policyholders equal to 30% of the actual charge benefits previously paid, up to a $5,000 cap (or their policy cap, if lower).[12] This is significantly less than the benefits made available to Past Claimants in the *Runyan* Settlement. Although the *Skelton* settlement limited premium increases to "the extent required to achieve and

---

[12] A copy of the Final Judgment Approving Class Action Settlement, entered October 9, 2008 in *Skelton*, is attached hereto as Exhibit C.

maintain a target claims loss ratio of 86%, effective November 1, 2008" (*id*. at p. 6), there was no agreement to a premium rate freeze for any definite time period. The settlement provided for future claims to be based on the insurer's corrected claims procedures, similar to the *Runyan* Settlement.

In *Robertson v. Liberty National Life Insurance Co.*, Case No. CV-92-021 (Ala. Cir. Ct., Barbour County), Liberty National faced claims over premium rate increases for its cancer insurance policies that were allegedly caused primarily by the overpayment of benefits for "actual charges." The parties reached a settlement which was finally approved on May 6, 2008. This settlement included an injunction similar to Section 3(b)(iii) of the Settlement Agreement in *Runyan*, which required the insurer to pay future benefits for "actual charges" consistent with the amount the provider actually charges and accepts as full payment. The court found that a provider's "list charges" were "neither 'losses' nor 'expenses,'" and that the "actual charge" and "expenses incurred" language of the policies "unambiguously limit benefit[s] to the amounts actually accepted as full payment by the provider."[13] Unlike the Settlement Agreement in *Runyan*, however, the *Robertson* settlement included no monetary benefits comparable to those provided for Past Claimants and Former Cancer Policyholders under the proposed Settlement in *Runyan*.

### IV. A Stay In This Case Would Result In No Harm To Plaintiff Or Any Other Policyholder

Plaintiff's suggestion that a stay in this case would result in some kind of harm to the plaintiff or to any other policyholders is false. First, it is absolutely clear that the plaintiff has the

---

[13] *Robertson v. Liberty National Life Ins. Co.*, Case No. CV-92-021 (Ala. Cir. Ct., Barbour County), Findings of Fact and Conclusions of Law at pp. 41-42, filed May 6, 2008, a copy of which is attached hereto as Exhibit D.

13

Case 1:07-cv-00016    Document 302    Filed 07/02/2009    Page 14 of 16

right and ability to "opt out" of and exclude himself from the Settlement and continue to pursue his individual claims in this case. A stay of the class proceeding here does not harm the plaintiff. Second, the plaintiff has demonstrated no harm whatsoever to any other policyholders. Notice has been sent to all policyholders who could be affected by the Settlement. Thus, if any policyholder disapproves of the Settlement he or she has the right to file an objection to the Settlement with the Circuit Court in *Runyan* or "opt out" of the Settlement. If the Settlement is approved, any policyholders who are members of the Settlement Class will enjoy the benefits of the Settlement.

## **CONCLUSION**

For the reasons set forth above and in the Motion to Stay, the Court should enter an Order staying the class related proceedings in this action until the Circuit Court in the *Runyan* action makes its determination regarding Final Approval of the Settlement.

Respectfully submitted,

/s/ Markham R. Leventhal

| | |
|---|---|
| Thomas H. Dundon (No. 004539) | Markham R. Leventhal |
| A. Scott Ross (No. 015634) | Irma Reboso Solares |
| NEAL & HARWELL, PLC | Julianna Thomas McCabe |
| 150 Fourth Avenue, North | Jason Patrick Kairalla |
| Suite 2000 | JORDEN BURT LLP |
| Nashville, TN 37219 | 777 Brickell Avenue, Suite 500 |
| Tel: (615) 244-1713 | Miami, FL 33131 |
| Fax: (615) 726-0573 | Tel: (305) 371-2600 |
| | Fax: (305) 372-9928 |

*Attorneys for Life Investors Insurance Company of America and AEGON USA, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that on the 25th day of June, 2009, I electronically filed the foregoing "Life Investors' Reply Memorandum in Support of Motion to Stay Class Related Proceedings" with the Clerk of Court using the CM-ECF system, which will automatically send email notification of such filing to the following attorneys of record:

Eric L. Buchanan, Esq.
Eric Buchanan & Associates, PLLC
414 McCallie Avenue
Chattanooga, TN 37402
ebuchanan@buchanandisability.com

Thomas O. Sinclair, Esq.
M. Clay Williams, Esq.
Andrew P. Campbell, Esq.
Leitman, Siegal, Payne & Campbell, P.C.
2100-A SouthBridge Parkway, Suite 450
Birmingham, AL 35209
tsinclair@cgl-law.com
cwilliams@cwp-law.com
acampbell@cgl-law.com
jwallis@cgl-law.com

W. Daniel Miles, III, Esq.
John E. Tomlinson, Esq.
Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
218 Commerce Street
Montgomery, AL 36103
dee.miles@beasleyallen.com
john.tomlinson@beasleyallen.com

*Attorneys for Plaintiff*

/s/ Markham R. Leventhal

178646