# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### COLUMBIA DIVISION

|  |  |  |
|---|---|---|
| ANTHONY E. GOOCH, individually and on behalf of all similarly situated individuals, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 1:07-0016 |
| v. | ) ) | Judge Haynes |
| LIFE INVESTORS INSURANCE COMPANY OF AMERICA; and AEGON USA INC., | ) ) ) ) | |
| Defendants. | ) | |

---

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF UNDER THE ALL WRITS ACT

---

THOMAS H. DUNDON (No. 004539)
A. SCOTT ROSS (No. 015634)
**NEAL & HARWELL, PLC**
150 Fourth Avenue, North
Suite 2000
Nashville, TN 37219
Telephone: (615) 244-1713
Facsimile: (615) 726-0573

MARKHAM R. LEVENTHAL
IRMA REBOSO SOLARES
JULIANNA THOMAS MCCABE
**JORDEN BURT LLP**
777 Brickell Avenue, Suite 500
Miami, FL 33131
Telephone (305) 371-2600
Facsimile: (305) 372-9928

*Attorneys for Defendants Life Investors Insurance Company of America and AEGON USA, Inc.*

# TABLE OF CONTENTS

*Page*

INTRODUCTION ...................................................................................................................1

RELEVANT FACTUAL AND PROCEDURAL HISTORY .......................................................4

    A.    The Litigation History of the *Runyan* Case and Extensive Settlement
           Discussions ..........................................................................................................4

    B.    The *Runyan* Settlement ........................................................................................6

    C.    The Preliminary Approval Order And Notice To The Settlement Class ................8

    D.    The Procedural Posture Of This Case ...................................................................9

ARGUMENT ......................................................................................................................10

I.     PLAINTIFF IS NOT ENTITLED TO AN INJUNCTION UNDER THE ALL
       WRITS ACT AND THE REQUESTED RELIEF IS BARRED BY THE ANTI-
       INJUNCTION ACT ....................................................................................................10

    A.    In This Circuit, The "In Aid Of Jurisdiction Exception" Does Not Apply
           When Federal And State Courts Are Presiding Over Parallel *In Personam*
           Actions. ...............................................................................................................12

    B.    Even Assuming The "In Aid Of Jurisdiction Exception" Could Apply To
           *In Personam* Actions, It Should Not Be Applied In The Circumstances Of
           This Case .............................................................................................................13

II.    PLAINTIFF'S ARGUMENTS IN SUPPORT OF AN INJUNCTION ARE
       WITHOUT MERIT ....................................................................................................16

    A.    Plaintiff's Authorities Are Entirely Inapposite ....................................................16

    B.    The *Runyan* Settlement Is Not Collusive ............................................................19

    C.    The *Runyan* Settlement Does Not Enjoin Plaintiff From Prosecuting His
           Case In This Court ...............................................................................................20

    D.    The *Runyan* Settlement Agreement Will Not "Undo" This Court's "Rule
           of The Case" As To The Meaning Of Actual Charges .........................................21

i

# TABLE OF CONTENTS

(Continued)

E.  The Anti-Injunction Act Precludes Any Injunction That Would Enjoin Defendants From Completing The Settlement; The *Perkins* Case Is Entirely Inapposite ................................................................................................. 23

CONCLUSION ................................................................................................................ 24

Defendants Life Investors Insurance Company of America ("Life Investors") and AEGON USA, Inc. hereby respond to "Plaintiff's Emergency Motion for Injunctive Relief Under the All Writs Act" (D.E. 291) (the "Motion for Injunctive Relief" or "Motion"). For the reasons set forth below, plaintiff's Motion is without merit and should be denied.

<u>**INTRODUCTION**</u>

Plaintiff has filed a Motion asking this Court to enter an extraordinary order enjoining a state Circuit Court in Arkansas from proceeding to adjudicate the adequacy and fairness of a Class Action Settlement (the "Settlement") that was preliminarily approved on April 23, 2009 by the Arkansas court in *Runyan v. Transamerica Life Insurance Co.*, Case No. CV-09-2066-3 (Ark. Circuit Ct., Pulaski County) (the "*Runyan* action"). Plaintiff seeks this extraordinary relief notwithstanding that, only days after filing this Motion, he excluded himself from the *Runyan* Settlement and is no longer a Settlement Class member. Plaintiff's Motion seeks to sweep aside months of legitimate, expensive, and time consuming settlement efforts dating back to October of 2008 by parties in multiple actions, including four class actions and two individual actions pending in Arkansas, Mississippi, Michigan, and Louisiana. Plaintiff's Motion would nullify a Class Action Settlement Notice sent to over two hundred thousand current and former policyholders, and would deny millions of dollars of benefits to Settlement Class members.

As a matter of law, the relief sought by plaintiff in his Motion is prohibited by the Anti-Injunction Act, 28 U.S.C. § 2283, which *restricts* the All Writs Act and "is designed to preclude unseemly interference with state court proceedings."[1] The Anti-Injunction Act bars a federal

---

[1] *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1100 (9th Cir. 2008) (reversing injunction which prohibited defendant companies from negotiating settlement with plaintiffs' counsel in other actions); *Atlantic Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970) (Anti-Injunction Act creates "an absolute prohibition against enjoining
*(continued on next page)*

1

court from enjoining a state court, or enjoining parties from participating in a state court action, subject to three narrow exceptions, none of which apply here. No federal court has ever held that an exception to the Anti-Injunction Act exists to enjoin a state court from proceeding with a class action settlement under circumstances similar to those presented here. The fact that this action may have been filed before the state court action creates no such exception. Even a cursory review of the authorities cited by plaintiff shows that they are entirely inapposite. Unlike the cases cited by plaintiff, this action is not a complex MDL proceeding and there is no *federal* settlement pending in this action that needs to be "protected" under the All Writs Act. Indeed, there have been no class settlement negotiations in this action at all. Nor is there any final judgment in this action that could justify post-judgment injunctive relief. Plaintiff's Motion plainly asks this Court to violate a federal statute without justifiable legal support.

Moreover, the "two reasons" given by plaintiff as to why the Settlement purportedly "threatens the jurisdiction of this Court" (Motion at 4) do not withstand analysis and do not justify use of the All Writs Act. First, plaintiff's contention that the *Runyan* Settlement "enjoin[s] Plaintiff's Counsel from complying with a lawful Orders [sic] of this Court" is frivolous. Motion at 3, 6-7. The Preliminary Approval Order in *Runyan* prohibits Settlement Class members from frustrating the purposes of the Settlement by pursuing other actions containing Released Claims "unless and until" they have opted out of the Settlement.[2] Plaintiff filed this Motion on June 23, 2009, but has failed to inform the Court that, two days later, he

state court proceedings, unless the injunction falls within one of three specifically defined exceptions").

[2] A copy of the Preliminary Approval Order entered in *Runyan* is included as Exhibit 1 in the Appendix of Exhibits in Support of Defendants' Response in Opposition to Plaintiff's Motion for Injunctive Relief Under the All Writs Act (hereinafter "App."). Capitalized terms not otherwise defined in this memorandum have the same meanings as defined in the Preliminary Approval Order and Class Action Settlement Agreement.

2

signed a request for exclusion and opted out of the *Runyan* Settlement.[3]  Accordingly, the Preliminary Approval Order in *Runyan* has absolutely no effect on plaintiff, and his entire argument that it prohibits him from doing anything in this action is moot.

Similarly unsupportable is plaintiff's second argument that the Settlement "purports to divest this Court of its existing jurisdiction" because it is "contrary to this Court's existing rule of the case" (Motion at 3-4) and it would "un-do" this Court's "rule of the case" and "re-write Mr. Gooch's policy."  Motion at 8.  Because Mr. Gooch has opted out and excluded himself from the *Runyan* Settlement, the Settlement does not affect him and cannot "un-do" any ruling regarding his policy in this action.  His argument that the Settlement would "re-write" his policy is baseless.  The Settlement has no effect on his policy.  To the extent that plaintiff is complaining about the Settlement as it relates to other policyholders, all such policyholders were given Notice and a choice regarding whether to participate in the Settlement.  The Settlement has no effect on the policies of individuals who chose to opt out, and plaintiff has no right to seek an injunction which would prevent policyholders who chose to participate in the Settlement from receiving their Settlement benefits.  Nothing in the Settlement "threatens" this Court's jurisdiction or justifies relief under the All Writs Act.

In sum, plaintiff's Motion is prohibited by the Anti-Injunction Act, and the case law which he cites is not remotely on point.  Both of plaintiff's principal arguments in support of an injunction fail.  The false conflict which he created by delaying his request for exclusion was rendered moot when he opted-out from the Settlement just days after filing this Motion.  Nor does his false and unsupportable contention that the Settlement in *Runyan* was "collusive" create any right to injunctive relief.  The record is clear that the Settlement was negotiated at arm's

---

[3]  A copy of the plaintiff's Exclusion Request dated June 25, 2009 and sent to the Settlement Administrator in *Runyan* is included in the Appendix as Exhibit 2.

length over a period of many months. Contrary to plaintiff's Motion, the parties in this case are free to negotiate settlement with parties and counsel in other cases, and plaintiff has no right to use the All Writs Act to obstruct or interfere with the approval process of a legitimate class action settlement achieved in another case. The Motion should unquestionably be denied.

<u>**RELEVANT FACTUAL AND PROCEDURAL HISTORY**</u>

A.   **The Litigation History of the *Runyan* Case and Extensive Settlement Discussions**

While plaintiff notes that the *Runyan* action was filed on March 13, 2009, he fails to mention that Class Counsel in the *Runyan* action were involved for nearly two years in substantial, adversarial litigation with Life Investors and Transamerica in multiple actions involving supplemental cancer insurance policies prior to the Settlement.   This litigation includes four class actions and two individual actions pending in various states including Arkansas, Mississippi, Michigan, and Louisiana, at the time of the Settlement.  As expressly set forth in the Class Action Settlement Agreement (the "Settlement Agreement"), the *Runyan* action consolidates these six earlier actions. *See* Settlement Agreement § 1(r) (defining the "Litigation").[4]

Class Counsel in *Runyan* were lead counsel in *Pipes v. Life Investors Ins. Co. of Am.*, Case No. 1:07-cv-00035-SWW, filed on June 6, 2007 in the Eastern District of Arkansas, a mere three months after plaintiff filed the present action in this Court.  Class Counsel in *Runyan* were also lead counsel in three additional class actions against Life Investors or its successor

---

[4] A copy of the Class Action Settlement Agreement in *Runyan* is included as Exhibit 3 in the Appendix.  A copy of the Settlement Agreement is also publicly available on the Settlement website at www.SupplementalInsuranceSettlement.com.

Transamerica.[5]  Following extensive discovery and a year and a half of contentious litigation, including written discovery, document production, depositions, and third party discovery, the parties agreed to meet on October 6, 2008 to discuss the issue of settlement.[6]  The *Pipes* action was far more advanced than this action, and class certification briefing in the *Pipes* case was completed on October 22, 2008.

The parties in the six cases brought by Class Counsel agreed to attend a mediation to discuss the possibility of a class action settlement.  On November 20 and 21, 2008, the parties engaged in a two-day confidential mediation before former United States District Court Judge Nicholas H. Politan pursuant to a Mediation Agreement provided by Judge Politan.  Leventhal Decl. ¶ 6.  Judge Politan has extensive experience in mediating class action settlements.  The parties devoted substantial time and resources and spent thousands of dollars preparing for and attending the mediation.  While the November 2008 mediation did not result in a settlement, the parties continued to negotiate.  *Id.*  After months of additional arm's-length negotiations, the parties reached a preliminary understanding on the major terms of a global class action settlement, subject to completion and execution of a comprehensive class action settlement agreement.  *Id.* ¶ 7.[7]

---

[5] In addition to *Pipes*, the Settlement includes the following three additional class actions: *Runyan v. Transamerica Life Ins. Co.*, Case No. 6:08-cv-6034, pending in the Western District of Arkansas; *Ross v. Life Investors Ins. Co. of Am.*, Case No. 4:08-cv-00064, pending in the Southern District of Mississippi; and *Weidman v. Life Investors Ins. Co. of Am.*, Case No. 2:08-cv-12870, pending in the Eastern District of Michigan.  *See* Settlement Agreement § 1(r).

[6] *See* Declaration of Markham R. Leventhal ¶ 5 ("Leventhal Decl."), included in the Appendix as Exhibit 4.

[7] On November 25, 2008, the district court in *Pipes* entered an order denying class certification.  *Pipes v. Life Investors Ins. Co. of America*, 254 F.R.D. 544 (E.D. Ark. 2008).  Class Counsel in *Runyan* filed a motion for reconsideration.  They also had the ability to pursue class certification in multiple other cases.

On March 13, 2009, Class Counsel filed a Class Action Complaint in the *Runyan* action. The Class Action Complaint consolidated the claims of all plaintiffs in the six other related actions brought by Class Counsel. *See* App. Exhibit 4-A. On April 3, 2009, the defendants filed their answers to the Class Action Complaint in *Runyan*. Leventhal Decl. ¶ 8. On or about April 17, 2009, the parties finalized their Class Action Settlement Agreement, which was executed by the respective parties and filed with the Arkansas Circuit Court on April 20, 2009. *Id*. ¶ 9. After briefing and a hearing, the Circuit Court granted preliminary approval to the Class Action Settlement on April 23, 2009.[8]

Joint Motions to stay pending final approval of the Settlement, along with copies of the *Runyan* Court's Preliminary Approval Order, were filed with all six federal courts in which the actions encompassed by the *Runyan* Settlement were pending. All six federal courts have stayed their proceedings pending final approval of the *Runyan* Settlement.[9]

## B.     The *Runyan* Settlement

Plaintiff has presented no evidence to this Court of "collusion" in the negotiation of the Settlement, nor could he, and any insinuations to the contrary are unsupportable. Leventhal Decl. ¶ 12. The Settlement was negotiated over a period of more than six months in an adversarial setting with the assistance of a highly respected mediator. *Id.* ¶ 6. Moreover, the Settlement provides millions of dollars of valuable benefits to Settlement Class Members.

---

[8] Plaintiff falsely states that "[r]eview of the Docket Sheet in [*Runyan*] does not reflect that these Defendants informed the Arkansas State Court of the existence of this action." Motion at 2. In fact, this case was expressly cited on page 12 of Defendants' Memorandum in Support of Preliminary Approval. App. Exhibit 4-C. Given that the existence of this case, however, does not in any way prevent the *Runyan* court from granting preliminary approval to a properly negotiated class action settlement, plaintiff's argument is not only false, but misguided.

[9] Copies of the Orders staying these actions are included in the Appendix as composite Exhibit 5.

Settlement Class members who meet the definition of a "Past Claimant" may claim a cash payment equal to forty percent (40%) of the difference between the Actual Charges and the List Prices for the Past Claims up to (A) $15,000.00, or (B) any maximum benefit amount as specified in the Class member's Actual Charges Policy (not including any increase in such maximum under the Settlement).[10] The Settlement also provides a cash benefit of $1,000 available to eligible "Former Cancer Policyholders," and a cash benefit of $500 available to the surviving spouse or legal representative of certain deceased Former Cancer Policyholders. Settlement Agreement §§ 3(a)(ii), (iii).[11]

The Settlement Agreement also provides significant benefits in the form of injunctive relief. The one-year premium rate freeze provides several million dollars of benefits to the Settlement Class. The injunction requiring the Company to pay all claims for Actual Charges Benefits based on the amount actually owed and accepted by the provider as payment in full, is consistent with the definition of "actual charges" in all state statutes which have defined "actual charges."[12] This provision is expected to save the Settlement Class tens of millions of premium

---

[10] Any suggestion that this benefit is "illusory" or provides minimal relief is false and unsupportable. The Company has estimated that over 85% of Past Claimants will be unaffected by the $15,000 cap.

[11] A more detailed discussion of the many benefits provided to Settlement Class members under the Agreement is set forth in Life Investors' Reply Memorandum in Support of Motion to Stay Class Related Proceedings. D.E. 302. The "adequacy" or "fairness" of the Settlement is an issue for the Circuit Court in *Runyan*.

[12] Four states have passed statutes governing the payment of "actual charges" benefits in a specified disease policy. *See* OKLA. STAT. ANN. tit. 36, § 3651(A) (2006) ("actual charge" means "the amount actually paid by or on behalf of the insured and accepted by a provider for services provided"); S.C. CODE ANN. § 38-71-242(A)(1) (defining "actual charges" as the amount the healthcare provider agreed to accept or is obligated by operation of law to accept as payment in full for the goods or services provided to the insured); TEX. INS. CODE ANN. §1201.0601 (2005) ("the amount actually paid by or on behalf of the insured and accepted by a provider for services provided"); GA. CODE ANN. § 33-24-16.1(a) (2006) ("actual charge" means

*(continued on next page)*

dollars over the life of these policies. The Company also has agreed to pay the costs of the Notice, the Publication Notice, the Settlement website, the Settlement Administrator, and attorneys' fees and litigation expenses, subject to Court approval, separately, without reducing benefits otherwise available to the Class. In addition, the Settlement in *Runyan* is *more favorable* than two other cancer policy settlements that have already received *final* approval by other courts: *Skelton v. Central United Life Insurance Co.*, Case No. CV-2008-900178 (Ala. Cir. Ct., Mobile County); and *Robertson v. Liberty National Life Insurance Co.*, Case No. CV-92-021 (Ala. Cir. Ct., Barbour County). Plaintiff's counsel in this case was class counsel in the *Robertson* settlement and advocated a provision for paying "actual charges" benefits consistent with the *Runyan* Settlement.[13]

### C. The Preliminary Approval Order And Notice To The Settlement Class

On April 23, 2009, the *Runyan* Court entered its Preliminary Approval Order appointing Epic Systems, Inc., a nationally recognized class action administration firm, as Settlement Administrator, and requiring the Settlement Administrator: (1) to print and send Notice to the Settlement Class within 21 days (by May 14, 2009); (2) to publish the Court-approved Publication Notice in *USA Today*; and (3) to create a Settlement website. Pursuant to the Preliminary Approval Order, on May 14, 2009, Notices were mailed to 250,136 Settlement Class members at a cost of $187,852.[14]  On May 26 and 28, 2009, Publication Notice was published

---

"the amount actually paid by or on behalf of an insured person and accepted as full payment by a health care provider or other designated person for the goods or services provided").

[13] *See infra* pp. 22-23 (discussing *Robertson* settlement). A discussion of the *Skelton* and *Robertson* settlements can also be found in Life Investors' Reply Memorandum in Support of Motion to Stay Class Related Proceedings. D.E. 302, at pp. 12-13.

[14] Affidavit of Faye F. Hutsell ¶ 6 ("Hutsell Aff."). A copy of the Hutsell Affidavit is included in the Appendix as Exhibit 6. A copy of the Notice is attached to the Hutsell Affidavit as Exhibit A. The written Notice was structured to follow the style recommended by the Federal

*(continued on next page)*

twice in *USA Today*, at a cost of $25,075. Hutsell Aff. ¶ 7. The Settlement Administrator also established an Interactive Voice Response ("IVR") system along with live operator support, and created an Internet website (www.SupplementalInsuranceSettlement.com) with access to the Notice, Claim Forms, the Settlement Agreement, and other documents. *Id.* ¶¶ 8-9. As of July 9, 2009, Transamerica has incurred approximately $290,201 of expenses for the Settlement Administrator's various services pursuant to the Settlement. Hutsell Aff. ¶ 11.

The Preliminary Approval Order contains an injunction prohibiting Settlement Class members who have not opted out of the Settlement Class from taking certain actions to frustrate the purpose of the Settlement. This injunction applies *only* to Settlement Class Members who have not excluded themselves from the Settlement. *See* Preliminary Approval Order ¶ 17. Plaintiff Anthony Gooch has opted out of the *Runyan* Settlement Class. *See* Exclusion Request, App. Exhibit 2. Thus, the injunction in the Preliminary Approval Order does not apply to plaintiff, and his claims in this case are not affected by the Preliminary Approval Order or compromised by the *Runyan* Settlement.[15]

### D. The Procedural Posture Of This Case

This case was filed by Gooch on March 30, 2007. The *Pipes* case, which is one of the cases included within the *Runyan* Settlement, was filed three months later on July 20, 2007. Although plaintiff in this case has been well aware of other pending actions involving Life

---

Judicial Center in a simplified Question and Answer format with a table of contents to help laypersons easily find answers to specific questions they might have about the Settlement.

[15] On June 17, 2009, Life Investors filed a Notice of Non-Compliance with the Court's Preliminary Approval Order in *Runyan* which explained, among other things, that Gooch was pursing class related claims even though he had not opted out of the *Runyan* Settlement Class. This non-compliance with the Preliminary Approval Order in *Runyan* was self-created by Gooch, who chose to delay his request for exclusion and remain in the Settlement Class, while at the same time lodging objections and continuing to litigate in this Court. Because Gooch has now opted out of the *Runyan* Settlement Class, his arguments are now moot.

Investors' cancer insurance policies, plaintiff had never before attempted to "enjoin" them. Although his case has been pending for more than two years, plaintiff has never bothered to file a complete motion for class certification. Instead, he filed an incomplete motion seeking certification of a single count of his five-count complaint. His motion for class certification was denied without prejudice on February 19, 2009. D.E. 227. After the *Runyan* Settlement had been negotiated, completed, and preliminarily approved, the plaintiff here renewed his motion for class certification of a single count on May 22, 2009. D.E. 263. Defendants filed their response on June 30, 2009. D.E. 297.

Plaintiff's incomplete class certification motion remains pending, subject to multiple discovery disputes. There is no pending settlement in this case, and the parties have engaged in no class action settlement discussions.

## ARGUMENT

### I. PLAINTIFF IS NOT ENTITLED TO AN INJUNCTION UNDER THE ALL WRITS ACT AND THE REQUESTED RELIEF IS BARRED BY THE ANTI-INJUNCTION ACT

The All Writs Act provides in relevant part that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). As the Supreme Court has admonished, the All Writs Act should be used "sparingly and only in the most critical and exigent circumstances." *Wisconsin Right to Life, Inc. v. Fed. Election Comm'n*, 542 U.S. 1305, 1306 (2004) (citation omitted).

Moreover, the Anti-Injunction Act creates "an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions." *Atlantic Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970). The Act provides that:

> A Court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283. The Anti-Injunction Act rests on the "fundamental constitutional independence of the States and their courts," and its purpose is to make the dual system of state and federal courts work without "needless friction." *Atlantic Coast Line*, 398 U.S. at 286, 287; *Negrete v. Allianz Life Ins. Co. of North America*, 253 F.3d 1091, 1100 (9th Cir. 2008) (The Act "is designed to preclude unseemly interference with state court proceedings.")

"Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state court to proceed in an orderly fashion to finally determine the controversy." *Atlantic Coast Line*, 398 U.S. at 297. Moreover, "it is settled that the prohibition of [the Anti-Injunction Act] cannot be evaded by addressing the order to the parties." *Atlantic Coast Line*, 398 U.S. at 287.

Here, the plaintiff seeks injunctive relief ordering:

a. That the Defendants and their counsel be enjoined from pursuing final approval of the proposed Arkansas Settlement and withdraw their submission of the same, or alternatively be required to stay the approval process in the Arkansas Settlement Action, *Runyan, et al. v. Transamerica Life Insurance Company, et al.* (Case No. CV-09-2066-3);

b. That the Arkansas state court be enjoined from granting final approval to the Arkansas Settlement and be required to set aside its preliminary approval of said settlement to preserve this Court's lawful jurisdiction over these proceedings, including pending class related materials.

Motion at 10-11. Plaintiff argues that this extraordinary injunctive relief may be issued under the All Writs Act and that it is not precluded by the Anti-Injunction Act because it is "necessary in aid of the court's jurisdiction." Contrary to plaintiff's suggestion, the Supreme Court has explained that the "in aid of jurisdiction" exception may only be applied where "necessary to

prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic Coast Line*, 398 U.S. at 295. Under the circumstances of this case, well-settled authority precludes application of the "in aid of jurisdiction" exception to enjoin the Settlement.

**A.      In This Circuit, The "In Aid Of Jurisdiction Exception" Does Not Apply When Federal And State Courts Are Presiding Over Parallel *In Personam* Actions**

In *Martingale LLC v. City of Louisville*, 361 F.3d 297, 302 (6th Cir. 2004), the Sixth Circuit explained that "Courts have applied the ["in aid of jurisdiction"] exception in only two scenarios:  where the case is removed from the state court, and where the federal court acquires in rem or quasi in rem jurisdiction over a case involving real property before the state court does."  *See also Warner v. Fuller Rehab. & Consulting Servs.*, 2005 WL 1490071 (E.D. Tenn. June 23, 2005) (noting that "in aid of jurisdiction" exception has been applied in only two scenarios).  Relying on *Vendo Co. v. Lektro-verd Corp.*, 433 U.S. 623, 641-42 (1977), the Sixth Circuit explained that "[t]he traditional notion is that in personam actions in federal and state courts may proceed concurrently, without interference from either court, and there is no evidence that the exception to [the "Anti-Injunction Act"] was intended to alter this balance."  *Martingale*, at 303 n.3.  Thus, the *Martingale* Court concluded that because "jurisdiction over these parties is based on *in personam*, rather than *in rem*, principles . . ., the 'in aid of jurisdiction exception' does not apply."  *Id*.; *see also Zurich Am. Ins. Co. v. Superior Court for State of Cal.*, 326 F.3d 816, 825 (7th Cir. 2003) ("Historically, this exception applied only to *in rem* rather than *in personam* proceedings.").

Thus, the Sixth Circuit has never applied the "in aid of jurisdiction" exception to actions based on in personam jurisdiction in general or to cases involving parallel class actions in particular.  In this case, jurisdiction over the parties in both *Gooch* and *Runyan* is based upon *in*

12

*personam*, rather than *in rem*, principles. Under the *Martingale* decision, the "exception does not apply" in these circumstances. 361 F.3d at 303 n.3. Accordingly, plaintiff's Motion is unsupported by any Sixth Circuit authority and should be denied.[16]

**B.      Even Assuming The "In Aid Of Jurisdiction Exception" Could Apply To *In Personam* Actions, It Should Not Be Applied In The Circumstances Of This Case**

In *Negrete v. Allianz Life Ins. Co. of North America*, 523 F.3d 1091 (9th Cir. 2008), the Ninth Circuit recently reversed a federal district court's order enjoining an insurance company from conducting settlement negotiation in similar class actions filed in other state and federal courts. The *Negrete* court explained:

> In general, the necessary-in-aid-of-jurisdiction exception applies to in rem proceedings where the federal court has jurisdiction over the res and state court proceedings might interfere with that. *See Vendo Co.*, 433 U.S. at 641-42, 97 S.Ct. at 2893. But that principle does not authorize interference with parallel in personam state actions merely because the state courts might reach a conclusion before the district court does.

*Id.* at 1101. The *Negrete* court further explained that the fact that "the actions of a state court might have some effect on the federal proceedings does not justify interference." *Id.* at 1101. "And the mere fact that a state court may reach a conclusion that differs from what a federal court would prefer does not change the result." *Id.* at 1102.

As the *Negrete* court explained, orders enjoining litigants from proceeding with parallel state court class actions have been upheld only in rare cases where the federal actions were so advanced that the state court proceeding would interfere with the federal court's ability to

---

[16] Other circuits have recognized a very narrow third application in the context of complex MDL or class actions where a settlement was imminent or a judgment had been entered in the federal action. *See, e.g., In re Gen. Motors Corp. Pick Up Truck Fuel Tank Prods. Liab. Litig.*, 134 F.3d 133, 145 (3d Cir. 1998) (noting Third Circuit has "fashioned a third, and narrow, application of the 'necessary in aid of its jurisdiction' exception in the context of a complex class action which was also an MDL case where a settlement was imminent . . ."). As shown below, that narrow application could not possibly apply here even if the Sixth Circuit were to adopt it.

13

effectuate a class settlement or a judgment. *Negrete*, 523 F.3d at 1102; *In re Gen. Motors Corp.*, 134 F.3d at 145 (same). In fact, the select few All Writs Act injunctions which have been upheld involve large complex MDL proceedings or federal class actions in which: (1) a settlement was conditionally approved or imminent in the federal court; and/or (2) an existing federal court judgment was threatened by the state action. *See, e.g., In re Diet Drugs*, 282 F.3d 220, 239 (3d Cir. 2002) (complex MDL class action where class provisionally certified and settlement preliminarily approved by the federal court); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1018, 1024-25 (9th Cir. 1988) (class action settlement preliminarily approved by the federal court, and state court action would opt out a whole subclass); *Battle v. Liberty Nat'l Life Ins. Co.*, 877 F.2d 877, 880-81 (11th Cir. 1989) (federal class action case had reached judgment stage and state court litigation would interfere with administration of post-judgment proceedings); *In re Baldwin-United Corp.*, 770 F.2d 328, 337-38 (2d Cir. 1985) (MDL class action where class certified in federal court, settlement agreements reached, and only district court approval of those remained); *Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 195, 202-04 (3d Cir. 1993) (class action settlement in federal court imminent and state court settlement attempted to dictate terms of federal settlement); *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 501 F.2d 383, 383-84 (4th Cir. 1974) (per curiam) (class action case had reached judgment and state court litigation would interfere with carrying out the terms of that judgment).

As the Third Circuit explained in a similar context in *Grider v. Keystone Health Plan Central, Inc.*, 500 F.3d 322 (3d Cir. 2007), the exception to the Anti-Injunction Act is generally used to protect a pending settlement *in the federal court*:

> It is clear that the Act is generally used to prohibit activities in another court that threaten to undermine a pending settlement in the enjoining court. When the act has been used to *block* settlement efforts in another court, it is typically because a party was deliberately using that forum to circumvent a pending settlement in the enjoining court.

*Id.* at 330 (citations omitted) (emphasis in original).  Similarly, the *Negrete* court reversed the district court's injunction because the case was not an MDL case, and no class settlement was imminent in the federal court.  *Negrete*, 523 F.3d at 1102 ("[t]his was not an MDL case; discovery was not complete; no class settlement was imminent, in fact, as far as the record shows no serious settlement progress had been made.")

The same is true here.  This is not an MDL case, and no class settlement is imminent in this case.  In fact, there have been no class settlement negotiations in this case.  Leventhal Decl. ¶ 13.  Moreover, *Runyan* is not a collusive settlement, but was the result of extensive settlement negotiations after discovery and is a global resolution of six related cases which had been pending in various states.  *Id.* ¶¶ 5-12.

Accordingly, the "in aid of jurisdiction" exception has no application here.  *See Negrete*, 523 F.3d at 1102; *see also In re Gen. Motors Corp.*, 134 F.3d at 145 (denying request to enjoin parallel state court action where no federal settlement was imminent); *Zurich Am. Ins. Co.*, 326 F.3d at 826 (denying request to enjoin parallel state court proceedings when there were no federal court orders to protect); *RC2 Corp. Toy Lead Paint Prods. Liab. Litig.*, 2008 WL 548772 (N.D. Ill. Feb. 20, 2008) (denying request to enjoin parallel state court proceeding where federal MDL was not far advanced and no federal settlement was pending or imminent); *Vallier v. Am. Fid. Assurance Co.*, 2008 WL 4330028 (D. Kan. Sept. 16, 2008) (denying request to enjoin parallel state court proceeding where '[n]o settlement is 'directly in prospect' or even in the negotiation stage and thus, it cannot be said that a settlement was being 'circumvented or co-opted"); *Annunziato v. eMachines Inc.*, 2006 WL 5014567 (C.D. Cal. July 24, 2006) (denying request to enjoin state court proceeding where federal action had not settled and federal court

"has not issued a judgment upon which the . . . state court would infringe.").[17]

## II. PLAINTIFF'S ARGUMENTS IN SUPPORT OF AN INJUNCTION ARE WITHOUT MERIT

Plaintiff offers several arguments in support of his request for an injunction. As shown below, none of them have any merit.

### A. Plaintiff's Authorities Are Entirely Inapposite

Plaintiff contends that "federal courts have routinely used the All Writs Act to prevent parties from derailing class litigation by creating new actions in state courts and depriving federal courts of their jurisdiction." Motion at 6. Plaintiff's argument is misleading, and the cases he cites are inapposite. Contrary to plaintiff's suggestion, All Writs Act injunctions are exceedingly rare in the context of parallel federal and state class actions. And, all of the authorities cited by plaintiff are entirely inapplicable because they involve large and complicated MDL proceedings or federal class actions in which (1) settlements were pending or imminent; and/or (2) judgments had been entered.

For example, *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1332 (5th Cir. 1981), was an "enormous class action" involving "more than fifty private treble damage actions

---

[17] Moreover, enjoining the *Runyan* settlement would thwart the strong federal policy in favor of settling class actions. "The compromise of complex litigation is encouraged by the courts and favored by public policy." 4 *Newberg on Class Actions* § 11:41; *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context.") (internal quotation marks omitted); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits."); *Colella v. Univ. of Pittsburgh*, 569 F. Supp. 2d 525, 530 (W.D. Pa. 2008) ("The strong public policy and high judicial favor for negotiated settlements of litigation is particularly keen in class actions . . . .") (internal quotation marks omitted); *In re Corrugated Container Antitrust Litig.*, 556 F. Supp. 1117, 1157 (S.D. Tex. 1982), *aff'd*, 687 F.2d 52 (5th Cir. 1982) ("Due to their uncertainty, difficulty of proof, and length, and in the interests of judicial economy, class action [lawsuits] should be settled whenever possible, as soon as possible.").

on behalf of all purchasers of corrugated containers and sheets against thirty-seven manufacturers" that were consolidated by the Judicial Panel on Multidistrict Litigation. *Id*. at 1333. At the time the injunction was issued, the multidistrict court had *already approved settlements* "and the final judgments were predictable if not assured." *Id*. at 1135. The Fifth Circuit held that, "[a]n exception to the general rule that a federal forum may not enjoin the prosecution of a simultaneous *in personam* action on the same cause of action in state court comes into play once judgment is entered." *Id*.

*In re Diet Drugs*, 282 F.3d 220 (3d Cir. 2002) involved an MDL proceeding that had consolidated over two thousand cases. The class certified for settlement consisted of six million members. *Id*. at 236. The multidistrict court had entered over one thousand orders in the case. *Id*. "The central events in [the] dispute occurred after…a conditional class certification and preliminary settlement had been negotiated and approved by the District Court." *Id*. The Third Circuit affirmed the district court's injunction after finding that parallel state actions will likely pose a genuine threat to a complex case when "*certification or settlement has received conditional approval, or perhaps even where settlement is pending . . . .*" *Id*. (emphasis added).

In *Hanlon v. Chrysler Corp*., 150 F.3d 1011 (9th Cir. 1998), several state class actions had been consolidated into one large national class, a settlement agreement had been preliminarily approved by the district court, and a nationwide class had been certified for settlement purposes. Accordingly, the Ninth Circuit affirmed the district court's injunction of a state-wide class action filed in Georgia.

*In re Baldwin-United Corp*., 770 F.2d 328 (2d Cir. 1985), involved an MDL proceeding that had consolidated over one hundred securities lawsuits. The MDL consisted of over 100,000 plaintiffs. *Id*. at 332. Eighteen of the twenty-six defendants had reached settlement agreements with plaintiffs. *Id*. The district court had provisionally certified a class for purposes of

17

settlement. *Id.* The Second Circuit found that "the potential for an onslaught of state actions posed more than a risk of inconvenience or duplicative litigation; rather, such a development threatened to seriously impair the federal court's flexibility and authority to approve settlements in the multi-district litigation." *Id*. at 337 (internal quotation marks omitted).

In *Carlough v. Amchem Products, Inc.*, 10 F.3d 189 (3d Cir. 1993), a class action complaint, an answer and a stipulation of settlement were filed simultaneously. Soon after, a class was certified for purposes of settlement. *Id.* at 195. The Third Circuit affirmed the lower court's injunction of a related state court action after finding that "[h]ere the prospect of settlement was indeed imminent, as in other cases in which federal courts have issued injunctions." *Id*. at 203. Furthermore, the court found that the district court was right to be concerned over its ability to finalize a settlement, and thus the district court had not abused its discretion in issuing the injunction. *Id*. at 204.

In *White v. National Football League*, 41 F.3d 402 (8th Cir. 1994), a settlement agreement had been reached in the federal court, and the Eighth Circuit found that the agreement would be inadequate to end the litigation if the court were to approve the settlement without enjoining the related claims. *Id*. at 409. Accordingly, the Eighth Circuit held that an injunction under the All Writs Act was appropriate.

As noted above, these cases are entirely inapposite, and have no application here because: (1) *Gooch* involves a single class action – not a complex MDL proceeding; (2) no class settlement is imminent or even pending – in fact, there have been no class settlement discussions; (3) no class has been certified; and (4) no judgment has been entered. Accordingly, there is no case law supporting plaintiff's Motion or his argument that an exception to the Anti-Injunction Act applies.

## B.     The *Runyan* Settlement Is Not Collusive

Plaintiff's bare allegation that "Defendants here have purported to enter into a collusive class action settlement agreement" in *Runyan* (Motion at 3) is unsupported by any evidence or argument, nor could it be.  As detailed above, the *Runyan* Settlement was the result of months of adversarial negotiations between the parties, and the parties employed the services of Judge Politan to mediate eight months ago.  The settlement constituted a global resolution of six actions which had been pending throughout the country and it provides millions of dollars in valuable benefits to the putative class.  The first of those actions was filed in July 2007.  Moreover, *Runyan* was not filed to frustrate any potential settlement or proceedings in this case.  At the time *Runyan* was filed, there was no imminent settlement in this case.  Nor were there any settlement discussions with any other group of lawyers that could result in a "reverse auction."[18]  Thus, the *Runyan* settlement cannot be considered in any way collusive or an attempt to circumvent a federal court settlement.  *See, e.g., Negrete*, 523 F.3d at 1099 (injunction of state court class settlement not permitted where there was no evidence of collusion); *Vallier*, 2008 WL 4330028, at *4 (denying injunction where allegation of collusion was unsupported and there was no attempt to circumvent a federal settlement).

---

[18] A "reverse auction" involves a situation where a defendant "selects among attorneys for competing classes and negotiates an agreement with the attorneys who are willing to accept the lowest class recovery."  Manual for Complex Litigation (4th) § 21.61.  In this case, the record is clear that Life Investors negotiated with one group of plaintiffs counsel, and there was no "auctioning" whatsoever.  Unsupportable allegations of a "reverse auction," have been rejected by the courts.  Otherwise, the "reverse auction argument would lead to the conclusion that no settlement could ever occur in the circumstances of parallel or multiple class actions – none of the competing cases could settle without being accused by another of participating in a collusive reverse auction."  *Negrete*, 523 F.3d at 1099-1100 (quoting *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1189 (10th Cir. 2002)).

### C. The *Runyan* Settlement Does Not Enjoin Plaintiff From Prosecuting His Case In This Court

Plaintiff contends that the *Runyan* Settlement threatens this Court's jurisdiction because the *Runyan* court's Preliminary Approval Order prohibits him "from complying with the lawful orders of this Court." Motion ¶ 5, at 3. Plaintiff goes so far as to suggest that the Preliminary Approval Order in *Runyan* "substantively purports to enjoin this and other United States District Courts from considering class-related matters." Motion ¶ 11, at 7. Plaintiff's argument is entirely disingenuous because the *Runyan* settlement has no application to him.

First, by its express terms, the injunction in the Preliminary Approval Order applies only to Settlement Class members "***unless and until they have timely and properly excluded themselves*** from the Settlement Class." Preliminary Approval Order ¶ 17. Plaintiff created a false conflict by delaying his Request for Exclusion and pretending he intended to participate in the *Runyan* Settlement. Plaintiff filed his Motion in this Court on June 23, 2009, and then two days later, he executed his Exclusion Request to opt out of the *Runyan* Settlement. *See* App. Exhibit 2. Consequently, the injunction in the Preliminary Approval Order ***has absolutely no application*** to the plaintiff. Plaintiff's entire argument regarding a conflict with the Preliminary Approval Order was self-created, and his Motion For Injunctive Relief was filed even though he knew he would be opting out of the *Runyan* Settlement Class in a matter of days. As soon as he opted out, his entire argument became moot, and the *Runyan* Preliminary Approval Order could not possibly interfere with this Court's jurisdiction over plaintiff's claims. *See In re Gen. Motors Corp.*, 134 F.3d at 145 (state court settlement did not interfere with federal proceeding where state settlement "contained opt out provisions, thereby protecting the rights of the [federal]

plaintiffs").[19]

### D. The *Runyan* Settlement Agreement Will Not "Undo" This Court's "Rule of The Case" As To The Meaning Of Actual Charges

Plaintiff also argues that an injunction is necessary because the *Runyan* Settlement is "contrary to this Court's existing rule of the case" (Motion at 4), and that the *Runyan* Settlement will "undo" this Court's "rule of the case" and "expressly **re-write** Mr. Gooch's policy." Motion at 8 (emphasis in original). Plaintiff's argument is erroneous and cannot possibly justify an injunction. First, because plaintiff has opted out of the *Runyan* Settlement, his policy will not be affected by the Settlement. His claim that the Settlement will "re-write" his policy is utterly false. Plaintiff is free to pursue his individual claim in this Court. Second, whatever plaintiff means by "this Court's rule of the case" the Settlement has no effect on and cannot "un-do" any ruling with respect to plaintiff's policy in this case. To the extent plaintiff suggests that he has some right to apply a substantive ruling on his policy to the policies of absent third party policyholders, plaintiff is mistaken. He has no such right, and the mere fact that plaintiff might disagree with one or more of the Settlement provisions does not justify an injunction. The fairness of the Settlement is to be decided by the *Runyan* court.

In addition, plaintiff's complaint that the Settlement will "re-write" policies "to include language that did not previously exist" rings hollow. Motion at 8. Presumably, plaintiff is referring to Section 3(b)(ii) of the Agreement which provides generally that Transamerica will

---

[19] Moreover, Gooch has no substantive right to pursue a class action. It is well established that Rule 23 is a procedural rule which provides no substantive rights. *See, e.g., Blaz v. Belfer*, 368 F.3d 501, 505 (5th Cir. 2004) ("[T]here is no substantive right to a class remedy; a class action is a procedural device."); *Diaz-Ramos v. Hyundai Motor Co.*, 501 F.3d 12, 15 (1st Cir. 2007) ("Both state and federal class action provisions have been construed to confer no substantive rights.") (citations omitted); *In re Baldwin-United Corp.*, 770 F.2d 328, 335 (2d Cir. 1985) (Rule 23 "is a rule of procedure and creates no substantive rights or remedies enforceable in federal court"). Gooch simply has no substantive right to maintain a class action.

pay claims for Actual Charges Benefits based on the actual amount of money that a healthcare provider (or other vendor) agrees to accept, or is obligated by agreement or operation of law to accept, as payment in full for the particular goods and services provided to the patient (or consumer). This provision is consistent with the plain and ordinary meaning of "actual charges" and with all state statutes governing "actual charges." *See supra* note 12. This provision has no effect on any policyholder who has opted out of the Settlement, and plaintiff has no right to enjoin or prevent policyholders who have decided to participate in the Settlement from receiving the benefits of this provision.

Moreover, plaintiff cannot possibly suggest that the *Runyan* Settlement provisions governing payment of Actual Charges Benefits are inappropriate for settlement purposes. Plaintiff's counsel served as class counsel in a class action settlement in *Robertson v. Liberty National Ins. Co.* which contained almost identical provisions. The *Robertson* settlement contained provisions entitled "New Benefit Procedure" and "Final Actual Charge Amount Procedure" which required that the payment of benefits for "actual charges" be handled as follows:

> Upon receiving information sufficient to determine the final amount actually accepted by the medical provider as full payment for such otherwise covered treatment, procedure or prescription, Liberty National shall then pay the additional amount necessary (if any) to make the total benefit paid for said treatment, procedure or prescription equal to the final amount actually accepted by the medical provider as full payment. In determining the amount accepted by the provider as full payment, all payments made or required to be made to the provider by the patient and all payments made to the provider by Medicare, Medicaid, and any private insurer for the treatment, procedure or service in question shall be included.

*See* 2007 Stipulation and Agreement of Compromise and Settlement at 4, 19, filed in *Robertson*

*v. Liberty Nat. Life Ins. Co.*, copy included in Appendix as Exhibit 7 ("*Robertson* Settlement").[20] Plaintiff's counsel in *Robertson* also repeatedly acknowledged the substantial benefits provided to policyholders by these provisions which were "designed to reduce the frequency and severity of future premium increases." *See, e.g., Robertson* Settlement at 13. Plaintiff's attempt to enjoin the *Runyan* Settlement because it includes similar provisions is disingenuous.

### E. The Anti-Injunction Act Precludes Any Injunction That Would Enjoin Defendants From Completing The Settlement; The *Perkins* Case Is Entirely Inapposite

Plaintiff also erroneously argues that, "[e]ven if this Court should decide against issuance of an injunction under the All Writs Act, it can still require the Defendants to stay the settlement approval process in Arkansas." Motion at 8. In support of this proposition, plaintiff cites *Perkins v. American National Ins. Co.*, 446 F. Supp. 2d 1350 (M.D. Ga. 2006). Plaintiff's reliance upon *Perkins* is entirely misplaced for several reasons.

First, *Perkins* involved two concurrent *federal* actions. Thus, unlike this case, the Anti-Injunction Act did not apply in *Perkins*. Second, it is well established by Supreme Court precedent that the Anti-Injunction Act cannot be evaded by directing an injunctive order at the parties instead of the state court. *Atlantic Coast Line*, 398 U.S. at 287 ("the prohibition of § 2283 [the Anti-Injunction Act] cannot be eroded by addressing the order to the parties or prohibiting utilization of the results of a completed state proceeding"); *see also Negrete*, 523 F.3d at 1098; *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 805 (9th Cir. 2002) ("[o]rdering the parties not to proceed is tantamount to enjoining the parties"). Moreover, whether a ruling constitutes an impermissible injunction is determined by the order's "substantial effect," not by "terminology" or "what a district court chooses to call an order." *Negrete*, 523 F.3d at 1097. Any order that

---

[20] Plaintiff's co-counsel, the law firm of Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., served as class counsel in *Robertson*. App. Exhibit 7.

required "the Defendants to stay the settlement approval process in Arkansas" would clearly violate the Anti-Injunction Act.

Third, the *Perkins* case turned on application of the "first-filed rule" — a rule which provides generally that, when two identical cases are pending in *federal court*, the court presiding over the first-filed action has jurisdiction to determine whether the later-filed action should be consolidated with the first. *Id*. at 1354. The Georgia district court in *Perkins* concluded that it had jurisdiction under the first-filed rule to decide whether a later-filed federal action in Texas should be consolidated with the federal action in Georgia:

> The Court finds that in this case it presumptively has jurisdiction to decide whether the later filed Texas action should be consolidated with this first filed action. Allowing the parties to proceed with consummation of the settlement in the Texas action would strip this Court of that jurisdiction.

*Id*. at 1354. Even assuming *Perkins* was correctly decided, it has no bearing on this case. The first-filed rule applies when two federal actions are pending. It does not apply to parallel federal and state class actions, and this Court has no authority to consolidate this action with the *Runyan* action. *See, e.g., Warner v. Fuller Rehab. & Consulting Servs., Inc.*, 2005 WL 1490071, at *5 (E.D. Tenn. June 23, 2005) (first-filed rule has no application to parallel federal and state court class actions). Accordingly, *Perkins* is entirely inapposite and supplies no authority to issue an injunction here. Any injunction affecting the *Runyan* action or the parties' ability to proceed with the Settlement in *Runyan* would violate the Anti-Injunction Act and well established precedent as demonstrate above.

## CONCLUSION

For the reasons set forth above, plaintiff's Emergency Motion for Injunctive Relief Under the All Writs Act (D.E. 291) should be denied.

Respectfully submitted,

/s/ Markham R. Leventhal

Thomas H. Dundon (No. 004539)          Markham R. Leventhal
A. Scott Ross (No. 015634)             Irma Reboso Solares
NEAL & HARWELL, PLC                    Julianna Thomas McCabe
150 Fourth Avenue, North               JORDEN BURT LLP
Suite 2000                             777 Brickell Avenue, Suite 500
Nashville, TN  37219                    Miami, FL  33131
Tel:  (615) 244-1713                   Tel:  (305) 371-2600
Fax:  (615) 726-0573                   Fax: (305) 372-9928

                                       *Attorneys for Life Investors Insurance Company*
                                       *of America and AEGON USA, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that on the 14th day of July, 2009, I electronically filed the foregoing Defendants' Response in Opposition to Plaintiff's Motion for Injunctive Relief with the Clerk of Court using the CM-ECF system, which will automatically send email notification of such filing to the following attorneys of record:

Eric L. Buchanan, Esq.
Eric Buchanan & Associates, PLLC
414 McCallie Avenue
Chattanooga, TN  37402
ebuchanan@buchanandisability.com

Thomas O. Sinclair, Esq.
M. Clay Williams, Esq.
Andrew P. Campbell, Esq.
Leitman, Siegal, Payne & Campbell, P.C.
2100-A SouthBridge Parkway, Suite 450
Birmingham, AL  35209
tsinclair@cgl-law.com
cwilliams@cwp-law.com
acampbell@cgl-law.com
jwallis@cgl-law.com

W. Daniel Miles, III, Esq.
John E. Tomlinson, Esq.
Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
218 Commerce Street
Montgomery, AL  36103
dee.miles@beasleyallen.com
john.tomlinson@beasleyallen.com

*Attorneys for Plaintiff*

/s/ Markham R. Leventhal

178955